

WOLFE & WYMAN LLP

EXHIBIT "A"

Case No. 10CECG03837          Appeal Nos. F068561/F068279

IN THE APPELLATE COURT OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

Appeal from the Superior Court of Fresno County

Honorable Mark W. Snauffer, Judge

Department 503

-oOo-

| | | |
|---|---|---|
| MARTINEZ, et al., | ) | REPORTER'S TRANSCRIPT |
| | ) | ON APPEAL |
| Plaintiffs/Respondents/ | ) | |
| Cross-Appellants, | ) | |
| | ) | VOLUME XXVII |
| vs. | ) | |
| | ) | |
| HERNDON PARTNERS, LLC., | ) | |
| et al., | ) | PAGES 4172 - 6750 |
| | ) | |
| Defendant/Appellant/ | ) | |
| Cross-Respondent. | ) | MAY 30, 2013 |
| _____ | ) | |

A P P E A R A N C E S:

FOR THE PLAINTIFFS/    THE VEEN FIRM, PC
RESPONDENTS/          BY:  CRAIG M. PETERS
CROSS-APPELLANTS:     711 Van Ness Avenue, Suite 220
                      P. O. Box 7296
                      San Francisco, California 94120-7296


FOR THE DEFENDANT/    HORVITZ & LEVY
APPELLANT/            BY:  KAREN M. BRAY
CROSS-RESPONDENT      15760 Ventura Boulevard, 18th Floor
HERNDON PARTNERS:     Encino, California 91436


Reported by:
SUZANNE M. McKENNON, CSR, CRR, RMR
Certificate No. 9713

# I N D E X – V O L U M E  XXVII

## SESSIONS

MAY 30, 2013                                                    PAGE

AFTERNOON SESSION                                               4172

THE COURT: Okay. We're back on the record, then, in the Martinez, Herndon matter. Please be seated, everybody. I am informed that the jury has reached a verdict. It has been presented to me. I will have the Clerk now read the verdict. I will indicate in advance that we may have some -- a couple of issues that we're going to need clarification on from the jury, but I am going to have the Clerk read the verdict as it is.

THE JUDICIAL ASSISTANT: Judge, there is no case number or caption. I can get it off of this.

THE COURT: Just read it off of that.

THE JUDICIAL ASSISTANT: In the Superior Court of the State of California, Superior Court, County of Fresno, Case Number 10CECG03837, Consuelo Martinez versus Herndon Partners. Verdict.

"We, the jury, in this matter answer the questions submitted to us as follows:

"1. Was Herndon Partners, LLC, an employer of Francisco Martinez Moreno? Yes.

"2. Was Herndon Partners, LLC, negligent? Yes.

"3. Was Herndon Partners, LLC's negligence a substantial factor in causing harm to Francisco Martinez Moreno? Yes.

"4. Was Amador Electric negligent? No.

"5. Was Amador Electric's negligence a substantial factor in causing harm to decedent Francisco Martinez Moreno?

1   No.

2          "6.   What are Consuelo Martinez, Trinidad Moreno, and

3   Sofia Martinez's total damages?

4          "(a).  Past economic losses:  $142,899.

5          "Past value of home services that Francisco Martinez

6   Moreno would have provided:  $121,347.

7          "Total past economic losses:  $264,246.

8          "Future economic losses:  Future earning capacity that

9   decedent Francisco Martinez Moreno would have contributed:

10  $2,000,000.

11         "Future value of home services that Francisco Martinez

12  Moreno would have provided:  $1,483,343.

13         "Total future economic losses:  $3,483,343."

14         Next line is somewhat unclear.  It looks like possible

15  parenthesis, "($410,000."

16         And a total below that line of "$3,303,855."

17         "Non-economic losses of Consuelo Martinez:

18         "(c).  Consuelo Martinez's past non-economic losses:

19  Zero dollars.

20         "(d).  Consuelo Martinez's future non-economic losses:

21  $7,000,000.

22         "Total:  $7,000,000.

23         "Non-economic losses of Trinidad Moreno:

24         "(e).  Trinidad Moreno's past non-economic losses:

25  Zero dollars.

26         "(f).  Trinidad Moreno's future non-economic losses:"

The writing is somewhat unclear, either "$1,000,000" or

"$2,000,000."  One was written over the other for a total of

either $1,000,000 or $2,000,000.  One written over the other.

 "Non-economic losses of Sofia Martinez:

 "(g).  Sofia Martinez's past non-economic losses:

Zero dollars.

 "(h).  Sofia Martinez's future non-economic losses:

$2,000,000."

 For a total of "$2,000,000."

 "7.  Did defendants prove that Francisco Martinez

Moreno was negligent?  No.

 "8." is blank.

 "9.  Was Sierra Pacific Development, Incorporated,

negligent?  No.

 "10." is blank.

 "11.  Was Malibu Pacific Construction and Development,

Incorporated, negligent?  No.

 "12." is blank.

 "13.  For each entity or individual who received a

check next to their name, please assign a percentage of

responsibility for Francisco Martinez Moreno's death.  Place

'0' on the lines for which there is no check box:

 "Herndon Partners, LLC, 100 percent."

 All other lines marked "0 percent."

 Signed by the foreperson dated "May 30, 2013."

 THE COURT:  All right.  Ladies and gentlemen, I'm

Case No. 10CECG03837          Appeal Nos. F068561/F068279

IN THE APPELLATE COURT OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

Appeal from the Superior Court of Fresno County

Honorable Mark W. Snauffer, Judge

Department 503

-oOo-

| | | |
|---|---|---|
| MARTINEZ, et al., | ) | REPORTER'S TRANSCRIPT |
| | ) | ON APPEAL |
| Plaintiffs/Respondents/ | ) | |
| Cross-Appellants, | ) | |
| | ) | VOLUME XXVII |
| vs. | ) | |
| | ) | |
| HERNDON PARTNERS, LLC., | ) | |
| et al., | ) | PAGES 4172 - 6750 |
| | ) | |
| Defendant/Appellant/ | ) | |
| Cross-Respondent. | ) | MAY 30, 2013 |

A P P E A R A N C E S:

FOR THE PLAINTIFFS/     THE VEEN FIRM, PC
RESPONDENTS/            BY:  CRAIG M. PETERS
CROSS-APPELLANTS:       711 Van Ness Avenue, Suite 220
                        P. O. Box 7296
                        San Francisco, California 94120-7296


FOR THE DEFENDANT/      HORVITZ & LEVY
APPELLANT/              BY:  KAREN M. BRAY
CROSS-RESPONDENT        15760 Ventura Boulevard, 18th Floor
HERNDON PARTNERS:       Encino, California 91436


Reported by:
SUZANNE M. McKENNON, CSR, CRR, RMR
Certificate No. 9713

# I N D E X — V O L U M E  XXVII

## SESSIONS

MAY 30, 2013                                                    PAGE

AFTERNOON SESSION                                               4172

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF FRESNO

CIVIL DIVISION

Before the Honorable Mark W. Snauffer, Judge

Department 503

—oOo—

CONSUELO MARTINEZ, individually )
and as Successor in Interest to )
Francisco Martinez Moreno; TRINIDAD )
MORENO; and SOFIA MARTINEZ, a minor, )
by and through her Guardian ad Litem )
CONSUELO MARTINEZ, )
)
                Plaintiffs, ) Case No. 10CECG03837
)
        vs. )
)
HERNDON PARTNERS, LLC; AMADOR )
ELECTRIC; and DOES 1 — 100, )
)
            Defendants. )
———————————————————————————————————)
)
AND RELATED CROSS-ACTIONS. )
———————————————————————————————————)

—oOo—

REPORTER'S TRIAL TRANSCRIPT

MAY 30, 2013

—oOo—

Reported by:
SUZANNE M. McKENNON, CSR, CRR, RMR
Certificate No. 9713

A P P E A R A N C E S:

FOR THE PLAINTIFFS:    THE VEEN FIRM, PC
                       BY:   CRAIG M. PETERS
                             S. ANOUSH LANCASTER
                       711 Van Ness Avenue, Suite 220
                       San Francisco, California 94102

FOR THE DEFENDANT      LECLAIRRYAN, LLP
HERNDON PARTNERS,      BY:   CHARLES H. HORN
LLC:                   44 Montgomery Street, 18th Floor
                       San Francisco, California 94104

                       WOOD, SMITH, HENNING & BERMAN, LLP
                       BY:   CHARLES A. LEATH
                       7112 North Fresno Street, Suite 160
                       Fresno, California 93720

FOR THE DEFENDANT      PETRIE, DORFMEIER & MORRIS, LLP
AMADOR ELECTRIC:       BY:   J. DAVID PETRIE
                       2014 Tulare Street, Suite 830
                       Fresno, California 93721

<u>MAY 30, 2013 - AFTERNOON SESSION</u>

     (Whereupon the following proceedings were

     held in open court in the presence of the

     Court and Counsel:)

    THE COURT:  Okay.  Then we're back on the record in the Martinez, Herndon matter.  All Counsel are present.  We have a jury question that we received 20 minutes ago.  We've given each of you a copy of it.

    I can understand the question, because our verdict form we -- under economic loss, we lumped them all three together.  But under non-economic, we had specific lines for each plaintiff.  So I think what they want to know is:  Is it okay to answer the form as it is?

    MR. HORN:  And, your Honor, if I could --

    THE COURT:  Yes.

    MR. HORN:  I kind of -- sorry.  But I kind of saw this coming.  Plaintiffs' Counsel put the -- typed this up the way it is.  The jury referred us to --

    THE COURT:  Well, we all agreed.

    MR. HORN:  I saw it coming.  I saw it coming.

    THE COURT:  There was no objection to the form.

    MR. HORN:  There was no objection.

    THE COURT:  Go ahead.  Go ahead.

    MR. HORN:  The last sentence the jury refers to 3921, page 2.  The last sentence computing these damages, where the losses of a single amount for all plaintiffs, I would divide

1   the amount among the plaintiffs.

2       THE COURT:  That's what it says.

3       Well, we're okay on question 6, because that is --

4   that is a single sum as to all three plaintiffs.  So I don't

5   see any problem with number 6.

6       With respect -- I'm sorry, 6(a) and (b), we -- it is

7   an issue on (c), (d), (e), (f), (g), and (h).  Now, my

8   suggestion would to be tell them to simply fill out the form

9   in its current form, and the Court can reconcile it.  You

10  know, I mean in a lump sum, and the Court's not going to be

11  bound by the jury's allocation.  I don't need to tell them

12  that.  But it's the Court's allocation regardless of what

13  numbers they have.

14      Now, you would have the totals.  I think that's --

15  otherwise, we really have to redo the verdict form, and I

16  don't really feel like we should do that.

17      MS. LANCASTER:  They should follow the verdict form.

18      MR. HORN:  I think they should just fill out the

19  verdict form, your Honor.

20      THE COURT:  That's what I'm going to tell them, and I

21  am going to tell them not to be concerned about that last

22  paragraph.  Just fill out the form as set forth.

23      MS. LANCASTER:  And we do appreciate their careful

24  reading.

25      THE COURT:  What's that?

26      MS. LANCASTER:  We do appreciate their careful

1  reading.

2        THE COURT:  It's an excellent question, and it's

3  called for, given the circumstances.

4        MR. HORN:  And the subject of the economic loss, when

5  they come up with an economic loss number, --

6        THE COURT:  Right.

7        MR. HORN:  -- they don't give that entire amount four

8  times under 6(a) and (b).  They do have to divide that up.

9        THE COURT:  Well, it's just past and future is all it

10  is.

11        MR. HORN:  It's past and future.

12        THE COURT:  There is no individual sum there.

13        MR. HORN:  No.  But the earning capacity past and

14  future.

15        THE COURT:  Yes.

16        MR. HORN:  And home services, past and future is four

17  numbers.  They don't give the five million four times.

18        THE COURT:  No.  It's broken down.  They give for

19  past -- past loss earning capacity, past value of home

20  services, total that up.

21        Future economic loss, future earning capacity, future

22  value of home services, and future -- we don't even ask them

23  to total it.  It's really for the Court.

24        MS. LANCASTER:  So I think the sentence at the bottom

25  of 3921 is applicable to the economic losses; that they're

26  going to do one -- one amount, and that the Court will divide

that amongst the plaintiffs.  But for non-economic, the verdict form already has it --

        THE COURT:  No.  I mean, I think the verdict form is fine, because --

        MS. LANCASTER:  It says --

        THE COURT:  On the economic, it's all three of them.

        MS. LANCASTER:  Correct.

        THE COURT:  There is no amount for each individual. So there is really no issue.

        MR. HORN:  Right.  Correct.

        MS. LANCASTER:  It's --

        THE COURT:  The issue is on the other one.  We're just going to tell them, "Fill out the form as it is.  If there are any issues with it, the Court can deal with them later."

        Does everybody agree that --

        MR. HORN:  Yeah, that's the way for -- the form is written for all three plaintiffs.

        THE COURT:  "Just fill out the form as it is written. And we understand your concern on that instruction, and it doesn't affect the form."

        MR. HORN:  It says all three of them right there on the first line of question 6.

        THE COURT:  Right.  I mean the economic -- there is no problem.  It is a lump sum for all three.

        MR. HORN:  Lump sum, yeah.

        THE COURT:  Okay.  Let me get my robe on.

1          (A brief recess was taken.)

2          THE COURT:  Did you mark the question?

3          THE JUDICIAL ASSISTANT:  Yes, sir.  Court's 12.

4          (Whereupon the jury entered the courtroom.)

5          THE COURT:  Okay.  Please be seated, everybody.  We're

6    back on the record then.  All Counsel are present, the

7    plaintiff is present, and the jurors are present.

8          We are in receipt of a question in regard to -- and

9    I'll just read it.  "Clarification in computing the amount of

10   damages to return a single amount for all plaintiffs or

11   divide between plaintiffs with reference to the jury

12   instruction 3291 at page 2.  And it's the last paragraph of

13   page 2."

14         It's an excellent question, and a totally

15   understandable question.

16         Our answer is simply:  Fill out the verdict form as it

17   is.  Do not be concerned with that last instruction.  Because

18   of how this is structured, (a) and (b) are for all three, and

19   so that's the sum for all three.

20         There is a breakdown on the other ones.  We will deal

21   with that.  But you don't need to be concerned about that.

22         You're not violating the instruction by having those

23   separate entries.  So it was an excellent question, and

24   hopefully that takes care of it.

25         Thank you.  We'll give you that page back to the

26   verdict form.

1          (Whereupon the jury exited the courtroom.)

2          THE COURT:  They have exited again.  It appears to me

3   the issue is somebody probably said, "Well, wait a minute.

4   And this is" -- they're right.  You can do this for 35 years

5   and live and learn, and something always happens.  So all

6   right.

7          MS. LANCASTER:  And, your Honor, we'll have them

8   deliberating until 4:00 o'clock today?

9          THE DEPUTY:  Okay.  They have a verdict.  They just

10  needed that answer.

11         THE COURT:  Holy moley.

12         MR. HORN:  They have a verdict?

13         THE COURT:  Yes.

14         MR. HORN:  Your Honor, --

15         THE COURT:  Yes.

16         MR. HORN:  -- are you inclined to bring the jury in

17  fairly quickly, or does Mr. Owhadi have time to get here from

18  West Herndon Street?

19         THE COURT:  Where is he?

20         MR. HORN:  His office is on Herndon and Palm.

21         THE COURT:  Yes.  I think he should be here.

22         MR. HORN:  Okay.

23         THE COURT:  Tell him to get here right away.

24         (A brief recess was taken.)

25         THE COURT:  All right.  Go ahead and bring them in.

26         (Whereupon the jury and entered the courtroom.)

1    THE COURT:  Okay.  We're back on the record, then, in

2    the Martinez, Herndon matter.  Please be seated, everybody.

3    I am informed that the jury has reached a verdict.  It has

4    been presented to me.  I will have the Clerk now read the

5    verdict.  I will indicate in advance that we may have some --

6    a couple of issues that we're going to need clarification on

7    from the jury, but I am going to have the Clerk read the

8    verdict as it is.

9        THE JUDICIAL ASSISTANT:  Judge, there is no case

10   number or caption.  I can get it off of this.

11       THE COURT:  Just read it off of that.

12       THE JUDICIAL ASSISTANT:  In the Superior Court of the

13   State of California, Superior Court, County of Fresno, Case

14   Number 10CECG03837, Consuelo Martinez versus Herndon

15   Partners.  Verdict.

16       "We, the jury, in this matter answer the questions

17   submitted to us as follows:

18       "1.  Was Herndon Partners, LLC, an employer of

19   Francisco Martinez Moreno?  Yes.

20       "2.  Was Herndon Partners, LLC, negligent?  Yes.

21       "3.  Was Herndon Partners, LLC's negligence a

22   substantial factor in causing harm to Francisco Martinez

23   Moreno?  Yes.

24       "4.  Was Amador Electric negligent?  No.

25       "5.  Was Amador Electric's negligence a substantial

26   factor in causing harm to decedent Francisco Martinez Moreno?

No.

"6.  What are Consuelo Martinez, Trinidad Moreno, and Sofia Martinez's total damages?

"(a).  Past economic losses:  $142,899.

"Past value of home services that Francisco Martinez Moreno would have provided:  $121,347.

"Total past economic losses:  $264,246.

"Future economic losses:  Future earning capacity that decedent Francisco Martinez Moreno would have contributed: $2,000,000.

"Future value of home services that Francisco Martinez Moreno would have provided:  $1,483,343.

"Total future economic losses:  $3,483,343."

Next line is somewhat unclear.  It looks like possible parenthesis, "($410,000."

And a total below that line of "$3,303,855."

"Non-economic losses of Consuelo Martinez:

"(c).  Consuelo Martinez's past non-economic losses: Zero dollars.

"(d).  Consuelo Martinez's future non-economic losses: $7,000,000.

"Total:  $7,000,000.

"Non-economic losses of Trinidad Moreno:

"(e).  Trinidad Moreno's past non-economic losses: Zero dollars.

"(f).  Trinidad Moreno's future non-economic losses:"

The writing is somewhat unclear, either "$1,000,000" or

"$2,000,000."  One was written over the other for a total of

either $1,000,000 or $2,000,000.  One written over the other.

        "Non-economic losses of Sofia Martinez:

        "(g).  Sofia Martinez's past non-economic losses:

Zero dollars.

        "(h).  Sofia Martinez's future non-economic losses:

$2,000,000."

        For a total of "$2,000,000."

        "7.  Did defendants prove that Francisco Martinez

Moreno was negligent?  No.

        "8." is blank.

        "9.  Was Sierra Pacific Development, Incorporated,

negligent?  No.

        "10." is blank.

        "11.  Was Malibu Pacific Construction and Development,

Incorporated, negligent?  No.

        "12." is blank.

        "13.  For each entity or individual who received a

check next to their name, please assign a percentage of

responsibility for Francisco Martinez Moreno's death.  Place

'0' on the lines for which there is no check box:

        "Herndon Partners, LLC, 100 percent."

        All other lines marked "0 percent."

        Signed by the foreperson dated "May 30, 2013."

        THE COURT:  All right.  Ladies and gentlemen, I'm

1    going to have to ask you to go back into the jury room for a

2    few minutes.  I am going to have to go over this with

3    Counsel.  We may have some questions for you.  But I don't

4    want to say anything or do anything until I've had that

5    opportunity.  So thank you very much.  I'll ask you to step

6    into the jury room for just a few minutes.

7         Run a copy of this for everybody.

8         THE JUDICIAL ASSISTANT:  Yes, sir.

9         THE COURT:  We're going to take a couple minutes.  I

10   am going to run a copy for everybody.  I want you to follow

11   along.  It's important that you see the document.

12        (Whereupon the jury exited the courtroom.)

13        THE COURT:  We're back now.  We're passing these out

14   right now to everybody.

15        MR. PETERS:  I was wondering if I can get off this

16   phone and speak with Ms. Lancaster and speak with her

17   directly.

18        THE COURT:  Let me go over this in open court, and we

19   can take a recess, and you can call her.

20        Let me -- I want to give Counsel a chance to look at

21   this.  The issue, from my point of view, that I am not clear

22   on are 6(b), the future value of home services.  I don't --

23   up until the $3,483 -- 3,483,343 -- I understand that they

24   added those two together.  But then they've got this

25   $410,000.  I don't know what that is.  I don't remember that

26   from anything --

1    MS. LANCASTER:  Yeah.

2    THE COURT:  And they've got a total of $3,303,855.  So

3    MR. PETRIE:  The only guess I have, your Honor -- and

4    this is just a pure guess is.  There was testimony about

5    personal consumption.

6    MS. LANCASTER:  Right.

7    MR. PETRIE:  I don't know the number 410 was ever

8    specifically talked about, but that's just a pure guess on my

9    part.  That might have something to do with that.

10   MR. HORN:  It looks like they totaled up the first two

11   lines on (b) and then subtracted 410.

12   THE COURT:  But that's not the right total.

13   MR. HORN:  That's not the right total.

14   THE COURT:  So I am going to let you guys think about

15   it -- okay?  And I'll let Ms. Lancaster call up north,

16   because I just -- I don't want to tell them what to do, but I

17   can't let that stand the way it is.  I don't know what --

18   it's not right.  And they're going to have to do something

19   with it.

20   MS. LANCASTER:  And --

21   THE COURT:  And the other thing is I just need

22   clarification, you know.  Trinidad Moreno, is it 1,000,000 or

23   2,000,000.

24   MR. LEATH:  Yeah.

25   THE COURT:  I don't know.  The other one on Sofia, I

26   think it's two, but I don't know that either.

1    MS. LANCASTER:  Right.

2    THE COURT:  So I need to ask for clarification.  Can

3  you please write out a new number, whatever that is and

4  initial it.

5    MR. PETERS:  So just clarifying?

6    THE COURT:  Yes.  Right.  But why they would write

7  over a number?  It's just mind-boggling to me.  I can't

8  believe it.  But the other one, I'm not exactly sure what to

9  do except we've got to get clarification somehow because

10  those numbers don't add up.

11    So let me take -- let me take a recess until 2:20, and

12  everybody can put their heads together.

13    And, Ms. Lancaster, you can talk to Mr. Peters if you

14  wish.

15    And I've got to do something -- I don't want to

16  discharge them with it in this situation.

17    Okay.  We're in recess until 2:20.

18    (A brief recess was taken.)

19    THE COURT:  Okay.  Back on the record, then, in the

20  Martinez, Herndon Partners matter.  Mr. Owhadi is present,

21  Mrs. Martinez is present, and Counsel are present, and the

22  jurors are not present.

23    I asked them to step out while we study this verdict

24  form.  I think we need to get some clarification on 6(b), the

25  part two of that.  Those numbers just don't add up.  And I

26  don't know what they intended to do there.  I think, then, we

1    also need to get clarification on Trinidad Moreno's future

2    non-economic loss, what that number is, and Sofia's future

3    what -- make sure we know what that number is.

4         So those are straightforward.  I think I can just ask

5    them to write that out or even do it verbally.

6         The other one, I'm open to suggestion.  I don't want

7    to tell them what to do.  On the other hand, I have to -- I

8    think I have to do something.

9         Mr. Horn, any thoughts?

10        MR. HORN:  I would think send it back to them and ask

11   them to do the math.  It's an obvious math error.

12        THE COURT:  Right.  Well, I don't know because I don't

13   even know what that $410,000 is.

14        MR. HORN:  Either do I.

15        THE COURT:  It looks like it's -- I don't know what it

16   is.  But I think they need to clarify it.

17        Okay.  And, then, on the other two, I'll just ask them

18   to put in the margin what the number is, no write overs,

19   because I don't want an initial, have the foreperson initial

20   it.

21        And we're, obviously, going to be polling the jury.

22        MS. LANCASTER:  Maybe they can just cross out what

23   they have and write in the margin what the number is supposed

24   to be.

25        THE COURT:  Yes.  "So the wording would be on 6(b),

26   the future value of home services that Francisco would have

1  provided, we need clarification on the mathematics of that

2  number.  Because if you're subtracting 410 from the 3,483,000

3  it doesn't total that amount, if that is what you intended to

4  do.  So you need to go back into the jury room and figure

5  that out for us.

6       MS. LANCASTER:  Yes.

7       THE COURT:  Everybody agree with that?

8       MS. LANCASTER:  Well, --

9       THE JUDICIAL ASSISTANT:  Or what is that 3.3 million?

10      MS. LANCASTER:  Right.  I don't know what that's

11 intended to be.  A subtraction?

12      THE COURT:  I don't either.

13      MS. LANCASTER:  So I guess my proposal would be --

14      THE COURT:  If it's an addition, it would be way off.

15 It would be three million eight.

16      MS. LANCASTER:  Right.

17      THE COURT:  If it's a subtraction, it's way off.

18      MS. LANCASTER:  It's way off.

19      THE COURT:  It doesn't work.

20      "So we need clarification on what you're intending to

21 do with that number."

22      MS. LANCASTER:  Sure.  It seems the verdict form is

23 set up that we can only have one number per line.  So we need

24 them to go back and fix that.

25      THE COURT:  Everybody agree on that approach?

26      MS. LANCASTER:  Yes, your Honor.

1       MR. HORN:  Yes, your Honor.

2       MR. PETRIE:  Yes, your Honor.

3       THE COURT:  All right.  Okay.

4     You know, one other thing I'll note is they answered

5  question 5, which they didn't need to do, but I don't think

6  that's material.  It's surplusage since they answered

7  question 4 "No."

8     (Whereupon the jury entered the courtroom.)

9       THE COURT:  Okay.  Please be seated, everybody.  We're

10  back on the record, then.  The jurors have now joined us.

11     Ladies and gentlemen, we've got a couple of points of

12  clarification we're going to need to have you do for us.  Let

13  me begin with the simpler ones.  These all relate to question

14  6.  Okay?

15     Going to the bottom where it says, "Non-economic

16  losses of Sofia Martinez" and the sub "(h)," we need

17  clarification as to whether -- what that number is.  It looks

18  like one was written over.  So I need you to write out the

19  new number in the margin there.  I shouldn't say, "New

20  number."  Strike that.  The number, whatever it is, so it's

21  not ambiguous.

22     We have the same issue with Trinidad.  I don't want to

23  tell you what it is.  That's your decision.  But it's not

24  clear.  Okay.  Those, I think, you can deal with.

25     Now, I think you can deal with the other one, too.

26  The other one, that's a little more unclear to us, is under

1  6(b), the future value of home services that Francisco

2  Martinez Moreno would have provided.  Now, you notice there

3  are lines there, and you answered the first line with

4  $2,000,000, then the second line for the future home services

5  a million four, and, then, you totaled that up?

6         Then, there is this $410,000 number, and it's not

7  clear to us what that is intended to be.  And then you have

8  another total there.

9         If it's an addition, it's not right, and if it's a

10  subtraction, it is not right.  The math is not correct.

11         So you need to go back into the jury room and clarify

12  for us what that number is because, mathematically, that's

13  not consistent, and I need to have a consistent number.

14  Okay?  That is it.

15         So I will give this back to you, and we'll await your

16  decision.

17         (Whereupon the jury exited the courtroom.)

18         MR. PETRIE:  Your Honor, if I may, can I walk across

19  the street and feed the meter?

20         THE COURT:  Yes.

21         MR. PETRIE:  I didn't anticipate we would be doing

22  everything at once.

23         THE COURT:  Yes.  Go ahead.

24         MR. PETRIE:  Thank you.

25         (A brief recess was taken.)

26         THE COURT:  Okay.  Okay.

MS. LANCASTER:  Your Honor, just a few housekeeping matters before the jury comes in.

THE COURT:  Yes.

MS. LANCASTER:  I don't know if the alternates were able to be contacted before the verdict, but if not, we would just request that they be informed.

THE COURT:  They'll be informed.  We couldn't get them here in time to take the verdict.

MS. LANCASTER:  Sure.  And, then, just as far as housekeeping, did your Honor have an idea about judgment and any other matters, whether we're going to take that up this afternoon?

THE COURT:  Well, I'll read the corrections into the record, and I assume we're going to poll the jury.  I'm sure the defense is going to request a poll.  I do that usually by show of hands initially.  And if we do further individual polling, I do that.

MR. HORN:  And we do have a motion we need to put on the record.

THE COURT:  I'm sorry?

MR. HORN:  We do have a motion we need to make immediately.

THE COURT:  But that's -- is that before or after I discharge the jury?

MR. HORN:  After you -- once we have the verdict, --

THE COURT:  Yes.

1    MR. HORN: -- we need to make a motion.

2    THE COURT: All right.

3    MS. LANCASTER: And I just request, your Honor, that

4 before the jury is dismissed, if your Honor could inform them

5 that I would just like to talk to them momentarily, anybody

6 that is open to that.

7    THE COURT: Yeah, I'll tell them to remain behind in

8 the jury room. We have a few things we have to talk about

9 out here. But anyone who wants to remain behind -- they can

10 do that.

11    MS. LANCASTER: My request actually is, if there is

12 going to be a motion, we take a five- or ten-minute break, I

13 can talk to the jurors, and we can resume with all the

14 housekeeping matters.

15    THE COURT: Okay. But we need to keep it to five or

16 ten minutes.

17    MS. LANCASTER: No problem, your Honor.

18    THE COURT: I can do that.

19    MS. LANCASTER: Thank you.

20    THE COURT: All right. Let's bring them in.

21    (Whereupon the jury entered the courtroom.)

22    THE COURT: All right. Everybody, please be seated,

23 folks.

24    The jury has rejoined us.

25    Ladies and gentlemen, I have received your verdict

26 form. It does now appear to be consistent on a mathematical

basis, and I am going to read those changes into the record
so that we have a complete record.

Beginning with question 6(b), the issue was the future
value of home services that Francisco Martinez Moreno would
have provided.  The amended answer is $1,073,343 and added
together, that results in the total economic loss of
$3,073,343, and that does add up.

And that is initialed by the foreperson, I assume.

And, then, skipping down to 6(f), Trinidad Moreno's
future non-economic losses is set at $1,000,000.  And for a
total of $1,000,000 on that category.  And that is initialed
by the foreperson.

And, then, with respect to item (g) -- I'm sorry 6 --
6(h), Sofia Martinez's future economic loss is set at
$2,000,000, and for a total then of $2,000,000, signed by the
foreperson.

And so I believe that those are now consistent now.

I'm assuming that somebody will request a polling of
the jury.

MR. HORN:  Yes, your Honor.

THE COURT:  All right.  Now, what this means, folks --
and I instructed you on this previously -- is that we're
going to go down each question and answer, and I'm going to
read the question.  I'm going to say what the answer is, and,
then, I'm going to ask you how many of you answered "Yes."
And I need you to raise your hands and keep them in the air

until I tell you to put them down, because we have to count.
Okay?

Then, if we need to do any further polling, we will,
but we're going to do it this way, at least, at first.

Okay.  So going through the form, question number 1,
"Was Herndon Partners, LLC, an employer of Francisco Martinez
Moreno?"  The answer was "Yes."

So those of you who answered "Yes," please raise your
hand.  Okay.  That is everyone, 12 votes.

Okay.  Question 2, "Was Herndon Partners, LLC,
negligent?"  The answer was "Yes."

Those of you who answered "Yes," please raise your
hands.  Okay.  12.  Thank you.

"3.  Was Herndon Partners, LLC's negligence a
substantial factor in causing harm to Francisco Martinez
Moreno?"  The answer was "Yes."

Those of you who answered "Yes," please raise your
hands.  Okay.  12.  Thank you.

"4.  Was Amador Electric negligent?"  The answer was
"No."

Those of you who answered "No," please raise your
hand.  Okay.  12.

And, then, "5.  Was Amador Electric's negligence a
substantial factor in causing harm to decedent Francisco
Martinez Moreno?"  The answer there was "No," as well.

Those of you who answered "No"?  Everyone.  Okay.  12.

1    Okay.  Then, we go to item 6, which are the damages,
2  and so I'll be asking on each line item here.  In fact, I'm
3  going to do my own calculation here.  Okay.
4    "6.  What are Consuelo Martinez, Trinidad Moreno, and
5  Sofia Martinez's total damages?  Do not reduce the damages
6  based on the fault, if any, of Francisco Martinez Moreno or
7  others:
8    "(a).  Past" non-economic "losses:  Past lost earning
9  capacity of decedent Francisco Martinez Moreno."  The number
10  there was "$142,899" -- I'm sorry, economic damage.
11    "6(a).  Past lost earning capacity of decedent
12  Francisco Martinez Moreno."  The number was "$142,899."
13    Those of you who reached that number, please raise
14  your hand.  12.
15    Then, the "Past value of home services that Francisco
16  Martinez Moreno would have provided:  $121,347."
17    Those of you who reached that conclusion, please raise
18  your hand.  12.
19    And "Total past" non-economic -- gosh, darn it.
20  "Total past economic losses" total "$264,246," which is
21  simply adding those two together.
22    Okay.  So, then, we go to "(b).  Future economic
23  losses.  Future earning capacity that decedent Francisco
24  Martinez Moreno would have contributed:  $2,000,000."
25    Those of you who answered "$2,000,000," please raise
26  your hand.  12.

"Future value of home services that Francisco Martinez
Moreno would have provided:  $1,073,343."

Those of you who reached that conclusion, please raise
your hand.  Okay.  12, zero.

So there is then just the arithmetic.  And the total
is "$3,073,343" for that category.

So then we go to "6(c).  Consuelo Martinez's past
non-economic losses" is zero.

Those of you who reached that conclusion, please raise
your hand.  12.  Thank you.

Okay.  "6(d).  Consuelo Martinez's future non-economic
losses:  $7,000,000."

Those of you who reached that conclusion, please raise
your hand.  Okay.  12.

And so that's the total for that category as well.

Then, we go to "Non-economic losses of Trinidad
Moreno," and the answer is zero -- I'm sorry, "6(e).
Trinidad Moreno's past non-economic losses" is zero.

Those of you who said that, please raise your hand.
Okay.  12, zero.

"(f) Trinidad Moreno's future non-economic losses:
$1,000,000."

Those of you who reached that conclusion, please raise
your hand.  12.

Then, we go to "6(g).  Sofia Martinez's past
non-economic loss" is zero.

Those of you who reached that conclusion, please raise your hand.  12.

And, then, "6(h).  Sofia Martinez's future non-economic losses:  $2,000,000."

Those of you who reached that conclusion, please raise your hand.  Is that everybody?  Okay.  12.

Okay.  Then we go to question 7, "Did the defendants prove that Francisco Martinez Moreno was negligent?"  The answer was "No."

Those of you who answered "No," please raise your hands.  12.

Then, we go to question 9, "Was Sierra Pacific Development, Inc., negligent?"  And the answer was "No."

Those of you who answered "No," please raise your hands.  All right.  12.

Question 11, "Was Malibu Pacific Construction and Development, Inc., negligent?"  The answer was "No."

Those of you who answered "No," please raise your hand.  Okay.  12.

And then "13.  For each entity or individual who received a check next to their name, please assign a percentage of responsibility for Francisco Martinez Moreno's death.  Place a '0' on the lines for those for which there was no check box."

"Herndon Partners, LLC," is the only checked box, and it says "100 percent."  None of the other boxes are checked,

1  and zero percent is allocated for the "Total" of

2  "100 percent."

3       Those of you who voted "Herndon Partners,

4  100 percent," please raise your hand.  12.

5       Okay.  Dated today's date, "5/30/13," signed by Susan

6  Guerrero, PJ, Presiding Juror.

7       And is any other polling required?

8       MR. HORN:  No, your Honor.

9       MR. PETRIE:  No, your Honor.

10      MS. LANCASTER:  No, your Honor.

11      THE COURT:  Is there any legal cause why the jury

12  should not be discharged at this time?

13      MR. HORN:  No, your Honor.

14      MR. PETRIE:  No, your Honor.

15      MS. LANCASTER:  No, your Honor.

16      THE COURT:  Okay.  Now, ladies and gentlemen, what

17  we're going to do is I've had a request from Counsel, if

18  those of you who would like to stay behind for ten minutes or

19  so, they would like to come back and talk to as many of you

20  who are willing to talk.  You're free to talk.  You're free

21  not to talk.  You're released from your admonition at this

22  point.  In fact, I need to give you that instruction.

23      Hang on one second, folks.

24      Okay.  This is actually from Cal-Crim 3590, but it's

25  applicable.  You've now completed your jury service in this

26  case.  On behalf the judges of our court and our staff,

please accept my sincere thanks for your time and effort in this case. It was an arduous case. It was a lot of time, a lot of evidence. And we really appreciate your participation.

Now, that the case is over, you may choose whether or not to discuss the case in your deliberations with anyone. Now, the lawyers in this case, the defendant -- or I shouldn't say that. The lawyers in this case and their representatives may now talk to you about the case, including your deliberations and verdict.

Those discussions must occur at a reasonable time and place and with your consent. Please immediately report to the Court any unreasonable contact made without your consent by the lawyers in this case, their representatives, or anyone else.

Okay. That's all we need for a civil case.

So that means you're free to discuss this case with whomever you wish. You're free also not to discuss the case. You're discharged at this time with our sincere thanks for your participation in this process.

It's the best process in the world for resolving disputes, and we appreciate and can't do it without you, either on the criminal or the civil side. So those of you who would like to remain behind, I am going to hold it to about ten minutes because we do have some issues that we have to discuss once you're gone.

1      But about 3:15 or 3:20.  So please stay in the jury

2  room, and Counsel will come back and talk to you.  And,

3  again, thank you very much.  You are --

4      MS. LANCASTER:  Your Honor?

5      THE COURT:  -- discharged.

6      MS. LANCASTER:  On behalf of the Martinez family, we

7  just want to thank you all so much for your service and your

8  patience and your thoughtfulness.  This has been a huge

9  sacrifice to all of you and your families, and we really

10 appreciate that.

11     THE COURT:  All right.  Thank you.

12     (Whereupon the jury exited the courtroom.)

13     THE COURT:  Okay.  Then, we'll go back.  Have Counsel

14 only.

15     MR. HORN:  And, then, we can make our motions, your

16 Honor?

17     THE COURT:  We'll do them when they get back.

18     MR. LEATH:  One more copy of that final one that was

19 redacted or been cleaned up?

20     THE COURT:  We'll run one for you.

21     MR. LEATH:  Thanks.

22     (A brief recess was taken.)

23     THE COURT:  Okay.  Back on the record, then.  The

24 jurors have been discharged.  Mr. Owhadi is present,

25 Mrs. Martinez is present, and Counsel are present.

26     Mr. Horn, you had something?

MR. HORN: Yes, your Honor. We have several requests.
First to make a Motion for Nonsuit, Directed Verdict, and
Judgment Notwithstanding the Verdict based on the dual
employment doctrine and the workers' comp insurance of Malibu
Pacific. The Court ruled, in the trial to the Court, that
Malibu Pacific had workers' comp insurance, although the jury
didn't believe it, but the Court ruled Malibu Pacific had
workers' comp insurance and Malibu Pacific was an employer of
Mr. Martinez.

The jury has found in question 1 Mr. Martinez was an
employee of Herndon. The dual employment doctrine is
automatic. There is no special employment Labor Code section
3602 analysis. There is no valid enforceable contract. He
was a dual employee. We have two fact findings. He was a
dual employee. There was workers' comp insurance.

I have briefed this already. I submitted the brief
about a week ago, probably before that -- but certainly a
week ago. I submitted all the cases to the Court.

It is absolutely automatic that the workers' comp
exclusivity rule bars any remedy, any judgment, any award,
any verdict, any money against Herndon Partners.

In addition, we make a motion for mistrial, a motion
that no judgment be entered until after a hearing and a
ruling on the motions just made. And to the extent a
judgment is entered, we request a stay of execution pending
appeal. Obviously, a bond could be posted, but we don't --

THE COURT:  Yeah.  I understand.  I've been there.

MR. HORN:  I know.

THE COURT:  I've sat where you've sat.  I understand.

MR. HORN:  The Court knows that -- whatever.

THE COURT:  I got it.  I get it.

Ms. Lancaster?

MS. LANCASTER:  I'm not sure what I should respond to.

THE COURT:  We've got a number of things.  Let me start with the motion for Nonsuit, Directed Verdict, and JNOV.  I am denying those without prejudice to those being brought as formal, written motions.  Those have to be briefed.

Plaintiff, obviously, has to have an opportunity to respond to that outside the pressure of a trial.  I am not saying -- I am not saying that either of your motions are without merit or with merit or anything else.  But it is not the kind of thing I'm going to grant on a verbal motion.

Now, with respect to the entry of judgment, I, obviously, am not privy to the insurance issues in this case.  I have no idea about that deliberately.  So what I would propose is that we set a hearing early next week with respect to the entry of judgment.

MS. LANCASTER:  Your Honor, --

THE COURT:  I know you've got one already, but we've got a lot of issues here, and I don't know.  Do we have a comp lien in this case?

1    MS. LANCASTER:  The comp case has been resolved, your

2  Honor.  We would ask that judgment be entered today.

3    THE COURT:  I am not going to do it today.  I will not

4  do it today.  I will accept your proposed judgment --

5    MS. LANCASTER:  An amend --

6    THE COURT:  -- and look at it.

7    MS. LANCASTER:  An amended judgment?

8    THE COURT:  I have 24 hours.

9    MS. LANCASTER:  Sure.

10    MS. LANCASTER:  I will prepare a proposed judgment.

11  As your Honor stated, there are some outstanding issues, the

12  primary one being the ruling on the workers' compensation

13  issue, a determination by this Court of whether Herndon was

14  or was not insured for workers' compensation at the time.

15  That's the primary outstanding issue in our mind.

16    There was a 998 demand that expired.  Plaintiffs will

17  be entitled to costs and interest as well as prejudgment

18  interest.  However, we would like a judgment on file as soon

19  as possible so that interest can begin to accrue while they

20  make all of these motions --

21    THE COURT:  Yes.

22    MS. LANCASTER:  -- and such.

23    THE COURT:  Well, okay.  So what I'm going to do is

24  set this for a hearing, and we can do it on Tuesday or

25  Wednesday afternoon at 3:30.  You can appear by phone.  I

26  don't know that you need personal appearance.  And we will

1  determine -- I will look at the proposed judgment, and I will

2  give the defendants an opportunity to submit a judgment if

3  they wish, and we'll go from there.

4       With respect to a stay, I am not -- it's not my

5  practice to enter a stay without bond for 60 or 70 days.

6  However, depending on what the coverage situation is and what

7  the degree of, you know -- I don't want to see plaintiff

8  unduly prejudiced or prejudiced at all for that matter,

9  either.  So I'll take up the issue of a duration of a stay at

10  that time.

11       MS. LANCASTER:  So we would be returning Tuesday or

12  Wednesday to deal with judgment.  When is it that this Court

13  will hear and rule on the issue of work -- Herndon's lack of

14  workers' compensation coverage?

15       THE COURT:  Well, I think that's going to have to be

16  the subject of a post-trial proceeding.  And they will be

17  bringing a motion that there was coverage, and you will be

18  opposing it.  And we may have to take evidence on it.  I

19  don't know.  We already took some evidence on this.

20       MS. LANCASTER:  Right.

21       THE COURT:  We had the adjuster here from -- you know,

22  I'll have to get the transcript.

23       MR. LEATH:  She made the record, I believe.

24       THE COURT:  We don't need to revisit that.  She went

25  through the file and said, "Herndon was never a named

26  insured.  We knew nothing about Herndon," et cetera, et

cetera.

I don't think that's his argument.  His argument is that Herndon, as a matter of law, is covered whether they were a named insured or not.  So I don't know that we're going to need any more evidence on that.

MR. HORN:  Judge, the argument -- we're not -- we're not seeking to have State Compensation Insurance Fund pay any money.  The testimony of the witness who testified to that is off point.  It's not -- the point is the law says that the exclusivity doctrine applies in dual employment.  We have a Court ruling and the jury ruling.

THE COURT:  I think that's what I just said.

MR. HORN:  Thank you.

THE COURT:  And that's your argument.

MR. HORN:  No.  I agree.

And, your Honor, if I can -- with regard to the motion I made -- and I understand it's denied.  But if I can make sure it incorporates a Motion for New Trial.

THE COURT:  Of course.  I expect them all.  I have no doubt --

MR. HORN:  Thank you, your Honor.

THE COURT:  -- we will be seeing them.

MS. LANCASTER:  And I think, just to make sure we're all on the same page, it's been both parties' position, since before the jury trial, that this Court has all of the evidence related to the workers' compensation issue.

1    Certainly, Mr. Horn has a different interpretation of

2  the law.  But, again, if he wants to brief that, it's our

3  position it's been his position for the last 28 days that all

4  the law, all the facts, all the evidence has been submitted

5  to this Court.

6    THE COURT:  Well, the difference between now and then

7  is we now have a complete record or as complete a record as

8  we're going to have as to what happened.

9    MS. LANCASTER:  Right.

10    THE COURT:  So that's why I didn't rule on it then.

11    MS. LANCASTER:  Certainly.  I understand that, your

12  Honor.  Again, my understanding of Mr. Horn's contention is

13  Malibu Pacific gets paid for by Mr. Owhadi.  All the rest of

14  his companies get paid for by Mr. Owhadi.  Therefore, this --

15  Herndon Partners is covered by Malibu Pacific's workers' comp

16  coverage even though, as SCIF said, there was no intention,

17  and they're not covered.

18    So we can brief that.  We'll oppose it.  But

19  certainly, we would like an expedited briefing schedule on

20  that.  It is prejudicial to the plaintiffs to postpone any

21  entry of judgment.

22    THE COURT:  Well, I didn't suggest that I was going to

23  postpone the entry of judgment.  I would -- I would probably

24  enter judgment and stay of execution for a limited period of

25  time.

26    And like I say, I mean, what is Herndon Partners

1  according to Mr. Horn?  It's a file folder and a checkbook.

2  So I mean, it's not Chevron.  You get my drift?  So I have to

3  take that into consideration as well.

4       So we'll talk about that next week.  Let's set this

5  for Wednesday.  Okay?  Does that work for everybody?

6       MS. LANCASTER:  Wednesday at 3:30, your Honor?

7       THE COURT:  Yes.

8       MR. HORN:  Yes, your Honor.  Thank you.

9       THE COURT:  May -- June 5th; right?

10      THE JUDICIAL ASSISTANT:  Yes.

11      THE COURT:  June 5th at 3:30.

12      MS. LANCASTER:  And the sole issue that will be dealt

13 with on Wednesday is the entry of judgment?

14      THE COURT:  The entry of judgment, the stay of

15 execution that they're requesting and its duration and its

16 terms, and a determination as to whether we need to have some

17 sort of expedited briefing schedule on this comp issue,

18 independent of whatever other post-trial motions they're

19 going to bring.  The time doesn't begin to run for their

20 post-trial motions until judgment is entered.

21      MS. LANCASTER:  Correct.

22      THE COURT:  So, yes, we'll talk about all of those

23 issues.  I have an open mind as to how to handle them.  I

24 want to handle them as expeditiously as possible.  But we've

25 got a $14 million verdict.  So I mean, we have to --

26 everybody has to have due process on that.  That's what I'm

1   going to be looking at.

2       MS. LANCASTER:  And, your Honor, when would the Court

3   like any proposed judgments by --

4       THE COURT:  I have it.

5       MS. LANCASTER:  -- in case I notice a typo?

6       THE COURT:  Yes.

7       MS. LANCASTER:  I think you offered the defendants to

8   submit one.

9       THE COURT:  You can -- you can submit it.  You can

10  submit it, any changes, by e-mail to Ben, as far as I'm

11  concerned.  Same thing with the defense.

12      MR. HORN:  With the proposed judgment, your Honor?

13      THE COURT:  Yes.

14      MR. HORN:  And if something has been given to Ben

15  already, I haven't seen it.

16      THE COURT:  She -- I have a judgment.  She can give

17  you a copy.

18      MR. HORN:  Yeah.  I'm not going to get a copy.

19      THE COURT:  So is there anything else we need to do

20  today?

21      MS. LANCASTER:  No, your Honor.  Certainly we want to

22  thank you and the staff for all of your patience and

23  incredible hard work in dealing with this case.

24      THE COURT:  Well, I thank Counsel.  I know that we had

25  our differences from time to time, but it's the type of case

26  where that happens.  And I don't have any ill will towards

1   anybody, and I think you guys -- I will also say I think the

2   closing arguments in this case were very good on both sides.

3         MS. LANCASTER:  Thank you.

4         THE COURT:  I appreciate your cooperation.

5         MR. OWHADI:  Thank you.

6         MR. HORN:  Thank you, Judge.

7         MR. PETRIE:  Thank you.

8         THE COURT:  I'll see you Wednesday afternoon.

9                             -oOo-

10       (Volume XXVII consists of pages 4172 to 4207.

11       There are no pages 4208 to 6750.  Volume XXVIII

12       will begin on page 6751.)

13                             -oOo-

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF FRESNO    )


          I, SUZANNE M. McKENNON, Certified Shorthand Reporter,

do hereby certify that the foregoing pages 4172 to 4207,

inclusive, comprise a full, true and correct transcript of my

shorthand notes, and a full, true and correct statement of

the proceedings held at the time and place heretofore stated.

          DATED:  November 18, 2015

                  Fresno, California




          _____

              SUZANNE M. McKENNON, CSR, CRR, RMR
                 CERTIFICATE NO.  9713