STEPHEN M. HAYES (SBN 83583)
JOSHUA N. KASTAN (SBN 284767)
ANGUS J. CANNON (SBN 292927)
**HAYES SCOTT BONINO**
**ELLINGSON & McLAY, LLP**
203 Redwood Shores Parkway, Suite 480
Redwood City, California 94065
Telephone: 650.637.9100
Facsimile: 650.637.8071

Attorneys for Plaintiff
HARTFORD CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation, <br><br> Plaintiff, <br><br> v. <br><br> FIREMAN'S FUND INSURANCE COMPANY, a California Corporation; BURNS & WILCOX INSURANCE SERVICES, INC., a California Corporation; and DOES 1 to 50, <br><br> Defendants. | CASE NO. 15-cv-02592-SI <br><br> **DECLARATION OF EDWARD J. McKINNON IN SUPPORT OF PLAINTIFF HARTFORD CASUALTY INSURANCE COMPANY'S SUPPLEMENTAL OPPOSITION TO FIREMAN'S FUND'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION, ON FIREMAN'S COUNTERCLAIM FOR RESCISSION AND HARTFORD'S COUNT FOR REFORMATION** |
| BURNS & WILCOX INSURANCE SERVICES, INC., a California Corporation, <br><br> Cross-Complainant, <br><br> v. <br><br> MOSEN O'HADI aka MOSEN 'OHAD dba MALIBU PACIFIC and/or MALIBU PACIFIC REAL ESTATE CO and/or MALIBU COASTAL INSURANCE SERVICES, and DOES 1 – 100, inclusive, <br><br> Cross-Defendants, | Hearing Date:  July 8, 2016 <br> 9:00 a.m. <br> Dept.:  Courtroom 1, 17th Floor <br> Judge:  Honorable Susan Illston <br> Complaint Filed:  June 10, 2015 <br> Trial:  November 14, 2016 <br> 8:30 am |

///
///
///

-1-

701225

DECLARATION OF EDWARD McKINNON ISO SUPPL. OPPOSITION TO FIREMAN'S FUND'S MSJ
*HARTFORD CAS. INS. CO. v. FIREMAN'S FUND INS. CO. ET AL.* – CASE NO. 3:15-CV-02592-SI

I, Edward J. McKinnon, declare as follows:

1. I have personal knowledge of each matter stated herein and, if called as a witness, I could and would competently testify thereto. I am readily familiar with the facts set forth in this declaration.

2. I submit this declaration in support of Plaintiff Hartford Casualty Insurance Company's ("Hartford") Supplemental Opposition to Fireman's Fund Insurance Company's ("Fireman's Fund") Motion for Summary Judgment.

3. I have been involved in the insurance industry since 1969, and have extensive experience regarding the handling of personal lines and commercial lines claims in California. From 1988 to present, I have been the President and Founder of Claims Resource Management, Inc., an independent claims services provider.

4. A true and correct copy of my current curriculum vitae is attached hereto as Exhibit "P".

5. I have been retained by Hartford with regard to the instant lawsuit and, for the purpose of this declaration, asked to provide my professional opinion on certain topics regarding Fireman's Fund handling of the claims relating to the underlying wrongful death action.

6. I have completed a preliminary review of more than 8,000 pages of documents relative to this case, including but not limited to the documents produced in discovery by Fireman's Fund, Burns & Wilcox Insurance Services, Inc. ("Burns & Wilcox"), and Mosen O'Hadi. I have also reviewed Hartford's Second Amended Complaint, the exhibits attached thereto, and Fireman's Fund's Answer and Counterclaim for Rescission.

7. I have also reviewed a Fireman's Fund primary homeowners policy, policy number NZA 335 54 52 ("Fireman's Fund Primary Policy"), and a Fireman's Fund excess policy, policy number NZA 242 90 23 ("Fireman's Fund Excess Policy"). In addition, I reviewed the claim file relative to the claims made to Fireman's Fund relative to the underlying wrongful death action which I understand were produced by Fireman's Fund in discovery in this case.

8. I have further reviewed the deposition transcripts of Mosen O'Hadi, Donna Bacarti, Marc Orloff, and Lynn Hadfield taken in the instant case.

1    9.   In the various roles I have held in the insurance industry since 1969, I have been involved in handling and/or supervising tens of thousands of personal and commercial lines claims on behalf of numerous insurance companies.

10.  Based upon my review of Fireman's Fund claim file produced in this action, on December 10, 2010, Fireman's Fund claims representative Melanie Juarros received an e-mail from Danyelle Baker, an employee of one or more of Paul Owhadi's companies, advising that they were aware of two policies with Fireman's Fund: the Fireman's Fund Primary Policy and the Fireman's Fund Excess Policy. (FF001450.)

11.  On January 27, 2011, Ms. Juarros recorded details in the Fireman's Fund claim file of the Fireman's Fund excess policy that had been referenced in December 2010 by Ms. Baker. (FF001448.)

12.  Based upon my review of the Fireman's Fund claim file, Fireman's Fund Technical Director Marc Orloff first authorized the opening of a claim relative to the underlying wrongful death action on December 4, 2012. (FF001429) The claim file for the Fireman's Fund Excess Policy appears to have been opened on December 5, 2012. (FF001468.) Nonetheless, Ms. Juarros' first note in the claim file for the Fireman's Fund Excess Policy was not until more than a month later, on January 9, 2013. (FF001467.)

13.  On May 27, 2012, Ms. Juarros entered a claim summary into the claim file that recognized that the Fireman's Fund Excess Policy "may extend coverage even thouugh [sic] Herndon is not a named insured so coverage may not apply as Mr. Owhadi is not a named defendant." (FF001435.)

14.  On September 21, 2012, supervisor Gibson acknowledged in a log note that Mr. Owhadi had told Fireman's Fund that he intended to live in the Subject Premises until the fatality occurred:

> "With reference to my previous note, I read back thru earlier file note and insd told us that he intended to live in the home until the fataility occurred. <u>His explanation is understandable and I don't see any way we can refute it but we still need to be sure the other homes listed on our umbrella policy are appropriately listed</u>."

(FF001433 [emphasis added].)

-3-

15.     Based upon my review of the Fireman's Fund claim file, trial in the underlying wrongful death action began on April 8, 2013.

16.     Ms. Juarros' claim activity notes do not mention the Fireman's Fund Excess Policy again for over a year –until April 23, 2013. On that day, Ms. Juarros' noted in the claim file indicate that she had a conversation with Mr. Owhadi. Her notes indicate that "[h]e did mention his umbrella policy to us. I inquired as to whom he thought that would extendcoverage [sic] to abd [sic], he replied 'himself and the house but not Herndon' however acknowledged that he was not a named defendant in the suit.'" (FF0014118.) There is no indication in Ms. Juarros' notes in the claim file that she mentioned to Mr. Owhadi during that conversation that a claim file had been opened on the Fireman's Fund Excess Policy, which as the prior notes in the claim file indicate, was opened on December 5, 2012.

17.     On April 26, 2013, Ms. Juarros' notes in the claim file indicate that she had a telephone conversation with Mr. Owhadi and "that he was going to send [her] an email advising that he may seek coverage under the umbrella as he still has concerns that this [the underlying trial] may go sideways." (FF001416.)

18.     On April 30, 2013, the supervisor Gibson, recorded in the claim file that he had alerted Technical Director Orloff to Owhadi's comments regarding the Fireman's Fund Excess Policy (which the claim notes refer to as the "umbrella" policy). (FF001416.)

19.     On May 27, 2013, through his personal counsel Charles Malaret, Mr. Owhadi forwarded a copy of the Fireman's Fund Excess Policy to Fireman's Fund's coverage counsel, Katherine Liner. (FF001501.) In Mr. Malaret's e-mail, he specifically reserved Herndon Partners, LLC's ("Herndon") rights to seek coverage under the Fireman's Fund Excess Policy. (*Id.*)

20.     On May 28, 2013, Ms. Juarros recorded in the claim file for the Fireman's Fund Excess Policy that the underlying wrongful death trial was ongoing and that both Mr. Owhadi and his personal attorney, Mr. Malaret, had sent formal notices of tender and reserved their rights. (FF001465.) I could not locate a formal tender from Mr. Owhadi.

21.     On May 29, 2013, Mr. Orloff recorded in the claim file for the Fireman's Fund Excess Policy that he had reviewed a draft response regarding the tender under the Fireman's Fund

-4-

1  Excess Policy and that he agreed with the recommendation to disclaim coverage to Herndon for the
2  underlying wrongful death action. (FFIC001465.)

3      22.    That same day, May 29, 2013, Ms. Juarros sent a letter to "Mr. Paul Owhadi,
4  Herndon Partners LLC." (Decl. Joshua Kastan, Ex. N.) Although the letter includes a reference to
5  Fireman's Fund declining coverage under the Fireman's Fund Excess Policy, based upon my
6  training and experience in insurance claims, the letter is not a true coverage denial. Under the
7  section of the letter titled "Coverage Position," she included three paragraphs. (*Id.* at 4.)

8      23.    In the first paragraph of that section of the letter, Ms. Juarros acknowledged that Mr.
9  Owhadi was an insured under the Fireman's Fund Excess Policy, correctly stating that Mr. Owhadi
10 had not been named in the lawsuit, and therefore that there should be no judgment entered against
11 him following the trial. She also requested that Fireman's Fund be notified if Mr. Owhadi was
12 named. (*Id.*)

13     24.    In the second paragraph of that section of the letter, Ms. Juarros stated that Herndon,
14 which was named as a defendant in the underlying wrongful death action, was not expressly named
15 as an insured on the Fireman's Fund Excess Policy. She then quoted a section of the Fireman's
16 Fund Excess Policy's definition of "insured" which included as an insured "any person or
17 organization held liable for an act or failure to act by [Owhadi]." (*Id.*)

18     25.    Significantly, within Ms. Juarros' May 29, 2013 letter, she also acknowledged that
19 the Fireman's Fund Excess Policy *could* afford coverage to Herndon "to the extent the term
20 'insured' is defined to include 'any person or organization held liable for an act or failure to act by'
21 you." (*See* Ex. N, at 4.) <u>Ms. Juarros' letter also stated that the Fireman's Fund Excess Policy was
22 excess to the Fireman's Fund Primary Policy</u> and the applicable limits of any other collectible
23 insurance that covered Herndon, such as the Hartford policies. (*Id.* at 4-5.)

24     26.    In the third paragraph of that section of her letter, Ms. Juarros also referenced an
25 exclusion in the Fireman's Fund Primary Policy and the Fireman's Fund Excess Policy applicable
26 to "business" activities or "business" property, stating that to the extent that Owhadi or Herndon's
27 liability arose from such activity or property, no coverage would be afforded to Herndon under
28 either policy. (*Id.* at 5.) Notably, <u>Ms. Juarros also recognized that the Fireman's Fund Excess</u>

701225

-5-

Policy "follow[ed] form to the [Fireman's Fund] Primary Policy." (*Id.* [emphasis added].)

27. Despite its internal recognition of the potential for coverage under the Fireman's Fund Excess Policy that Ms. Juarros had recorded more than a year earlier in Fireman's Fund claim file on May 17, 2012, Ms. Juarros' May 29, 2013 letter is the first time that Fireman's Fund acknowledged to its named insured Mr. Owhadi, or the entity it recognized as a possible insured, Herndon, that the Fireman's Fund Excess Policy "could" afford coverage to Herndon as well as to Owhadi, if he was joined in the underlying wrongful death action.

28. Based upon my review of the Fireman's Fund claim file, the jury returned its verdict on May 30, 2013.

29. Based upon my training and experience in insurance claims, as well as my review of the materials provided to me to date, it is my professional opinion that Fireman's Fund's handling of the claim on the Fireman's Fund Primary Policy and Fireman's Fund Excess Policy was deficient and far below the standard of care. The deficiencies are particularly acute in two main areas: investigation of the claim and communication. Fireman's Fund failed to analyze or investigate the availability of coverage under the Fireman's Fund Excess Policy and it failed to communicate its potential applicability to anyone outside of Fireman's Fund until May 29, 2013 – the day before the jury returned its verdict.

30. I understand additional depositions and discovery are planned in this case, and so I anticipate reviewing such later-developed additional information once it is provided to me as this case continues, and I reserve the right to amend the opinions provided herein based upon such additional material.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed this 1st day of July, 2016 at _____, California.

_____
EDWARD McKINNON

-6-