1

2

3

4                        UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    HARTFORD CASUALTY INSURANCE           Case No.  15-cv-02592-SI
     COMPANY,

8                     Plaintiff,
                                           **ORDER GRANTING FIREMAN'S**
9         v.                               **FUND INSURANCE COMPANY'S**
                                           **MOTION FOR SUMMARY JUDGMENT**
10   FIREMAN'S FUND INSURANCE
     COMPANY, et al.,                      Re: Dkt. No. 74

11                    Defendants.

12

13

14        On July 8, 2016, the Court held a hearing on defendant Fireman's Fund Insurance

15   Company's motion for summary judgment.  Dkt. No. 74.  After careful consideration of papers

16   submitted, and for the reasons articulated in open court, the Court hereby GRANTS the motion.

17

18                                   **BACKGROUND**

19   **I.    The Underlying Action and the Policies**

20        In 2013, a wrongful death lawsuit (the "Underlying Action") ultimately resulted in an

21   approximately $8,800,000 judgment against Herndon Partners, LLC ("Herndon"),[1] a corporation

22

23        _____

24        [1] The Court GRANTS Hartford's unopposed request for judicial notice of the certified
     copy of the Limited Liability Company Articles of Organization for Herndon, Partners, LLC, filed
25   with the California Secretary of State on April 9, 2003.  *See* Dkt. No. 83 (Hartford's RJN).  The
     Court observes that it granted Fireman's Fund's identical request eight months ago.  *See* Dkt. No.
26   57 (Order on Fireman's RJN); Dkt. No. 45 (Fireman's RJN).  Upon a properly supported request
     by a party, a federal court may take judicial notice of adjudicative facts. Fed. R. Evid. 201(a), (d).
27   Facts subject to judicial notice are those which are either "(1) generally known within the
     territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort
28   to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court may
     not take judicial notice of a matter that is in dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 690
     (9th Cir. 2001).

*United States District Court*
*Northern District of California*

owned by Paul Owhadi.[2]  The lawsuit arose after Francisco Martinez Moreno was electrocuted while working as an employee of Herndon at a home located at 31522 Broad Beach Road in Malibu, California (the "Malibu Property") in September 2009.[3]  Kastan Decl., Ex. N, May 29, 2013 letter from Fireman's to Owhadi (Dkt. No. 80-12) at 2.[4]  Only Herndon held title to the Malibu Property.  *See* Owhadi Decl. (Dkt. No. 82) ¶ 6.

Prior to the wrongful death lawsuit, plaintiff Hartford Casualty Insurance Company ("Hartford") issued to Herndon a business liability policy with both primary coverage ($2,000,000 limit) and excess coverage ($1,000,000 limit).  SAC, Ex. C, Hartford policies (Dkt. No. 42-3) at CP127, CP143.  The Hartford policies were in effect from March 19, 2009 to March 1, 2010.  *Id.* at CP143.

Defendant Fireman's Fund Insurance Company ("Fireman's") issued a primary homeowner's policy (the "Primary Policy"), listing the Malibu Property, with a $300,000 limit,

---

[2] A jury found Herndon solely liable and awarded $14,000,000 in damages; the award was later reduced to $8,800,000.  Order on Mot. to Dismiss (Dkt. No. 55) at 1.

[3] Fireman's filed numerous requests for judicial notice along with its motion for summary judgment.  RJN (Dkt. No. 74-14; Dkt. No. 86-4).  Fireman's requests that the Court take judicial notice of the trial transcripts of the Underlying Action from April 17, May 28, May 29, April 22, June 12, May 30, and May 16.  *See* Dkt. Nos. 74-15, 74-16, 74-17, 74-18, 74-19, 74-20, 74-21, 72-22, 74-26, 74-27, 74-29, 86-5.  Additionally, Fireman's requests that the Court take judicial notice of the jury verdict from the Underlying Action, the filing entitled "Plaintiff's Acceptance of Remittitur" in the Underlying Action, the Second Amended Complaint filed by Hartford, and this Court's Order Denying Fireman's Fund Insurance Company's Motion to Dismiss.  *See* Dkt. Nos. 74-24, 74-25, 74-28.  Hartford does not object to the requests for judicial notice.

The facts established in the Underlying Action include that Herndon was a real estate and development company which was held 100% negligent for the death of its employee, Mr. Moreno, and that Herndon bought the Malibu Property not as a vacation home, but as a property to be renovated and flipped.  *See* RJN, Ex. J, jury verdict, (Dkt. No. 74-23) at 3:16-22, 5:4-5, 6:9; RJN, Ex. M, June 20, 2013 trial transcript (Dkt. No. 74-26) at 6861:25-6862:7.

Federal Rule of Evidence 201 permits a court to take judicial notice of adjudicative facts "not subject to reasonable dispute."  Fed. R. Evid. 201.  Further, a court may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal citations omitted); *see also United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (holding that a court can take judicial notice "of its own records in other cases, as well as the records of an inferior court in other cases").

The Court GRANTS the request.

[4] The page numbers cited throughout this order refer to the page numbers generated by ECF unless otherwise noted.

United States District Court
Northern District of California

1   and named "Paul Owhadi c/o Herndon Partners LLC" as the insured and "Herndon Partners LLC"

2   as an additional insured.  Hadfield Decl., Ex. A, Primary Policy (Dkt. No. 74-2) at FF000256,

3   FF000295.  The Primary Policy was in effect from October 29, 2008 to October 29, 2009.  *See id.*

4   at FF000255.  Fireman's also issued an excess liability policy (the "Excess Policy") with a

5   $5,000,000 limit, effective October 2, 2008 to October 2, 2009.  *See* Hadfield Decl., Ex. B, excess

6   policy (Dkt. No. 74-3) at FF000146; Kastan Decl., Ex. G, email excerpts between Burns and

7   O'Hadi (Dkt. No. 80-7) at BW000260.  The Excess Policy was a personal umbrella policy that

8   named "Paul Owhadi [and] Susan Owhadi" as insureds.  *See id.* at BW000252; Hadfield Decl.,

9   Ex. B, excess policy (Dkt. No. 74-3) at FF000146.  Both the Primary Policy and Excess Policy

10  contained exclusions for business activity, business property, and workers' compensation.  *See*

11  Hadfield Decl., Ex. A, Primary Policy (Dkt. No. 74-2) at FF000280-82; Hadfield Decl., Ex. B,

12  Excess Policy (Dkt. No. 74-3) at FF000178-180.

13          Hartford provided a defense to Herndon in the wrongful death lawsuit in 2011.  SAC, Ex.

14  A, assignment agreement (Dkt. No. 42-1) at 002.  Fireman's also agreed to provide a defense to

15  Herndon, but only under its Primary Policy.  *See* Kastan Decl., Ex. N, May 29, 2013 letter from

16  Fireman's to Owhadi (Dkt. No. 80-12) at 4.  Fireman's refused to provide coverage under its

17  Excess Policy because Herndon was not a named insured.  *See id.*  Fireman's also cited the

18  exclusions for business activity, business property, and workers' compensation in the Excess

19  Policy as reasons not to provide excess coverage.  *See id.* at 2.  Fireman's later refused to

20  indemnify Herndon under the Primary Policy.  *See* SAC (Dkt. No. 42) ¶ 47.

21          In July 2013, following the judgment, Herndon, Paul Owhadi, and Susan Owhadi executed

22  an assignment agreement with Hartford.  SAC, Ex. A, assignment agreement (Dkt. 42-1) at 20.

23  Hartford now acts as Herndon, Paul Owhadi, and Susan Owhadi's assignee for claims against

24  Fireman's related to the Underlying Action and the two Fireman's policies.  SAC, Ex. A,

25  assignment agreement (Dkt. 42-1).

26

27  **II.      The Present Case**

28          On June 11, 2015, Hartford filed the present complaint alleging causes of action against

*United States District Court*
*Northern District of California*

3

Fireman's for: (1) indemnity; (2) contribution; (3) reformation; and (4) declaratory judgment. *See* SAC (Dkt. No 42).

Fireman's now moves for summary judgment.   Fireman's MSJ (Dkt. No. 74).[5]   First, Fireman's advances a counterclaim for rescission, arguing that this Court should rescind both its Primary and Excess Policies due to material misrepresentations by Paul Owhadi.   *Id.* at 14:2-3 (citing California Insurance Code Section 359 which states, "if a representation is false in a material point . . . the injured party is entitled to rescind the contract.").    In the alternative, Fireman's argues that this Court should grant summary judgment against Harftord on Hartford's reformation claim because there is no evidence that the parties mutually intended to cover Herndon or its business activities, or that Owhadi made a unilateral mistake when he sought coverage under the two Fireman's policies.

## III.    The Insurance Applications

The history of the procurement of the Fireman's policies is as follows:   Paul Owhadi submitted primary and excess applications to Cross-Defendant Mosen O'Hadi, a licensed insurance broker representing Owhadi's (and Herndon's) interests.   *See id.* at 12:1-2; Near Decl., Ex. P, O'Hadi's homeowner application (Dkt. No. 74-10); Near Decl., Ex. Q, Burns' personal umbrella application (Dkt. No. 74-11).    After Owhadi completed the primary and excess applications, O'Hadi contacted Donna Bacarti, a personal lines manager at Defendant Burns & Wilcox ("Burns"), a wholesale insurance broker.   O'Hadi submitted to Bacarti a "Homeowner's Application" and a "Personal Umbrella Application" (respectively, the "Primary Application" and the "Excess Application").   Bacarti Decl. (Dkt. No. 74-13) ¶¶ 1-4, 6, 9.   The Primary Application identified the named insured as "Herndon Partners LLC" and sought to insure the Malibu Property.   Kastan Decl., Ex. C, Primary Application submitted to Burns (Dkt. No. 80-3) at

---

[5] Along with its motion, Fireman's includes evidentiary objections to the declarations of Joshua Kastan, Paul Owhadi, and Don Way because they were not subscribed as true under penalty of perjury. Reply (Dkt. No. 86) at 6:12-18. All three of these declarations have since been supplemented with the required subscription. *See* Errata (Dkt. Nos. 88, 89, 90). As such, the Court OVERRULES AS MOOT Fireman's evidentiary objection.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    BW000246.  The applicant's occupation was "real estate investor" and the applicant's employer

2    was "Sierra Pacific," a real estate development company.  *Id.* at BW000246.[6]

3         Fireman's points out that the applications contain a number of questions to which Owhadi

4    answered "no."  *See* Fireman's MSJ (Dkt. No. 74) at 12:18.  These include whether "any farming

5    or other business [is] conducted on premises?," whether "any real estate [is] . . . used

6    commercially or for business purposes?," and whether "any business and/or professional activities

7    [are] included in the primary policies?"  Near Decl., Ex. P, O'Hadi's homeowner application (Dkt.

8    No. 74-10) at Ohadi 000314; Near Decl., Ex. Q, Burns' personal umbrella application (Dkt. No.

9    74-11) at BW000011.

10        Bacarti then sent both applications to Lynn Hadfield, a personal lines underwriting

11   specialist at Fireman's.  Bacarti Decl. (Dkt. No. 74-13) ¶¶ 6, 9; Hadfield Decl. (Dkt. No. 74-1)

12   ¶¶ 7, 9.  Hadfield was responsible for approval and issuance of both policies.  Hadfield Decl. (Dkt.

13   No. 74-1) ¶ 4.  Bacarti advised Hadfield that, "according to Mr. O'Hadi, the Malibu Property was

14   a vacation home . . . owned by Herndon Partners, LLC."  Bacarti Decl. (Dkt. No. 74-13) ¶ 7.

15   Bacarti also advised Hadfield that Herndon was created for tax purposes only, did not conduct

16   business, and consisted solely of Owhadi.  Hadfield Decl. (Dkt. No. 74-1) ¶ 5.  Hadfield made a

17   number of notes in the underwriting file to document this conversation.  Fireman's version of the

18   primary application with these notes reflects that the named insured is "Paul Owhadi c/o Herndon

19   Partners LLC."  Kastan Decl., Ex. D, Fireman's version of the primary application (Dkt. No. 80-4)

20   at FF000019.  The notes on this application also state that Herndon is "made up of the insd. only

21   for tax purposes."  *Id.*   Fireman's underwriting file confirms that (1) the "LLC is listed as add'l

22   insd (made up of the insd. only for tax purposes)";  (2) that "only [the] insured makes up LLC and

23   no business exposure — is acceptable"; and (3) that Hadfield "verified that the liab will be listed

24   not extended due to the LLC.  The LLC is made up of Paul Owhadi (the insd) only and it is not a

25   formal corporation, just created for tax purposes."  Hadfield Decl., Ex. C, underwriting file (Dkt.

26   _____

27        [6] The Excess Application lists "Paul & Susan Owhadi" as the named insureds and does not
     list the Malibu Property.  "Herndon" is absent from the excess application.  Near Decl., Ex. Q,
28   Burns' personal umbrella application (Dkt. No. 74-11) at BW000008; Kastan Decl., Ex. B, excess
     application (Dkt. No. 80-2) at F000076.

5

No. 74-4) at FF000009-12.

Fireman's alleges that it discovered that these representations were false based on the Underlying Action, which established that Herndon was a real estate and development company that conducted business, and that the Malibu Property was not a vacation home, but rather a "flip." RJN, Ex. M, June 12, 2013 trial transcript, judgment on verdict by Judge Snauffer, (Dkt. No. 74-26) at 6861:23-6862:2. Hadfield contends that "Fireman's Fund would not have issued the polic[ies] had it known that the Malibu Property was not a vacation property and was in fact a business property owned by a real estate and development business." Hadfield Decl. (Dkt. No. 74-1) ¶¶ 8, 10.

## IV. The Arguments of the Parties

Fireman's asserts that it is entitled to rescind the policies based on Owhadi's material misrepresentations that the Malibu property was a vacation home, that Herndon was created merely for tax purposes, and that Herndon was not engaged in business. Fireman's MSJ (Dkt. No. 74) at 8:23-26. In the alternative Fireman's argues that because there was no common intention of the parties to enter into a commercial general liability contract, Hartford's reformation count fails. *Id.* at 9:10-11.

Hartford argues in opposition that, while Owhadi did not make any misrepresentations in his applications, he did make a unilateral mistake which supports its reformation claim.[7] *See*

---

[7] Hartford filed numerous objections to Fireman's' evidence. Dkt. No. 79 at 24-26. The Court OVERRULES Hartford's objections to ¶¶ 4, 5, 7 of the Bacarti Declaration and ¶ 5 of the Hadfield Declaration. The statements demonstrate the state of mind of the individuals issuing the policies; documentary evidence of what individuals heard is not required to establish foundation for the statements. The Court OVERRULES Hartford's objections to ¶¶ 8, 10 of the Hadfield Declaration; foundation is provided through personal knowledge which is not speculative and does not assume facts. Hadfield has sufficient knowledge to render an opinion about her own performance as an underwriting specialist at Fireman's. The Court OVERRULES AS MOOT Hartford's objections to ¶ 2 at 2:10-11 of the Near Declaration and to ¶ 3, Ex. E of the Near Declaration. The parties do not dispute that Herndon ultimately held title to the property located at 31522 Broad Beach Road in Malibu, California at the time of the events that gave rise to the underlying action. *See* Owhadi Declaration, Dkt. No. 82 ¶ 6. The Court's analysis is not affected by statements to the effect that Paul Owhadi "entered into" an agreement to purchase the Malibu Property or "subsequently placed ownership of the property in Herndon Partners." The Court OVERRULES Hartford's objection to ¶ 8, citing Ex. R of the Near Declaration. Ex. R is an email from O'Hadi to Bacarti, with the subject heading, "Paul [O]whadi" stating, among other things,

United States District Court
Northern District of California

1    Oppo. (Dkt. No. 79) at 21:13-23.

2         The Court has carefully reviewed the parties' submissions.  There is no evidence to support

3    Hartford's reformation claim:  there is no evidence that Owhadi made a unilateral mistake, or that

4    Fireman's knew or should have known of Owhadi's mistake, or that the parties actually had a

5    mutual intention to provide coverage for business activities under the Fireman's policies, or that

6    the parties had the mutual intention that Herndon would be either a named or additional insured on

7    Fireman's Excess policy.  Because the Court will not reform the Fireman's policies, Hartford's

8    claims for indemnity, contribution, and declaratory judgment based on the reformation of those

9    policies also fail.  Because the originally issued Fireman's policies remain in place (with the

10   Primary Policy containing a business activities exclusion and the Excess Policy not naming

11   Herndon as an insured) Hartford is not entitled to recover from Fireman's pursuant to the two

12   Fireman's policies.  The Court will therefore dismiss Fireman's crossclaim for rescission as moot.

13

14                                **LEGAL STANDARD**

15        Summary judgment is proper "if the movant shows that there is no genuine dispute as to

16   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

17   The moving party bears the initial burden of demonstrating the absence of a genuine issue of

18   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however,

19   has no burden to disprove matters on which the nonmoving party will have the burden of proof at

20   trial. *Id.* at 325.  The moving party need only demonstrate to the Court that there is an absence of

21   evidence to support the non-moving party's case.  *Id.*

22        Once the moving party has met its burden, the burden shifts to the nonmoving party to "set

23   forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a

24   genuine issue for trial.'"  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630

25   _____

26   that Owhadi was "buying a vacation home."  This statement is independently corroborated by
     Bacarti's Declaration, dkt. no. 74-13 ¶ 4, and goes to Bacarti's state of mind when she advised
27   Fireman's of O'Hadi's description of the property and its ownership.  *See id.* ¶ 7.  The Court
     finally OVERRULES AS MOOT Hartford's objection to Fireman's request for judicial notice, Ex.
28   4 ¶ 3, page 4059.  This statement was made by an attorney in closing argument in the Underlying
     Action and is thus not evidence.

United States District Court
Northern District of California

(9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id*. at 255. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# DISCUSSION

## I.    Hartford is Not Entitled to Reformation of Fireman's Policies

California Civil Code § 3399 provides,

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Reformation is an equitable remedy intended to correct injustice so as to reflect the true intent of the parties to the original contract.  *See Jones v. First Am. Title Ins. Co.*, 107 Cal. App. 4th 381, 388-389 (Cal. Ct. App. 2003).  The intent of the parties in a cause of action for reformation "refers to a single intention which is entertained by both parties." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 908 (Cal. Ct. App. 2013) (internal quotation marks and citation omitted). "Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties." *Id.* (internal quotation marks and citations omitted).

Hartford argues that the Fireman's policies should be reformed because they are illusory as written, do not name the correct insured, and therefore do not reflect the true intentions of the

parties.  Oppo. (Dkt. No. 79) at 21:10-13.  Hartford relies on "Paul Owhadi's unilateral mistake" to predicate its reformation claim.  *Id.* at 21:9-10.  Hartford also asserts that Fireman's "knew or should have known" that Owhadi made a mistake in procuring the policies "because it had knowledge of facts that distinctly showed Herndon intended to purchase and did purchase the Malibu Property" and therefore should have been provided with coverage for business activities, as well as being a named insured.  *Id.* at 21-23.

Fireman's responds that Hartford has failed to provide any evidence showing (1) that the parties shared a mutual intention to cover business activities on the property pursuant to the Primary Policy or to name Herndon as an insured on the Excess Policy; or (2) that Owhadi made a mistake in procuring the Primary or Excess Policy; or (3) that Fireman's knew or suspected Owhadi's purported mistake(s).  Reply (Dkt. 86) at 15-18; Supp. Reply (Dkt. 104) at 5: 10-17. The Court agrees with Fireman's.

## II.     The Fireman's Fund Primary Policy

As executed, the Fireman's Fund Primary Policy contains a business activities exclusion. Kastan Decl., Ex. I, Primary Policy (Dkt. No. 80-9) at FF000275, FF000280. In order to overcome summary judgment on its reformation claim, Hartford must present some evidence that the parties had a mutual intention that the primary insurance agreement would cover Herndon, a business (in addition to Owhadi and his wife), and that this intention conflicted with the written instrument. Hartford must also present evidence of a mistake on Owhadi's part, which Fireman's knew or should have known about when Fireman's issued the policy.

### A.     There Is No Evidence of a Mutual Intention by the Parties to Cover Business Activities Pursuant to the Primary Policy

To reform a contract to reflect the true intention of the parties, "[i]t must appear there was a mutual intention of the parties."  *La Mancha Dev. Corp. v. Sheegog*, 78 Cal. App. 3d 9, 16-17 (Cal. Ct. App. 1978).

Hartford has presented no evidence that Fireman's had the intention, shared with Owhadi,

that the Primary Policy—a *personal* lines homeowner's policy—was intended to cover the business activities of Herndon.


###    B.    There Is No Evidence of a Unilateral Mistake by Owhadi in Securing the Primary Policy

Under California Civil Code Section 3399, a reformation claim can succeed if, through a "mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties[.]"  California courts have held that the mistake of one party is a sufficient basis for reformation "only when the mistake is known or suspected by the other party." *See La Mancha Dev. Corp. v. Sheegog*, 78 Cal. App. 3d 9, 16 (Cal. Ct. App. 1978); *see also City of Cypress v. New Amsterdam Cas. Co.*, 259 Cal. App. 2d 219, 225 (Cal. Ct. App. 1968).  Further, "constructive notice of the unilateral mistake of the other party is not a sufficient ground for reformation." *La Mancha*, 78 Cal. App. 3d at 16.

There is no evidence that Owhadi made a mistake when he secured the Primary Policy.

Hartford argues that Owhadi "believed he had secured [P]rimary and [E]xcess policies from Fireman's Fund that covered Herndon, himself and his wife for, among other things, liability at the Malibu Property."  Oppo. (Dkt. No. 79) at 21:21-23.  Hartford contends that "Owhadi believed he required this breadth of coverage to not only protect Herndon as the owner of the Malibu Property, but also himself and his wife to the extent he was exposed to personal liability through his business and his wife under community property laws." *Id.* at 21:23-25.

Hartford supports these arguments by highlighting that Fireman's initially agreed to provide Herndon with a defense to the Underlying Action under the Primary Policy. *Id.* at 22:1-3. Fireman's mistake in providing a defense to Herndon in the Underlying Action is not the unilateral mistake that Hartford needs.  Hartford must provide the Court with evidence that *Owhadi* made a unilateral mistake in securing the policy.[8]  In support of Owhadi's mistake, Hartford cites to one

---

[8] The Court observes that it clearly set out the basis for this cause of action in its prior order denying Fireman's motion to dismiss Hartford's SAC.  *See* Order, Mot. to Dismiss (Dkt. No. 55) at 4-5.

paragraph of the Owhadi declaration, which states,

> On the eve of the jury verdict in the underlying wrongful death suit, Fireman's Fund declined to acknowledge coverage for Herndon under the Fireman's Fund Excess Policy.
>
> Fireman's Fund had been defending Herndon for several years under the Fireman's Fund Primary Policy without any reservation of rights as to Herndon's indemnity. Fireman's Fund even hired its own attorney to represent Herndon in the underlying wrongful death action.

Oppo. (Dkt. No. 79) at 22:1-4 (citing Owhadi Decl. (Dkt. No. 82) ¶ 19).

This portion of the Owhadi declaration fails to assert any mistake on Owhadi's part regarding the acquisition of the Primary policy. This is the only evidence Hartford cites in its opposition. Notably, the Court provided Hartford with the opportunity to supplement its opposition after taking further depositions in this case.[9]  *See* Order for Supp. Br. (Dkt. 98). Hartford's supplemental opposition asserts that "all the information Fireman's Fund needed to issue . . . its policies was *correctly* and accurately represented on the application forms" filled out by Owhadi.  Supp Oppo. (Dkt. No. 100) at 3:14-16 (emphasis added).

The Court has searched the record for evidence of a unilateral mistake on Owhadi's part in securing the Primary Policy.  Because Hartford has not put forth "sufficient evidence supporting the claimed factual dispute" on whether Owhadi made a mistake, summary judgment is proper. *See Anderson*, 477 U.S. at 249.

### C.  There Is No Evidence That Fireman's Knew or Suspected That Owhadi Made a Mistake in Securing the Primary Policy

The Court also finds no evidence that Fireman's knew or suspected that Owhadi made a mistake when he sought homeowner's insurance pursuant to the Fireman's Primary Policy.

Hartford first contends that Fireman's should have inquired as to Herndon's status and/or insurability, noting that "Herndon was a business in the form of a limited liability corporation."

---

[9] Hartford requested the opportunity to complete additional depositions prior the close of discovery and was provided this opportunity by the Court.  Oppo. (Dkt. No. 79) at 23; Order for Supp. Briefing (Dkt. No. 94); Hartford Supp Br. (Dkt. No. 100).

United States District Court
Northern District of California

*See* Oppo. (Dkt. No. 79) at 22:8-9.  Entities such as limited liability companies may hold and convey property, however.  4 Cal. Real Est. § 11:66; *see also BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 180 (2004) (noting that an LLC "acquired the property"); *see also Kwok v. Transnation Title Ins. Co.*, 170 Cal. App. 4th 1562, 1565 (Cal. Ct. App. 2009) (stating that "the LLC purchased real property").  Herndon's designation as an LLC was insufficient to raise Fireman's suspicions concerning Owhadi's alleged mistake in securing a personal lines homeowner's insurance policy.  O'Hadi represented to Fireman's that the Malibu Property was owned by Herndon, that Herndon consisted solely of Paul Owhadi, and that Herndon did not actually conduct business.  Hadfield Decl. (Dkt. No. 74-1) ¶ 5.

Second, Hartford asserts that Fireman's knew or should have known of Owhadi's mistake because "Herndon held exclusive title to the Malibu Property."  Oppo. (Dkt. No. 79) at 22:10.  As noted above, limited liability corporations routinely hold title to real property.  *See* 4 Cal. Real est. § 11:66; *see also BedRoc*, 541 U.S. at 180; *see also Kwok*, 170 Cal. App. 4th at 1565.  Further, as Fireman's observes, "no one has ever disputed that Herndon was the owner of the property."  Reply (Dkt. No. 86) at 9:27-28.  Although Herndon held title to the Malibu Property, Fireman's has advanced evidence in support of its belief that Herndon was created for tax purposes only and did not actually conduct business, as well as its subsequent decision to issue the policies to Paul Owhadi and his wife based on Owhadi's answers to questions in the insurance applications.

Third, Hartford claims that Fireman's should have inquired further because "Mosen O'Hadi intended to obtain a [P]rimary and [E]xcess policy from Fireman's Fund covering Herndon, Paul Owhadi and Susan Owhadi."  Oppo. (Dkt. No. 79) at 22:11-13.  There is no evidentiary support for this claim.  Hartford cites to a portion of O'Hadi's deposition, which states, "to me, Paul, Susan, they're husband and wife . . . and Herndon . . . Partners is them.  So to me, they're all one . . . the Partners is just — it's just another name for [Paul and Susan Owhadi], as far as I understood."  Oppo. (Dkt. No. 79) at 22:12-13; Reply (Dkt. No. 86) at 10:1-11.  On its face the O'Hadi deposition fails to assert an intention to obtain coverage for Herndon as a business entity distinct from Paul Owhadi and Susan Owhadi.  Assuming this citation is incorrect and that O'Hadi did possess such intent, there is no evidence before this Court that this intent was

communicated to Fireman's or that Fireman's should have known of such intent.  It is unclear how such intent put Fireman's on notice of *Owahdi's* mistake in securing a personal lines homeowner's policy that was intended to cover the business activities of Herndon.

Fourth, Hartford contends that Fireman's possessed information to put it on notice of Owhadi's unilateral mistake because "Herndon and/or Paul Owhadi were identified as a 'real estate investor.'"  Oppo. (Dkt. No. 79) at 22:14-15.  This assertion is not entirely accurate.  On the primary application containing the underwriter's notes, "Paul Owhadi c/o Herndon Partners LLC" is listed as the named insured.  Kastan Decl., Ex. D, Fireman's version of the primary application (Dkt. No. 80-4) at FF000019. "Paul Owhadi c/o Herndon Partners LLC" would not have raised suspicions of a mistake by Owhadi merely because Owhadi was employed as a real estate investor with a company called Sierra Pacific. The primary application first submitted by Burns lists the named insured as "Herndon Partners, LLC," however the applicant is still Paul Owhadi.  Dkt. No. 80-3 at BW000248 (signature of Paul Owhadi).  More to the point, it is not clear to the Court how Owhadi's occupation as a real estate investor would have notified Fireman's of Owhadi's mistake in his homeowner's insurance application containing a business activities exclusion.  Presumably real estate investors also procure homeowner's insurance.

Fifth, Hartford contends that Fireman's possessed information to put it on notice of Owhadi's mistake because "the Malibu Property was a vacation home and not Paul Owhadi's primary residence."  Oppo. (Dkt. No. 79) at 22:16-17.  Fireman's initially believed that the Malibu Property was a vacation home rather than a business property (or a primary residence), and as such its issuance of homeowner's insurance with a business activities exclusion was proper.  *See* Fireman's MSJ (Dkt. No. 74) at 16:28-17:1.

Sixth, Hartford states that the "Malibu Property was to 'go through a complete overhaul' immediately after its purchase by Herndon."  Oppo. (Dkt. No. 79) at 22:18-19.  Owners can renovate vacation homes, as can business entities.  This fact is insufficient to have put Fireman's on notice of any potential problems with insurability.

Seventh, Hartford claims that Fireman's should have inquired further because "Herndon and/or Paul Owhadi owned, occupied or rented - *at a minimum* - eleven other properties"

13

(emphasis included in original).  Oppo. (Dkt. No. 79) at 22:20-21.  Hartford supports this assertion by citing to the excess application which lists eleven properties.  *See id.* at  22: 22-23; Kastan Decl., Ex. Ex. B, excess application (Dkt. No. 80-2) at FF000084-85.  First, Hartford does not explain how this evidence should have put Fireman's on notice when it issued the Primary Policy with the business activities exclusion.  In any event, as stated by Owhadi in his declaration, "many of the properties listed on the Fireman's Fund Excess Policy were held by entities, such as the [Malibu Property] that was owned by Herndon or, for example 31502 Victoria Point Road . . . (owned by JMC International, LLC) or 4264 W. Shaw Avenue . . . (owned by Chrisco, LLC). Other properties listed on the Fireman's Fund Excess Policy were owned by me individually, or myself and my wife."  Owhadi Decl. (Dkt. No. 82) ¶ 13.

Despite these differences, it is clear that Herndon did not "own[], occup[y] or rent[] - at a minimum - eleven other properties."  *See* Oppo. (Dkt. No. 79) at 22:20-21.  None of the listed properties on the Excess Policy submitted to the Court, other than the Malibu Property, were owned by Herndon.

Of the properties that were owned by Owhadi and his wife, the declaration of Don Way, an insurance expert retained by Hartford, claims that "it would be unreasonable for any individual assisting in the application, placing, or issuing of insurance policies to conclude that an individual would own 11 to 18 properties in their own personal name . . . I believe that the standard of care in the insurance industry would be to inquire further."  Way Decl. (Dkt. No. 81) ¶ 3.  Way's assertion, however, fails to cite any authority which upholds such a standard of care.  It is also unclear why an insurer waives its right to rely on the accuracy of statements made in a personal homeowner's insurance application.  Even real estate developers are entitled to secure homeowner's insurance for a vacation home or a primary residence.

Finally, Hartford contends that Fireman's had notice of facts which should have caused it to inquire further because "the additional properties listed in the excess application were identified as 'rentals' that were rented to others."  *See* Oppo. (Dkt. No. 79) at 22:22-23.  Again, Hartford fails to explain how this evidence should have put Fireman's on notice when it issued the Primary Policy with a business activities exclusion.  If this was intended as evidence of Owhadi's mistake

14

United States District Court
Northern District of California

in securing the Excess Policy (see below), the Court agrees with Fireman's that this fact is irrelevant, as Herndon did not own any of these properties.  *See* Reply (Dkt. No. 86) at 11:5-6. Hartford further contends that "Herndon's ownership of numerous rental properties, including the Malibu Property, was disclosed to Fireman's Fund."  Oppo. (Dkt. No. 79) at 13:25-26.  There is simply no evidence in the record that Herndon owned "numerous rental properties."  *See id.*; Owhadi Decl. (Dkt. No. 82) ¶ 13.

There is no evidence that Fireman's knew or should have known of Owhadi's purported mistake in securing the Primary Policy with a business activities exclusion.

### III.    The Fireman's Fund Excess Policy

As executed, the Fireman's Fund Excess Policy does not list Herndon as a named insured.[10]  Kastan Decl., Ex. H, Excess Policy (Dkt. No. 80-8) at FF000146.  In order to overcome summary judgment on its reformation claim, Hartford must present some evidence that the parties had a mutual intention that the excess insurance agreement would cover Herndon, a business (in addition to Owhadi and his wife), and that this intention conflicted with the written instrument. Hartford must also present evidence of a mistake on Owhadi's part, which Fireman's knew or should have known about when Fireman's issued the Excess Policy.

#### A.    There Is No Evidence of a Mutual Intention by the Parties to Cover Herndon Pursuant to the Excess Policy

Hartford does not advance, nor has the Court located in the record, any evidence that Fireman's intended that the Excess Policy should cover Herndon.  Rather, all the evidence establishes that Fireman's intended and ultimately did issue the Excess Policy as a personal catastrophe excess liability policy to Paul Owhadi and Susan Owhadi.  Kastan Decl., Ex. H, Excess Policy (Dkt. No. 80-8).

---

[10]  The Excess Policy also contains a business activities exclusion, an issue not meaningfully briefed by either party.  Kastan Decl., Ex. H, Excess Policy (Dkt. No. 80-8) at FF000156, FF000173, FF000178.

**B.      There Is No Evidence of a Unilateral Mistake by Owhadi in Securing the Excess Policy**

There is no evidence that Owhadi made a mistake in securing the Excess Policy to cover himself and his wife.  In fact, a supplemental declaration provided by Hartford's expert, Edward J. McKinnon, recounts his review of Fireman's Fund's claim activity notes, which includes a statement by Owhadi to Fireman's claims representative on April 23, 2013 that Owhadi thought the Fireman's Excess Policy would extend "[to] himself and the house but not Herndon[.]"  Supp. Decl. McKinnon (Dkt. No. 102) at ¶ 16; *see also* Supp. Decl. Kastan (Dkt. No. 103-8) (containing the claim activity note).  Notwithstanding the lack of personal knowledge and hearsay problems this piece of evidence presents,[11] the Court underscores that it is Hartford — the party seeking reformation to reflect that Owhadi made a mistake and intended the Excess Policy to cover Herndon — that is advancing this evidence for the Court's attention.

**C.      There Is Also No Evidence That Fireman's Knew or Suspected That Owhadi Made a Mistake in Securing the Excess Policy**

Hartford lists the same reasons recounted above for why Fireman's knew or should have known of Paul Owhadi's mistake in securing the Excess Policy.  *See* Oppo (Dkt. No. 79) at 22. This evidence is insufficient to overcome summary judgment as to the Excess Policy as well. There is simply no evidence that Fireman's Fund knew or should have known that Owhadi made a mistake when he sought out, and ultimately received personal umbrella coverage pursuant to, the Excess Policy.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Fireman's motion for summary judgment on Hartford's claim for reformation.  Because the

---

[11] The Court observes that the alleged claim activity note appears to have been made by Melanie Juarros, a claims representative for Fireman's.  Supp. Decl. Kastan (Dkt. No. 103-8).  Ms. Juarros was not called to authenticate this document.  Hartford informed the Court in its supplemental brief that "the parties are in the process of coordinating" Juarros's deposition.  Supp. Br. (Dkt. No. 100) at 4:20-21.  Nothing in the record reflects that this deposition was taken.

policies will not be reformed by this Court, the remaining allegations in Hartford's Second Amended Complaint against Fireman's for indemnity, contribution, and declaratory judgment based on the reformation of those policies are therefore DISMISSED WITH PREJUDICE as moot.[12]  Fireman's counterclaim for rescission will be DISMISSED as moot in light of the fact that Fireman's has declined coverage and the policies remain as originally executed:  both with a business exclusion, with the Excess not naming Herndon as an insured.  *See* SAC (Dkt. 42) ¶ 47; Decl. Kastan Exh. N (Dkt. No. 80-12).

      **IT IS SO ORDERED**.

Dated:  August 22, 2016

                                      SUSAN ILLSTON
                                      United States District Judge

*United States District Court*
*Northern District of California*

---

[12] On June 6, 2016 and July 7, 2016, Hartford and Fireman's filed a series of joint statements regarding discovery disputes that persist between them. Dkts. No. 91, 107, 108, 109, 110, 111, 113.  Because the Court has granted Fireman's motion for summary judgment and dismissed Hartford's remaining allegations against Fireman's as moot, these discovery disputes are MOOT as well.