1  **Brian H. Gunn (SBN 192594)**
*bhgunn@wolfewyman.com*
2  **L. Scott Bruggemann (SBN 302499)**
*sbruggemann@wolfewyman.com*
3  **WOLFE & WYMAN LLP**
**2175 N. California Blvd., Suite 645**
4  **Walnut Creek, California 94596-3502**
**Telephone:  (925) 280-0004**
5  **Facsimile:  (925) 280-0005**

6  **Attorneys for Defendant/Cross-Complainant**
**BURNS & WILCOX INSURANCE SERVICES, INC.**
7

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10  **SAN FRANCISCO DIVISION**

11  HARTFORD CASUALTY INSURANCE      | Case No.:  3:15-cv-02592 SI
   COMPANY, an Indiana Corporation,
12                                   | **NOTICE OF MOTION AND MOTION**
                                     | **BY BURNS & WILCOX INSURANCE**
            Plaintiff,               | **SERVICES, INC. FOR SUMMARY**
13                                   | **JUDGMENT; MEMORANDUM OF**
      v.                             | **POINTS AND AUTHORITIES IN**
14                                   | **SUPPORT THEREOF**
   FIREMAN'S FUND INSURANCE COMPANY, a
15  California Corporation; BURNS & WILCOX   | Date:   October 28, 2016
   INSURANCE SERVICES, INC., a California  | Time:   10:00 a.m.
16  Corporation, and DOES 1 to 50,          | Place:  Courtroom 1, 17th Floor
17            Defendants.            | Hon. Susan Illston
18                                   |
19                                   | Trial Date:    10/17/2016
                                     | Action Filed:  06/10/2015
20  ─────────────────────────────
21  AND RELATED CROSS ACTIONS.
22  ─────────────────────────────

23  **TO ALL PARTIES AND/OR THEIR ATTORNEYS OF RECORD:**

24      **PLEASE TAKE NOTICE** that on **October 28, 2016 at 10:00 a.m.,** or as soon thereafter as

25  the matter may be heard in Courtroom 1, 17th Floor of the above-titled Court located at 450 Golden

26  Gate, San Francisco, California, Defendant BURNS & WILCOX INSURANCE SERVICES, INC.

27  ("Burns & Wilcox") will move for summary judgment on Plaintiff HARTFORD CASUALTY

28  INSURANCE COMPANY ("Hartford")'s Complaint.

1

2554281.1

Burns and Wilcox makes this motion based on this notice of motion and motion, the supporting memorandum of points and authorities, all judicially noticed matters, all pleadings and papers on file in this action, on the reply (if any), and on any and such further oral and documentary evidence as may be presented at the hearing on this matter.

DATED:  September 21, 2016                    WOLFE & WYMAN LLP


By:   ___/s/  L. Scott Bruggemann_____
        BRIAN H. GUNN
        L. SCOTT BRUGGEMANN
Attorneys for Defendant/Cross-Complainant
**BURNS & WILCOX INSURANCE SERVICES,**
**INC.**

**BURNS & WILCOX'S NOTICE AND MOTION FOR SUMMARY JUDGMENT**

2554281.1

# TABLE OF CONTENTS

Page

I.      SUMMARY .................................................................................................1

II.     STATEMENT OF FACTS ........................................................................2

III.    LAW .........................................................................................................5

IV.     ARGUMENT ...........................................................................................7

        A.      Burns & Wilcox Did Not Breach Its Duty by Obtaining the Primary Policy of
                Insurance Which Herndon Requested...............................................7

                1.      Burns & Wilcox Provided the Primary Policy Requested by Herndon. ...........8

                2.      Burns & Wilcox Did Not Owe An Enhanced Duty to Herndon.....................13

        B.      Hartford Cannot Prove Causation. ..................................................15

                1.      Herndon's Misrepresentations Are the Cause-In-Fact of Hartford's
                        Loss Under the Primary Policy........................................................15

                2.      Hartford Cannot Prove Causation Because Herndon Never Requested
                        an Umbrella Policy. ........................................................................16

                3.      Hartford Cannot Prove Causation Because Herndon's Business
                        Activities Were Excluded from Coverage. .....................................18

V.      CLOSING ................................................................................................19

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

## <u>TABLE OF AUTHORITIES</u>

Page

Cases

*American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) .......................... 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)............................................................ 5

*City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal. App. 4th 882, 886 (2000) (citing *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970...................................... 6

*Conroy v. Regents of University of Cal.*, 45 Cal. 4th 1244, 1250 (2009 ......................................... 6, 7

*Hydro-Mill Company v. Hayward, Tilton & Rolapp Ins. Assoc.* (2004) 115

    Cal.App.4th, 1145, 1153 ....................................................................................................... 7, 11

*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954 ............................................................................. 13

*LA Sound v. St. Paul Fire & Marine* (2007) 156 Cal.App.4th 1259, 1268 ........................ 8, 10, 16, 18

*Missouri Housing Development Commission v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990) .............. 6

*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457,476......................................... 11, 18

*Nissan Fire & Marine Inc. Co. V. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000 .......... 6

*Robinson v. Occidental Life Ins. Co. of Cal.* (1955) 131 Cal App.2d 581, 585 ............................... 15

*Salaman v. Bolt* (1977) Cal.App.3d 907, 919; *cited with approval in, Essex Ins.*

    *Co. v. Five Star Dye House, Inc.*, 38 Cal.4th 1252, 1264 (2006) ................................................ 6

*Wallman v. Suddock* (2011) 200 Cal. App. 4th 1288, 1309........................................................... 7, 11


**Other Authorities**

Insurance Code §§331 & 332 ........................................................................................................ 18


**Rules**

*Federal Rule of Civil Procedure* 56...................................................................................................... 5

**BURNS & WILCOX'S MEMORANDUM OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT**

2554281.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY

HARTFORD CASUALTY INSURANCE COMPANY ("Hartford") seeks to impose liability for professional negligence upon BURNS & WILCOX INSURANCE SERVICES, INC. ("Burns & Wilcox"), which allegedly resulted in unindemnified liability in the amount of $5.8 million. Hartford, the successor in interest to the claims of HERNDON PARTNERS, LLC ("Herndon"), argues Burns & Wilcox should have procured a policy of insurance other than the one which Herndon specifically requested through its licensed insurance broker. This Court, in ruling upon the FIREMAN'S FUND INSURANCE COMPANY ("Fireman's") Motion for Summary Judgment, found no evidence was proffered which indicated Herndon received anything less than the exact insurance policy it requested. Additionally, Hartford claims Burns & Wilcox was under a duty to procure an "umbrella" policy of insurance for which Herndon never submitted an application, but which Paul Owhadi ("Owhadi"), Herndon's sole member, along with his wife Susan Owhadi, specifically requested as an endorsement to a policy of insurance on their personal residence.

Burns & Wilcox counters that it procured a primary policy of insurance exactly as requested by Herndon's licensed insurance agent.  The application tendered to Burns & Wilcox undeniably contained material misrepresentations.  Moreover, Burns & Wilcox confirmed with Herndon's agent the accuracy of the application and the type of insurance requested.  Liability, argues Burns & Wilcox, does not flow if it obtained the policy requested where Herndon and Paul Owhadi misrepresented material facts.

In response to Hartford's claim Burns & Wilcox failed to obtain the proper umbrella coverage, it should be noted Hartford has not, and cannot, produce an application for umbrella coverage filled out by Herndon.  Burns & Wilcox argues it cannot be liable for failing to obtain a policy of insurance which was never requested.  Herndon's principal, along with his wife, requested umbrella coverage as an endorsement to their personal residence insurance policy prior to Herndon's acquisition of the property in question.  This cannot be confused with a request by Herndon to obtain umbrella coverage, as it neither owned the property at the time of application, nor submitted an application.

1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

1    Summary Judgment is appropriate because Hartford cannot demonstrate any negligence on

2    the part of Burns & Wilcox took place, or that any alleged negligence resulted in injury.  To the

3    extent an injury has been suffered, it results from Herndon's misrepresentations on the insurance

4    applications.

5    **II.    STATEMENT OF FACTS**

6    Hartford is the assignee of legal claims belonging to Herndon.  (Second Amended Complaint

7    ("SAC") ¶5) (*Order*, Doc. #120, p.3 lines 21-22).  Paul Owhadi was the sole member of Herndon.

8    (SAC ¶72).  Owhadi formed Herndon to hold assets, not to conduct business, stating "Herndon

9    Partners is not in the business of conducting business… It's formed to just hold assets.  That was it."

10   (SAC ¶72). On October 11, 2008, Herndon acquired title to the property located at 31522 Broad

11   Beach Road, Malibu, CA ("Malibu Property"). (SAC ¶13). Owhadi, on behalf of Herndon, intended

12   to obtain only a homeowner's policy of insurance on the Malibu Property.  He never requested

13   commercial insurance. (*Declaration of L. Scott Bruggemann*, Exhibit No. 3a).  He did not seek

14   commercial coverage because he did not believe Herndon conducted business at the Malibu

15   Property. (*Declaration of L. Scott Bruggemann*, Exhibit No. 3b).

16   Paul Owhadi utilized the services of Mosen O'Hadi ("O'Hadi"), a licensed insurance broker,

17   to prepare and apply for insurance related to the Malibu Property. (*Order*, Doc. #120, p.4 lines 14-

18   16). O'Hadi represented both Owhadi and Herndon's interests.  (*Order*, Doc. #120, p.4 line 16).

19   O'Hadi provided a Homeowner's Policy Form application for homeowners insurance on the

20   Malibu Property to Burns & Wilcox's personal lines manager, Donna M. Bacarti ("Bacarti").

21   (*Declaration of L. Scott Bruggemann*, Exhibit No. 1a) (*Order*, Doc. #120, p.4 lines 20-21).  O'Hadi

22   advised Bacarti that Paul Owhadi was seeking primary coverage for the Malibu home, which was

23   owned by Herndon. (*Declaration of L. Scott Bruggemann*, Exhibit No. 1b) (*Order*, Doc. #120, p.4

24   lines 22-24). O'Hadi advised Bacarti that Herndon conducted no business, consisted only of Owhadi,

25   and was created solely for tax purposes. (*Declaration of L. Scott Bruggemann*, Exhibit 1b and

26   Exhibit 1c) (*Order*, Doc. #120, p.4 lines 4-7) (*Order*, Doc. #120, p.12 lines 7-9).  O'Hadi advised

27   Bacarti the Malibu Property was a vacation home. (*Declaration of L. Scott Bruggemann*, Exhibit 1b;

28   *Declaration of L. Scott Bruggemann*, Exhibit No. 1d).  Bacarti instructed O'Hadi that an insurance

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2

1   policy could only be issued to the owners of a limited liability company, with the LLC listed as an

2   "also insured," and then only as long as it meets certain requirements. (*Declaration of L. Scott*

3   *Bruggemann,* Exhibit No. 1e and 1g). The requirements were that the LLC is in the name of an

4   individual or individuals, was created only for tax purposes, does not engage in business and has no

5   employees. (*Declaration of L. Scott Bruggemann,* Exhibit No. 1f).

6         Mosen O'Hadi believed the Malibu Property was never intended for use as a commercial

7   property. (*Declaration of L. Scott Bruggemann*, Exhibit 9a). O'Hadi believed Herndon was created

8   by Owhadi for tax purposes. (*Declaration of L. Scott Bruggemann*, Exhibit 9b). The Malibu

9   Property was purchased as a vacation home. (*Declaration of L. Scott Bruggemann,* Exhibit 1b).

10  Hartford now asserts the Malibu Property was intended for use as a business property. (SAC ¶¶ 79

11  & 83).

12        Herndon was the named insured on a Homeowner Application ("Application") for insurance

13  on the Malibu Property dated October 15, 2008. (*Declaration of L. Scott Bruggemann,* Exhibit 4).

14  Paul Owhadi was the named applicant. (*Declaration of L. Scott Bruggemann,* Exhibit 4). Paul

15  Owhadi was listed on the Application as a real estate investor employed by Sierra Pacific. (*Order*,

16  Doc. #120, p.4 lines 1-2). The property is listed on the Application as intended for seasonal usage

17  and owner occupied. (*Declaration of L. Scott Bruggemann,* Exhibit 4). A portion of the Application

18  seeks information on the number of weeks the property is rented- this is marked as "N/A."

19  (*Declaration of L. Scott Bruggemann,* Exhibit 4). The Application indicates that no business is

20  conducted at the Malibu Property. (*Declaration of L. Scott Bruggemann,* Exhibit 4). The

21  Application was signed by Mosen O'Hadi and Paul Owhadi. (*Declaration of L. Scott Bruggemann,*

22  Exhibit 4). "There is no evidence that Owhadi made a mistake when he secured the Primary

23  Policy." (*Order*, Doc. #120, p.10 line 13).

24        As a result of the Application, the Fireman's Fund Primary Policy ("Primary Policy") was

25  issued to "Paul Owhadi c/o Herndon Partners, LLC;" Herndon was named as an "also insured."

26  (SAC Exhibit D.) (*Order*, Doc. #120, p.2 line 11- p.3 line 2). Pursuant to the terms of the Primary

27  Policy, Fireman's Fund will not cover losses stemming from "business activities or business

28  property of any insured." (SAC Exhibit D) (*Order*, Doc. #120, p.3 lines 9-10).

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2554281.1

1   A Fireman's Fund Excess Policy ("Excess Policy") was issued to Paul Owhadi and Susan

2   Owhadi. (SAC Exhibit E) (*Order*, Doc. #120, p.3 lines 7-8). The Excess Policy, designated number

3   NZA 242 90 23, was an endorsement to the policy covering Paul and Susan Owhadi's Fresno

4   residence. (*Declaration of L. Scott Bruggemann,* Exhibit 1g; SAC Exhibit E). Herndon was never

5   listed on the application for the Fireman's Fund Excess Policy ("Umbrella Application")

6   (*Declaration of L. Scott Bruggemann,* Exhibit 5). O'Hadi prepared the Umbrella Application.

7   (*Declaration of L. Scott Bruggemann,* Exhibit 5). The Umbrella Application was dated August 14,

8   2008. (*Declaration of L. Scott Bruggemann,* Exhibit 5). The applicants were listed as "Paul & Susan

9   Owhadi." (*Declaration of L. Scott Bruggemann,* Exhibit 5). The Umbrella Application indicates

10  there are no properties used for business purposes. (*Declaration of L. Scott Bruggemann,* Exhibit 5).

11  The Umbrella Application was signed on October 2, 2008 by both Mosen O'Hadi and Paul Owhadi.

12  (*Declaration of L. Scott Bruggemann,* Exhibit 5).

13      O'Hadi was aware the Excess Policy was an endorsement to the Owhadi's policy on the

14  Fresno residence. (*Declaration of L. Scott Bruggemann,* Exhibit 6). Victoria D'Albero, an employee

15  of Burns & Wilcox, sent an e-mail to O'Hadi dated November 26, 2008 discussing the Owhadi's

16  Excess Policy. (*Declaration of L. Scott Bruggemann,* Exhibit 7). This followed a November 17,

17  2008 communication which also stated coverage under the Excess Policy was intended for the

18  Owhadis. (*Declaration of L. Scott Bruggemann,* Exhibit 8).

19      In October 2010, a wrongful death action was filed against Herndon, among others, in Fresno

20  Superior Court Case No. 10 CE CG 03837 ("Underlying Action")(SAC ¶11). On May 30, 2013 a

21  jury rejected Herndon's defense, finding Herndon employed the decedent and was 100% responsible

22  for his death. (SAC ¶ 15). Damages in the amount of $8,818,101 were eventually awarded. (SAC

23  ¶17)(*Order*, Doc. #120, p. 1 line 20).

24      By letter dated May 29, 2013 from Fireman's, a claim made by Owhadi and Herndon related

25  to the Underlying Action on the Excess Policy was denied because Owhadi, the named insured, had

26  not sued. (SAC ¶45) (*Order*, Doc. #120, p.3 lines 16-17). Herndon, which was a party to the

27  Underlying Action, was not a named insured on the Excess Policy and no coverage was available.

28  (SAC ¶45). The Excess Policy excluded coverage for business activities, such as those conducted by

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

2554281.1

1    Herndon. (*Declaration of L. Scott Bruggemann,* Exhibit 2) (*Order*, Doc. #120, p.3 lines 9-10).

2    Fireman's later denied Herndon coverage under the Primary Policy as well. (*Order*, Doc. #120, p.3

3    lines 19-20).

4        Hartford alleges Burns & Wilcox "owed professional and fiduciary duties of care to

5    Herndon, including but not limited to using reasonable care, diligence, and judgment in procuring

6    the insurance that Herndon requested." (SAC ¶¶33 &116).  This duty applied to the "procurement

7    and delivery of the Fireman's Fund Primary Policy and the Fireman's Fund Excess Policy." (SAC

8    ¶116).  Hartford asserts Burns & Wilcox was negligent in "procuring the Fireman's Fund Excess

9    Policy, which provided coverage for between eleven properties in October 2008 to eighteen

10   properties as amended in November 2008.  Title to these properties was respectively held by various

11   businesses and individuals, including Herndon's title to the Subject Premises." (SAC ¶118).

12       In ruling upon the Motion for Summary Judgment filed by Co-Defendant Fireman's Fund,

13   this Court found there was "…no evidence to support Hartford's reformation claim: there is no

14   evidence that Owhadi made a unilateral mistake…" (*Order*, Doc. #120, p.7 lines 2-3).  As a result,

15   this Court found the "originally issued Fireman's policies remain in place (with the Primary Policy

16   containing a business activities exclusion and the Excess Policy not naming Herndon as an

17   insured)…" (*Order*, Doc. #120, p.7 lines 9-11).

18       The Court also found that "[t]here is no evidence that Owhadi made a mistake in securing the

19   Excess Policy to cover himself and his wife.  In fact, a supplemental declaration provided by

20   Hartford's expert, Edward J. McKinnon, recounts his review of Fireman's Fund's claim activity

21   notes, which includes a statement by Owhadi to Fireman's claims representative on April 23, 2013

22   that Owhadi thought the Fireman's Excess Policy would extend '[to] himself and the house but not

23   Herndon[.]'" (*Order*, Doc. #120, p.16 lines 2-6).

24   **III.   LAW**

25       *Federal Rule of Civil Procedure* 56 provides that a "court shall grant summary judgment if

26   the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

27   to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule also provides that "[a] party asserting

28   that a fact cannot be or is not genuinely disputed must support the assertion by [*e.g.*] citing to

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

2554281.1

1    particular parts of materials in the record, including depositions, documents, electronically stored

2    information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other

3    materials." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a

4    reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

5    248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be

6    evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the

7    summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving

8    party and all justifiable inferences are to be drawn in the non-movant's favor. *See id.* at 255.

9           In order to obtain summary judgment, a moving party "must produce evidence negating an

10   essential element of the nonmoving party's claim or defense or show that the nonmoving party does

11   not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

12   *Nissan Fire & Marine Inc. Co. V. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  A

13   "complete failure of proof concerning an essential element of the nonmoving party's case

14   necessarily renders all other facts immaterial" and entitles the moving party to summary judgment.

15   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

16          The well-known elements of a negligence claim are duty, breach, causation, and damages.

17   *Conroy v. Regents of University of Cal.*, 45 Cal. 4th 1244, 1250 (2009).  "When damages are an

18   element of a cause of action, the cause of action does not accrue until the damages have been

19   sustained. 'Mere threat of future harm, not yet realized, is not enough.'" *City of Vista v. Robert*

20   *Thomas Securities, Inc.*, 84 Cal. App. 4th 882, 886 (2000) (citing *United States Liab. Ins. Co. v.*

21   *Haidinger–Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970) (citations omitted)).

22          Factual assertions made in pleadings "are considered judicial admissions conclusively

23   binding on the party who made them." (*American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d

24   224, 226 (9th Cir. 1988)).  "[A]dmissions in the pleadings are binding on the parties and may support

25   summary judgment against the party making such admissions." (*Missouri Housing Development*

26   *Commission v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990)).

27          "As a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking

28   his rights and remedies subject to any right to offset or other defenses existing against the assignor

6

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2554281.1

1    prior to actual notice of the assignment." (*Salaman v. Bolt* (1977) Cal.App.3d 907, 919; *cited with*

2    *approval in, Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal.4th 1252, 1264 (2006)).

3    **IV.**    <u>**ARGUMENT**</u>

4        Hartford Casualty Insurance Company is the assignee of legal claims belonging to Herndon

5    stemming from a Judgment against Herndon in the Fresno County Superior Court in 2013.  Hartford

6    admits Herndon was involved in the business of real estate development with respect to the Malibu

7    Property.  It is now estopped from arguing Herndon was not engaged in business, or that the Malibu

8    Property was not a business project of Herndon.

9        Hartford makes a claim for professional negligence against Burns & Wilcox, asserting that

10    "Burns & Wilcox owed professional and fiduciary duties of care to Herndon, including but not

11    limited to using reasonable care, diligence, and judgment in procuring the insurance that Herndon

12    requested." (SAC ¶116).  This duty related to "procurement and delivery of the Fireman's Fund

13    Primary Policy and the Fireman's Fund Excess Policy." (SAC ¶116).  Hartford alleges Burns &

14    Wilcox was negligent in "procuring the Fireman's Fund Excess Policy, which provided coverage for

15    between eleven properties in October 2008 to eighteen properties as amended November 2008. Title

16    to these properties was respectively held by various businesses and individuals, including Herndon's

17    title to the Subject Premises." (SAC ¶118).  However, the Excess Policy became effective October 2,

18    2011, a week before Herndon completed its purchase of the Malibu Property.  The Umbrella

19    Application for the Excess Policy was dated August 14, 2008, two months before the Malibu

20    Property purchase was completed.

21        Hartford also alleges Burns & Wilcox breached the standard of care "by failing to exercise

22    reasonable care in procuring the Fireman's Fund Primary Policy ("Primary Policy"), given that

23    Fireman's Fund ultimately failed to provide coverage under that policy related to the" Underlying

24    Action. (SAC ¶119).  The Underlying Action went to trial, resulting in damages of almost nine

25    million dollars.

26        **A.**    <u>**Burns & Wilcox Did Not Breach Its Duty by Obtaining the Primary Policy of**</u>

27          <u>**Insurance Which Herndon Requested.**</u>

28        A cause of action for professional negligence is comprised of four elements: 1) duty;

**BURNS & WILCOX'S MEMORANDUM OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT**

2554281.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2) breach; 3) causation; and 4) damages. (*Conroy v. Regents of University of Cal.*, 45 Cal. 4th 1244, 1250 (2009)).  Hartford argues Burns & Wilcox "owed professional and fiduciary duties of care to Herndon, including but not limited to using reasonable care, diligence, and judgment *in procuring the insurance that Herndon requested*." (SAC ¶116)(emphasis added).  "It is undisputed that an insurance agent's failure to procure agreed-upon coverage is actionable negligence."  (*Wallman v. Suddock* (2011) 200 Cal. App. 4th 1288, 1309; *Hydro-Mill Company v. Hayward, Tilton & Rolapp Ins. Assoc.* (2004) 115 Cal.App.4th, 1145, 1153).  An insurance broker owes its client a duty to use reasonable care, diligence and judgment in procuring the insurance <u>requested by its client</u>.

The question then is, what insurance did Herndon request Burns & Wilcox obtain?  The answer is clear: Mosen O'Hadi requested Burns & Wilcox obtain primary coverage on the Malibu Property solely as a vacation property.  As a matter of law, Mosen O'Hadi was the agent of Herndon, and his directions to Burns & Wilcox are binding upon Herndon.  (*LA Sound v. St. Paul Fire & Marine* (2007) 156 Cal.App.4th 1259, 1268).  Also clear is that O'Hadi did not request an umbrella policy on behalf of Herndon.

### 1.     <u>Burns & Wilcox Provided the Primary Policy Requested by Herndon.</u>

Mr. O'Hadi, a licensed insurance agent, prepared the Application on behalf of Herndon, selecting a Homeowner's Policy Form.  The Application, by its title was intended for homeowner's policies, and would not be used for commercial policies of insurance.  The Application specifically stated the Malibu Property was intended as an <u>owner occupied seasonal residence</u>.  Herndon represented that <u>no business activity was conducted on the property</u>.  Paul Owhadi explained in the Underlying Action that Herndon was no more than a manila folder, did not conduct business and was formed simply for tax purposes.  As O'Hadi confirmed to Burns & Wilcox in correspondence, Herndon was a means by which Owhadi held property but conducted no business.  Paul Owhadi signed the Application affirming these facts.  Herndon is legally responsible for the accuracy of the contents of the Application. (*Id.*).

Paul Owhadi confirmed in a July 2016 deposition he never intended to procure a commercial policy of insurance for the Malibu Property.  Owhadi stated:

Q. Were you aware that a homeowner's policy was placed on the Broad Beach residence?

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1    A. *That's what I asked for, yes.*

2    Q. Okay. And that's what you asked Mosen to procure on your behalf?

3    A. *Yes.*

4    Q. Did you ask Mosen at any time to procure Worker's Compensation insurance for Herndon

5    Partners. LLC?

6    A. *No, Sir.*

7    (*Declaration of L. Scott Bruggemann, Exhibit 3a*).

8    This testimony is consistent with Mr. Owhadi's correspondence with Fireman's in 2010.  At that

9    time, when Fireman's asked Owhadi why Herndon did not carry a commercial policy, he responded:

10       The reason Herndon Partners, LLC does not carry commercial coverage is simple.
         Herndon Partners, LLC is only a holding company and is not involved with any
11       business activities.  The dwelling located at 31522 Broad Beach Road was held under
         Herndon Partners, LLC and insurance coverage was provided by your (Fireman's)
12       insurance company under Paul Owhadi naming Herndon Partners, LLC as additional
         insured.  The intent of my family was to relocate to the above dwelling upon
13       completion of renovation." (*Declaration of L. Scott Bruggemann, Exhibit 3b*).

14   Hartford now asks this Court ignore the Application and its' express request for coverage.

15   Additionally, Hartford would have the Court ignore the express intent of Paul Owhadi, that Herndon

16   not obtain commercial coverage.  Hartford stands in the same position as Herndon Partners, and it is

17   clear that in light of Owhadi's testimony and correspondence, Herndon Partner's LLC received the

18   exact coverage it sought.  Paul Owhadi exercised his business judgment and Burns & Wilcox was

19   neither required to, nor could it, have vetoed Mr. Owhadi's decision.

20       In the course of obtaining the requested insurance coverage, Burns & Wilcox contacted

21   O'Hadi to confirm the Malibu Property was intended solely as a vacation home, which O'Hadi

22   confirmed to be accurate.  In his deposition, O'Hadi confirmed multiple times there was no reason to

23   believe commercial coverage was requested for the Malibu Property. He stated:

24       Q. So let me say, so I'm asking, with regard to the policy that we've discussed
25       regarding—relating to the Broad Beach property—
         A. *Right*.
26       Q. –to your knowledge, was it supposed to be written with commercial coverage?
         A. *No, it's not supposed to be written in commercial*.
27       Q. Okay.  It was a homeowners policy?
         A. *A homeowner, personal*.
28       (*Declaration of L. Scott Bruggemann,* Exhibit 9a).

**BURNS & WILCOX'S MEMORANDUM OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

1    During the course of his deposition, Mr. O'Hadi also stated under oath:

2    ///

3    Q. To your knowledge, is there any reason that this policy was supposed to be written
     with commercial coverage?
4    A. *No, sir.*
     Q. Okay.  It's not supposed to be written with commercial—
5    A. No.
     Q. – coverage?
6    (*Declaration of L. Scott Bruggemann,* Exhibit 9b).

7    The Application tells the true story of the insurance Herndon sought.  A Homeowner

8    Application was selected by Herndon's insurance agent, Mosen O'Hadi.  The Application noted the

9    property was intended for "seasonal" use.  (See Application snip below).  It was to be owner

10   occupied. (See Application snip below).  The number of weeks it was to be rented was marked

11   "N/A." (See Application snip below).  The Application indicates that business was not conducted at

12   the Malibu Property.  (See Application snip below).  Owhadi executed the Application affirming

13   these facts.  Hartford now acknowledges they were untrue, but asserts it was Burns & Wilcox's duty

14   to know Owhadi misrepresented information on the Application.



15

16

17

18

19

20

21

22

23

24

25

26   Where an insurance application is prepared by the insured's insurance agent, the

27   application's contents are the responsibility of the insured.  (*LA Sound, Inc. v. St. Paul Fire &*

28   *Marine Ins. Co.*, 156 Cal.App.4th 1259, 1270 (2007)).  Herndon, by and through Mosen O'Hadi,

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

10

2554281.1

1  presented Burns & Wilcox with an insurance application requesting homeowner's coverage.  The

2  Application was signed by Paul Owhadi.  O'Hadi confirmed in correspondence the home was a

3  vacation property.  Owhadi stated in his deposition that Herndon was "not in the business of

4  conducting business… It's formed to just hold assets."  O'Hadi's deposition confirmed he had no

5  reason to believe Owhadi wanted commercial coverage for the Malibu Property.  The Primary Policy

6  was issued to Paul Owhadi, with Herndon Partners, LLC named as an additional insured, as

7  requested by Herndon.  The business exclusion was not an issue because Herndon stated on the

8  Application, and O'Hadi confirmed, that no business took place at the Malibu Property.

9  Accordingly, Herndon received exactly the policy it requested, and only the failure to procure the

10  insurance actually requested would have constituted professional negligence by Burns & Wilcox.

11       In connection with the Underlying Action, neither Owhadi nor O'Hadi maintained the

12  property was used to conduct business.  Hartford now insists Burns & Wilcox should have known a

13  commercial policy of insurance was required.  This reversal ignores the testimony of both Owhadi

14  and O'Hadi, as well as documentary evidence, showing that Burns & Wilcox was told this was an

15  owner occupied vacation property.  Burns & Wilcox's duty was to procure the insurance Herndon,

16  through O'Hadi, sought. (*Wallman v. Suddock* (2011) 200 Cal. App. 4th 1288, 1309; *Hydro-Mill*

17  *Company v. Hayward, Tilton & Rolapp Ins. Assoc.* (2004) 115 Cal.App.4th, 1145, 1153).

18       Burns & Wilcox was entitled to rely upon Herndon's representations. (*Mitchell v. United*

19  *National Ins. Co.* (2005) 127 Cal.App.4th 457,476).  However, Burns & Wilcox asked O'Hadi to

20  confirm the Malibu Property was intended for vacation use by Owhadi.  O'Hadi confirmed this in

21  writing and during his deposition in the Underlying Action.  Hartford's contention that Burns &

22  Wilcox should have known to obtain a commercial policy is no more than wishful thinking.

23  Because the Primary Policy was issued to Paul Owhadi with Herndon listed as an "also insured,"

24  exactly as Herndon, Owhadi and O'Hadi requested, summary adjudication in favor of Burns &

25  Wilcox is appropriate on the claim for professional negligence as it relates to the Primary Policy.

26       1.  <u>Herndon Did Not Request an Excess Liability Policy</u>.

27       Hartford alleges the Excess Policy "specifically listed and covered the Subject Premises."

28  (SAC ¶28).  As "Exhibit E" to the Second Amended Complaint, Plaintiff attaches a copy of the

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2554281.1

1    Excess Policy.  While there is a reference to "11 – Residences" owned by Paul and Susan Owhadi,

2    nothing specifically notes the Malibu Property.  However, it is clear Herndon could not have

3    intended coverage of the Malibu Property because: 1) Herndon was not the applicant on the

4    Umbrella Application; 2) Herndon was not listed as an insured on the Umbrella Application; and 3)

5    Herndon had not purchased the Malibu Property on August 14, 2008 when the Umbrella Application

6    was filled out, or on October 2, 2008 when the Umbrella Application was signed by Paul Ohwadi.

7          Plaintiff acknowledges Paul Owhadi and Susan Owhadi were the named insureds on the

8    Excess Policy, but argues Herndon was incorrectly omitted as a named insured "even though it

9    exclusively held title to, and thus an exclusive insurable interest in, the Subject Premises." (SAC

10    ¶29).  The Excess Policy is an endorsement to the homeowner's insurance policy for the Owhadi's

11    Fresno residence.  Bacarti advised O'Hadi by e-mail dated August 25, 2008 that the Excess Policy

12    was considered an endorsement to Paul Owhadi's Fresno residence. (*Declaration of L. Scott*

13    *Bruggemann,* Exhibit 6).  The Excess Policy provides personal liability protection for Paul and

14    Susan Owhadi- it does not provide coverage for unnamed parties.  Further, even if coverage had

15    extended to Herndon, the business exclusion found in the Excess Policy would have precluded

16    coverage.

17          Mosen O'Hadi submitted the Umbrella Application dated August 14, 2008 on behalf of Paul

18    and Susan Owhadi.  (See, Exhibit E to the SAC; *Declaration of L. Scott Bruggemann,* Exhibit 5).

19    The Umbrella Application listed ten separate properties, indicating the Owhadis had a 100% interest

20    in each property. The Malibu Property, owned by Herndon, was not listed on the Umbrella

21    Application as it had not been purchased by Owhadi, or even Herndon, at this time.  O'Hadi

22    submitted the Umbrella Application on behalf of <u>Owhadi</u> prior to Herndon's purchase of the Malibu

23    Property.  Accordingly, he knew the Excess Policy was in the Owhadi's name and not Herndon's.

24    O'Hadi never indicated the Malibu Property should be on a different policy, and never submitted an

25    umbrella application for Herndon.

26          O'Hadi was advised on November 17, 2008 by Bacarti that the Excess Policy was part of

27    "Paul Owhadi's personal umbrella." (*Declaration of L. Scott Bruggemann,* Exhibit 8).  Victoria

28    D'Albero sent an e-mail to Mosen O'Hadi dated November 26, 2008, also setting forth properties

12

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

2554281.1

1  (including the Malibu Property) which were "listed on Paul & Susan Owhadi's personal umbrella."

2  (*Declaration of L. Scott Bruggemann,* Exhibit 7).  O'Hadi knew the Malibu Property was on Paul

3  and Susan Owhadi's "Personal Umbrella" in November 2008, almost a year before the September

4  2009 death of Francisco Martinez Moreno (SAC ¶12), and not on a policy belonging to Herndon.

5       All lines of evidence are clear- Herndon never requested umbrella coverage for Herndon on

6  the Malibu Property.  The Umbrella Application was clearly a request by the Owhadis, through

7  Mosen O'Hadi, to provide personal umbrella coverage as part of their Fresno homeowner's policy.

8  Correspondence between O'Hadi and Burns & Wilcox makes clear O'Hadi requested personal

9  liability coverage for Paul and Susan Owhadi only.  Hartford cannot provide an application for

10  umbrella coverage for Herndon, nor can it point to a policy which could support umbrella coverage

11  for Herndon while covering business activities.

12       As set forth above in detail, an insurance broker's duty is to procure the insurance requested

13  by its client.  The Owhadis, by and through O'Hadi, requested the Excess Policy be issued prior to

14  Herndon's purchase of the Malibu Property.  In response to requests from O'Hadi, Burns & Wilcox

15  added the Malibu Property to the personal liability coverage afforded under Paul and Susan

16  Owhadi's <u>personal</u> Excess Policy.  Without either a policy or an application, Hartford cannot

17  demonstrate professional negligence in the failure to procure an umbrella policy because it cannot

18  show one was requested.

19              2.    <u>Burns & Wilcox Did Not Owe An Enhanced Duty to Herndon.</u>

20       The Second Amended Complaint, at paragraph 34, alleges Burns & Wilcox "held itself out as

21  a specialist in umbrella and excess coverage and as having experience, influence, expertise, and

22  specialized knowledge of insurance products."  Typically, an insurance broker "assumes only those

23  duties normally found in any agency relationship." (*Jones v. Grewe* (1987) 189 Cal.App.3d 950,

24  954).  However, an insurance agent may assume a greater duty to the insured by holding itself out to

25  be more than an ordinary agent." (*Wallman v. Suddock* (2011) 200 Cal.App.4th 1288, 1309).

26       Hartford does not allege Burns & Wilcox was an agent of Herndon, or an agent of Mosen

27  O'Hadi.  The Second Amended Complaint, at paragraph 32, alleges that Burns & Wilcox is

28  "Fireman's Fund's broker-agent."  Because Burns & Wilcox was an agent of Fireman's and not of

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

13

1   Herndon, it could not owe an enhanced duty (or any other duty) to Herndon.  Further, Hartford

2   pleaded only that Burns & Wilcox held itself out as a specialist in *umbrella and excess* coverage.  As

3   a result, no enhanced agency relationship can be said to apply to the Primary Policy because Plaintiff

4   itself has not argued as much.

5          As pleaded, an enhanced agency relationship could only apply to the Excess Policy;

6   however, it is clear Herndon did not request an Excess Policy.  The Umbrella Application was

7   submitted listing Paul and Susan Owhadi as the applicants.  The Excess Policy was issued as an

8   endorsement to the Owhadi's coverage on their personal residence.  As the Court's August 22, 2016

9   order points out, Hartford's own expert notes that Paul Owhadi, in an April 23, 2013 phone call

10  "thought the Fireman's Excess Policy would extend '[to] himself and the house but not Herndon[.]'"

11  The facts could not be more clear, Paul and Susan Owhadi, <u>not Herndon</u>, applied for and obtained

12  the Excess Policy.

13         Burns & Wilcox cannot be liable to Herndon (thence Hartford) for professional negligence

14  because Herndon did not request umbrella coverage.  Burns & Wilcox dealt exclusively with Mosen

15  O'Hadi, a licensed insurance broker.  A Primary Policy which met all of the conditions O'Hadi set,

16  using the representations he made regarding the property's usage, was issued. Hartford can provide

17  no factual basis upon which the court can find Burns & Wilcox owed an enhanced duty to Herndon

18  to obtain an umbrella liability policy for the Malibu property because none was requested.  As far as

19  Herndon, Ohwadi and O'Hadi represented to Burns & Wilcox, the Malibu property was a vacation

20  home for Paul and Susan Owhadi and no business was conducted.

21         When the Owhadis obtained the Excess Policy providing personal liability coverage on any

22  properties they owned, subject to a business exclusion, there was no reason for Burns & Wilcox to

23  question whether Herndon should have been the applicant or insured.  As Hartford points out, the

24  Umbrella Application lists eleven properties owned by various entities.  Of these, only one was

25  owned by Herndon.  With this large and varied group of entities, how would Burns & Wilcox have

26  known the applicant should have been Herndon?  This then begs the question- what would happen to

27  coverage for Paul and Susan Owhadi?  Presumably they would have none and Burns & Wilcox

28  would have been sued for professional negligence for failing to obtain the policy of insurance the

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

1   Owhadis specifically requested.  Hartford's position is a tautological nightmare.

2          Summary adjudication in favor of Burns & Wilcox on the issue of liability for professional

3   negligence is appropriate because Herndon never requested an umbrella policy.  Even if it had,

4   Hartford can produce no evidence which would overcome the business activities exclusion of the

5   policy- the Umbrella Application states the properties were not used for business purposes, and thus

6   coverage in the Underlying action would have been denied.

7          **B.**      **Hartford Cannot Prove Causation.**

8                 **1.**      **Herndon's Misrepresentations Are the Cause-In-Fact of Hartford's Loss**

9                       **Under the Primary Policy.**

10          The penultimate issue is whether an insurance broker commits professional negligence by

11  successfully procuring the insurance policy requested by the prospective insured, where coverage is

12  denied based upon misrepresentations of the insured.  The answer is clearly "No."

13          Misrepresentations by Herndon are the "cause-in-fact" of any injury suffered by Hartford, as

14  Burns & Wilcox complied with its legal duty to procure the insurance Herndon requested.  Burns &

15  Wilcox cannot be held liable for failure to procure a policy of insurance which was neither

16  requested, nor could have been identified based upon Owhadi and Herndon's misrepresentations.

17          The court in *Wallman v. Suddock* stated that "although an agent 'may point out to [the

18  insured] the advantages of additional coverage and may ferret out additional facts from the insured

19  applicable to such coverage,… *he is under no obligation to do so*.'" (*Wallman* at 1310)(emphasis

20  added).  Burns & Wilcox was under no duty to research or question the accuracy of Herndon's

21  representations in the Application.

22          The California Legislature drafted the Insurance Code to include very specific requirements

23  regarding truthfulness by parties entering into an insurance contract.  Section 330 states that "neglect

24  to communicate that which a party knows, and ought to communicate, is concealment."

25  "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."

26  (§331).  "Each party to a contract of insurance shall communicate to the other, *in good faith*, all facts

27  within his knowledge which are or which he believes to be material to the contract and as to which

28  he makes no warranty, and which the other has not the means of ascertaining." (§332)(emphasis

2554281.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

1  added). As Hartford alleges, Burns & Wilcox was an agent of Fireman's - Herndon was statutorily

2  required to communicate with Burns & Wilcox in good faith, but instead concealed facts.  "An

3  intentional and fraudulent omission, on the part of one insured, to communicate information of

4  matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind." (§338).

5  The Legislature has made unfailingly clear the expectation that a prospective insured <u>must</u> be

6  forthright on an application, or else lose coverage.  Herndon failed to disclose information on the

7  Application, and these misrepresentations are the "cause-in-fact" of Hartford's loss.

8        The requirement to be truthful on an insurance application is not new; more than sixty years

9  ago California courts held a prospective insured had a duty to divulge information on his insurance

10  application. (*Robinson v. Occidental Life Ins. Co. of Cal*. (1955) 131 Cal App.2d 581, 585).  The

11  *Robinson* court stated "[n]o authority is cited and none will be found holding that an insured or his

12  beneficiaries may escape the consequences of his deception by placing upon the insurer the burden

13  of investigating his verified statements." (*Id.*).  Hartford cannot escape the consequences of

14  Herndon's misrepresentations by placing blame on Burns & Wilcox.  This position is wholly

15  inconsistent with the intent of the Legislature that a prospective insured be truthful or suffer the

16  consequences.  Hartford, as the assignee of Herndon, has agreed to accept the consequences of

17  Herndon's actions.

18        The loss which Hartford suffered resulted not from the negligence of Burns & Wilcox in

19  procuring the requested contract of insurance, but from the misrepresentations of Herndon.  But for

20  Herndon's misrepresentation the property was held for personal instead of business use, commercial

21  insurance coverage could have been procured.  Herndon alone is responsible for the content of the

22  insurance application.  (*LA Sound* at 1268).  It had the assistance of Mosen, its licensed insurance

23  agent who provided responses to Burns & Wilcox's questions confirming the Malibu Property was a

24  "vacation property."  Though Hartford may argue the contrary, Burns & Wilcox had no duty to

25  investigate the truthfulness of Herndon or Mosen's misrepresentations.

26      **2.**    **<u>Hartford Cannot Prove Causation Because Herndon Never Requested an</u>**

27           **<u>Umbrella Policy.</u>**

28        As set forth above, Herndon never requested Burns & Wilcox procure for it an umbrella

**BURNS & WILCOX'S MEMORANDUM OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

policy related to the Malibu Property.  All lines of evidence point to the fact that Mosen O'Hadi requested the Malibu Property be added to Paul and Susan Ohwadi's personal liability policy, along with other properties titled in their names.  From the Umbrella Application, to O'Hadi's correspondence and deposition testimony, both Paul Owhadi and Mosen O'Hadi treated the Malibu Property as if it was personally owned by Owhadi.  This is wholly consistent with their story that Herndon was a "manila folder with a checkbook" which conducted no business and was formed for Owhadi's tax purposes.

Fireman's denied Herndon coverage in the Underlying Action because Herndon was not a named insured on the Excess Policy. O'Hadi was fully aware of this fact because he requested umbrella coverage as an endorsement to coverage on the Owhadi's Fresno home.  The absurdity of Hartford's position is clear- it seeks to hold Burns & Wilcox liable for failure to procure an insurance policy which was never requested.  Burns & Wilcox was provided a set of facts regarding Owhadi's interest in the Malibu Property, it sought and was given reassurances these facts were correct.  It then obtained the insurance policy requested, which was fully consistent with the facts presented.

There is absolutely no evidence Herndon requested umbrella coverage.  The allegation Burns & Wilcox failed to obtain additional coverage is no more than smoke and mirrors.  Herndon, through Owhadi, obtained $300,000 in coverage under the Primary Policy[1].  The uncontroverted evidence shows O'Hadi knew how to request a policy of insurance for his principals.  No request was made, so Burns & Wilcox cannot be the cause of the failure to obtain insurance.  Hartford effectively seeks to create a new duty which requires a wholesale broker to anticipate the wishes of individuals and corporate entities already represented by licensed insurance agents.  There is no such duty and Burns & Wilcox cannot be the cause of any loss based upon a failure to obtain insurance which Herndon did not request.

//

---

[1] Owhadi was the insured with Herndon listed as the "also insured."

17

1    //

2        **3.        Hartford Cannot Prove Causation Because Herndon's Business Activities**

3            **Were Excluded from Coverage.**

4        Hartford cannot recover under the Primary Policy as a result of Herndon's misrepresentations

5    regarding business activities.  It is indisputable the Application indicates the Malibu Property was to

6    be used as an owner-occupied vacation property.  It is the law of the case that the Malibu Property

7    was used for business purposes.  As a result of Herndon's misrepresentations, Fireman's denied

8    insurance coverage under the Primary Policy.  Similarly, assuming for the sake of argument Herndon

9    was covered under the Excess Policy, misrepresentations regarding the conduct of business on the

10    Umbrella Application would similarly result in a declination of coverage.

11        Charles Henderson, expert witness for both Burns & Wilcox and Fireman's, reviewed the

12    terms of the Excess Policy, and found the Excess Policy excluded coverage for business activities.

13    (*Declaration of L. Scott Bruggemann*, Exhibit 2, page 13).  Burns & Wilcox's failure to procure the

14    Excess Policy in Herndon's name did not cause the alleged injury.  Burns & Wilcox relied, and was

15    entitled to rely, upon the representations of Owhadi, O'Hadi and Herndon, which repeatedly stated

16    the Malibu Property was not used for business purposes.  This was not honestly represented on either

17    the Application or the Umbrella Application.  Accordingly, coverage under the Excess Policy would

18    have been denied for the same business exclusion reasons as the Primary Policy if it had been issued

19    to Herndon.

20        Hartford suggests Burns & Wilcox should have known, despite repeated reassurances from

21    Mosen O'Hadi, and the signature of Paul Owhadi confirming the contents of the two Applications,

22    that Herndon actually conducted business and required commercial lines of insurance.  The law

23    entitles Burns & Wilcox to rely upon the representations of the insured.  (*Mitchell v. United National*

24    *Ins. Co.* (2005) 127 Cal.App.4th 457,476).  This includes Mosen O'Hadi, an agent of Herndon. (*LA*

25    *Sound v. St. Paul Fire & Marine* (2007) 156 Cal.App.4th 1259, 1268).  By statute, Herndon was

26    required to be truthful and disclose required information it knew. (Insurance Code §§331 & 332).

27    Hartford cannot get past the fact that Herndon was not truthful on either Application, or that both

28    O'Hadi and Owhadi continued those misrepresentations into the trial of the Underlying Action.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2554281.1

1    There was no obligation on the part of Burns & Wilcox to ferret out whether Herndon,

2    Owhadi or O'Hadi made material misrepresentations in the Applications.  Hartford cannot

3    demonstrate causation even if the Excess Policy had been issued to Herndon, as Herndon's

4    misrepresentations would have resulted in a denial of coverage.  Accordingly, Summary

5    Adjudication on the lack of causation for professional negligence must be granted.

6    **V.      CLOSING**

7        For the foregoing reasons, this Court must grant Burns & Wilcox's Motion for Summary

8    Judgment and dismiss the claims of Hartford with prejudice.

9

10   DATED:  September 21, 2016              WOLFE & WYMAN LLP

11

12                                          By:  ___/s/  L. Scott Bruggemann_____
                                                 BRIAN H. GUNN
13                                               L. SCOTT BRUGGEMANN
                                            Attorneys for Defendant/Cross-Complainant
14                                          **BURNS & WILCOX INSURANCE SERVICES,**
                                            **INC.**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURNS & WILCOX'S MEMORANDUM OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT

2554281.1

**PROOF OF SERVICE**

| | |
|---|---|
| **STATE OF CALIFORNIA** ) | |
| ) **ss.** | |
| **COUNTY OF CONTRA COSTA** ) | |

I, Lisa White, declare that I am employed in the County of Contra Costa, State of California. I am over the age of 18 and not a party to the within action. My business address is 2175 N. California Blvd., Suite 645, Walnut Creek, California 94596-3502.

On the date shown below, I served the document(s) described as **NOTICE OF MOTION AND MOTION BY BURNS & WILCOX INSURANCE SERVICES, INC. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

☐    **BY MAIL**: as follows:
     ☐    **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Walnut Creek, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.
     ☐    **FEDERAL** – I deposited such envelope in the U.S. Mail at Walnut Creek, California, with postage thereon fully prepaid.

☐    **BY PERSONAL SERVICE** as follows: I caused a copy of such document(s) to be delivered by hand to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

☐    **BY OVERNIGHT COURIER SERVICE** as follows: I caused such envelope to be delivered by overnight courier service to the offices of the addressee. The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

☒    **BY ELECTRONIC MAIL** as follows: I hereby certify that I electronically transmitted the attached document(s) to the U.S. District Court using the CM/ECF System for filing, service and transmittal of Notice of Electronic Filing to the CM/ECF registrants for this case. Upon completion of the electronic transmission of said document(s), a receipt is issued to the serving party acknowledging receipt by ECF's system, which will be maintained with the original document(s) in our office.

☐    **BY FACSIMILE** as follows: I caused such documents to be transmitted to the telephone number of the addressee listed on the attached service list, by use of facsimile machine telephone number. The facsimile machine used complied with California Rules of Court, Rule 2004 and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), a transmission record of the transmission was printed.

☒    **STATE**      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    **FEDERAL**      I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on September 21, 2016, at Walnut Creek, California.

_____
LISA WHITE

2043748.1

1

2

3

4

**SERVICE LIST**
**Hartford Casualty Ins. Co. v. Fireman's Fund Ins. Co., et al.**
**U.S. District Court, Northern District - Case No. 3:15-cv-02592 SI**
**W&W File No. 1670-001**
[Revised: 09/14/15]

| | |
|---|---|
| 5  Stephen M. Hayes, Esq.<br>    Joshua N. Kastan, Esq.<br>6  HAYES SCOTT BONINO ELLINGSON<br>    & McLAY, LLP<br>7  203 Redwood Shores Parkway, #480<br>    Redwood City, CA 94065<br>8 | **Attorneys for Plaintiff**<br>**HARTFORD CASUALTY INSURANCE**<br>**COMPANY**<br>Tel.: (650) 637-9100<br>Fax: (650) 637-8071; (650) 637-9101<br>Email: shayes@hayesscott.com<br>jkastan@hayesscott.com |
| 9<br>10  Ramiro Morales, Esq.<br>     Laurence Near, Esq.<br>11  MORALES FIERRO & REEVES<br>     2300 Contra Costa Blvd., Suite 310<br>12  Pleasant Hill, CA 94523<br>13 | **Attorneys for Defendant**<br>**FIREMAN'S FUND INSURANCE**<br>**COMPANY**<br>Tel.: (925) 288-1776<br>Fax: (925) 288-1856<br>Email: rmorales@mfrlegal.com<br>lnear@mfrlegal.com |
| 14  Christine E. Jacob, Esq.<br>     Bret N. Batchman, Esq.<br>15  HANSEN KOHLS SOMMER & JACOB LLP<br>     1520 Eureka Road, Suite 100<br>16  Roseville, CA 95661<br>17<br>18 | **Attorneys for Cross-Defendant**<br>**MOSEN O'HADI AKA MOSEN OHADI, DBA**<br>**MALIBU PACIFIC AND/OR MALIBU PACIFIC**<br>**REAL ESTATE CO AND/OR MALIBU**<br>**COASTAL INSURANCE SERVICES**<br>Tel.: (916) 781-2550<br>Fax: (916) 781-5339<br>Email: cjacob@hansenkohls.com<br>bbatchman@hansenkohls.com |

19

20

21

22

23

24

25

26

27

28

2043748.1