EXHIBIT 2

**Henderson Consulting**

Nine Sleepy Hollow Lane
Newtown Square, Pa. 19073

Phone 610-353-3124
Email ClaimsExpert01@aol.com

## REPORT OF CHARLES D. HENDERSON

## ON BEHALF OF

## FIREMAN'S FUND INSURANCE COMPANY,

## IN THE MATTER OF

## HARTFORD CASUALTY INSURANCE COMPANY

## PLAINTIFF

v.

## FIREMAN'S FUND INSURANCE COMPANY,
## BURNS & WILCOX INSURANCE SERVICES, INC.

## DEFENDANT

USDC N.D. OF CA-SAN FRANCISCO
CASE NO.: 3:15-CV-02592-SI
DATED JULY 11, 2016

I.    **INDUSTRY EXPERIENCE**

My experience with insurance claims and litigation began in 1974 with Liberty Mutual Insurance Company ("Liberty"). At Liberty, I was involved in the investigation of coverage and liability claims and suits under auto policies, including uninsured motorist, general liability, first party property, workers compensation, and medical malpractice policies, involving primary, umbrella, and excess policies.

In 1976, I joined Automobile Rental Insurance & Services, Inc., ("ARI&S") as a claim supervisor. ARI&S was a managing general agent that serviced the rental car and truck industry. At ARI&S, I was involved in the investigation of coverage and liability claims and suits under auto policies including no-fault, uninsured motorists under commercial and excess policies and first-party property claims.

In 1981, I joined Brown & Fleming Associates, Inc. ("B&F"), a regional independent adjusting company, as an outside adjuster. During my tenure at B&F, I was involved in the investigation of coverage and liability claims and suits under auto and general liability, first-party property, medical malpractice, lawyers' professional liability, architects and engineers, accountants, real estate brokers, and directors' and officers' policies, involving primary, umbrella, and excess policies, workers compensation and life, health and disability.

In 1986, I joined the home office technical staff of the Property & Casualty Division of CIGNA as Technical Superintendent. During my tenure at CIGNA, I was involved in the interpretation of coverage provisions and had authority to settle claims and suits up to $500,000 for general liability, auto, including, uninsured/underinsured motorists, no-fault, and professional liability lines, under primary, umbrella, and excess policies throughout the United States.

In 1990, I became the Chief Technical Claims Officer of Mutual Fire, Marine & Inland Insurance Company in Rehabilitation ("Mutual Fire"). At Mutual Fire, I was responsible for all claims under direct policies and assumed under reinsurance contracts involving all casualty (including professional liability) and property lines, involving primary, umbrella, and excess policies, along with workers compensation and life, health and disability policies.

I returned to CIGNA in 1991 as a Technical Superintendent. In addition to my duties as a Technical Superintendent, I was the Home Office Manager for all Construction Defect claims and litigation nationwide, with authority to settle claims or suits up to $2,500,000. In 1987, and continuing through 1992, I was part of a CIGNA team that established and implemented good faith claim practices. I was a member of a large loss committee that evaluated the company's exposure in large first-party property losses. In 1995, I also became a member of the CIGNA Home Office Audit Team. I held that position until July 1999.

In 1999, I joined Summit Risk Services, Inc. ("Summit") as Claim Manager. At Summit, I was involved in the investigation of coverage and liability claims and suits under professional liability policies including Public Entity Errors and Omissions, School Boards Legal Liability, Police Professional Liability and general liability policies involving primary, umbrella, and

1

excess policies, first-party property policies both primary and excess, as well as reinsurance policies throughout the United States.

In January 2002, I established Henderson Consulting, which provides consulting and risk management services in the areas of insurance, coverage, claims and bad faith. (See also Curriculum Vitae of Charles D. Henderson and Rule 26 disclosure statement attached at Tab 1.)

## II.  METHODOLOGY

### A.  Scope of Assignment

Morales, Fierro & Reeves on behalf of Fireman's Fund Insurance Company ("FFIC") has asked that I review the handling by Hartford Insurance Company ("Hartford") and Fireman's Fund of the underlying wrongful death claim of Francisco Martinez Moreno (Moreno) and respond to two questions: (1) Whether Hartford may claim contribution for the excess it paid over its policy limits because of its failure to accept a pre-trial settlement offer within limits; and (2) Whether the FFIC personal lines policy, provide coverage for the business activities of an insured.

### B.  Documentation Reviewed

I reviewed the documents listed in Tab 2.

### C.  Summary

This is a dispute between two insurance companies, FFIC and Hartford over which one is responsible for an excess verdict. Prior to the verdict, Hartford was given the opportunity to settle within its limits but refused. It is Hartford's refusal to settle within its policy limits that caused the case to have to be tried and that resulted in the excess verdict. Hartford now seeks contribution from FFIC for Hartford's failure to settle the case within its limits.

The underlying case arises from a personal injury/wrongful death suit. Moreno was electrocuted while working on a home owned by Herndon Partners, LLC ("Herndon"). Herndon was defended by FFIC under a $300,000 homeowner's policy issued to Paul Owhadi on the subject premises. Herndon Partners was named as an additional insured on the FFIC policy. Herndon was also defended by Hartford under a Commercial General Liability/Excess policy issued to Herndon with limits of $3 million. Paul Owhadi, the named insured under the FFIC policy, was not named as a defendant in the Moreno suit.

Prior to the trial, plaintiffs made a 998 settlement offer to Herndon for $3.3 million. In response to the 998 offer, FFIC offered up its full $300,000 limit on behalf of Herndon. Hartford did not offer its limits and the case did not settle. At trial, the plaintiffs successfully established that Moreno was a special employee of Herndon and that Herndon failed to secure workers compensation coverage for him and therefore Herndon was found liable in tort for Moreno's injuries. At trial, plaintiffs were awarded nearly $14 million in damages. After trial, plaintiffs accepted a remittitur on the verdict to a little over $8.8 million. Hartford ultimately settled the

2

underlying matter (while an appeal was pending) by paying the $7.5 million. Hartford is now seeking a $5 million contribution from FFIC, based on Hartford's baseless position that an unrelated FFIC excess policy provides coverage; but it does not.

## III.   THE ACCIDENT

On September 14, 2009, Moreno was working on a single family home under construction at 31522 Broad Beach Road, Malibu titled to Herndon when he was electrocuted. Apparently, Moreno was looking for electrical access and began poking through the flooring when he struck a live wire and was killed instantly. Moreno was approximately 26 years old. . Moreno's death occurred while the property, a business project, was under renovation in preparation for sale. At the time of the accident Herndon held title to the Malibu property having taken title on or about October 11, 2008 by Grant deed, which was recorded on or about October 29, 2008. The accident was not immediately reported to FFIC.

## IV.   THE UNDERLYING LAWSUIT—FFIC DEFENDED PURSUANT TO A RESERVATION OF RIGHTS

On or about, October 29, 2010, Consuelo Martinez, individually as Successor in Interest to Francisco Martinez Moreno; Trinidad Moreno; and Sofia Martinez, a minor, by and through her Guardian Ad Litem Consuelo Martinez (the "Plaintiffs") sued *inter alia,* Herndon, Amador Electric, and Does 1-100. The plaintiffs alleged Herndon was liable for negligence under theories of premises liability, failure to warn, and hazardous concealed condition related to the death of Moreno.

During the pendency of the litigation, Herndon claimed that it was nothing more than a paper company that held the deed to the property and had a checkbook. The Plaintiffs however, alleged that Herndon was a business engaged in real estate development and hence could be held liable for negligence.

FFIC received the complaint and reasonably registered the claim to the homeowners' policy issued to Paul Owhadi which included Herndon as an additional insured. Owhadi was not a defendant in the suit, Herndon was. FFIC disclosed the policy limits of $300,000 to Owhadi and asked Owhadi if there was any other insurance for Herndon Partners, LLC. [FF001453-1454]

FFIC agreed to provide a defense under the FFIC primary policy which provided certain coverage (discussed below) to Herndon. FFIC's defense was explicitly provided pursuant to a reservation of rights. FFIC shared the defense with Hartford.

3

## V.      THE VERDICT AND THE APPEAL

### A.      The Verdict

*Martinez* was tried on April 8, 2013 against Herndon, Amador Electric, Malibu Pacific Construction and Development, Inc.,[1] and Sierra Pacific Development, Inc.  On May 30, 2013, the jury found that Herndon, (the owner of the property) was the employer of Moreno and was 100% negligent for the injuries sustained by Moreno, and awarded the plaintiffs $13,337,589. Additionally, the Court concluded that Herndon did not have did not have workers compensation insurance and accordingly the workers' compensation defense to liability was not available to Herndon.

On June 12, 2013, Judgment on Verdict was entered.  In addition to the compensatory award the plaintiffs were awarded:

1.   pre-judgement interest of $990,270.31, resulting from 10% per annum interest on damages of $13,337,589.00 accruing from September 14, 2012 until the date of judgment, based on plaintiffs C.C.P. § 998 Offer and Civil Code of Judgment §3291;

2.   the costs of experts based on plaintiffs C.C.P. § 998 Offer;

3.   attorney's fees based on Labor Code §3709;

4.   post-judgment interest based on 10% from the date of judgment until satisfaction of the judgment.

In addition, defendant Amador Electric was entitled to recover its costs from plaintiffs based on Amador's C.C.P. § 998 offer and was the prevailing party against Herndon on Amador's derivative cross-complaint for indemnity against Herndon.

Just before the judgment in the underlying action Paul Owhadi on behalf of himself and as Herndon's partner and owner, along with his wife tendered Herndon's defense and indemnity for *Moreno* to FFIC under an FFIC excess liability policy.  FFIC reasonably declined coverage on that policy because, as discussed below the policy provided no coverage.

### B.      The Appeal

#### 1.   Hartford, Herndon's Insurer, Bonded The Verdict Accepting Coverage For The Underlying Loss And Entered Into An Assignment With Herndon

On or about July 18, 2013, following the verdict, Hartford the insurer of Herndon, "bonded the approximately $14 million judgment on behalf of Herndon." [Hartford's Second Amended Complaint][2]

---

[1] Herndon was also not an additional insured on the Malibu Pacific policy.

[2] Hartford's Second Amended Complaint included counts for: (1) Indemnity, (2) Contribution, (3) Reformation, (4) Declaratory Judgment, and (5) Professional Negligence.

4

It is commonly understood in the insurance industry that when an insurer purchases an appeal bond on behalf of its insured, the insurer admits there is coverage under its policy for the underlying loss. This is because the insurer that purchased the bond promised and contracts with the surety to pay the verdict if the surety has to pay. Since the surety bond is a contract between the surety and the insurer, any issues of coverage including the amount of policy limits between the policyholder and the insurer are no longer an issue. The surety is entitled to recover from the insurer and not the underlying policyholder the bonded amount. [3]

At the close of the underlying case, Hartford entered into an assignment agreement with Herndon, wherein Hartford agreed to indemnify Herndon for the judgment against it in exchange for Herndon's assignment of any rights Herndon may have had under the FFIC policies.

### 2. Plaintiffs Accepted the Remittitur

On August 8, 2013, the court ordered a new trial on the issues of damages unless the plaintiffs accepted a remittitur. On August 21, 2013 the plaintiffs' accepted a remittitur of $8,818,101. In addition to the remitter, plaintiffs remained entitled to pre-judgment and post-judgment interest, which continued to accrue.

### 3. Herndon's Appeal

On September 11, 2013, the court issued a judgment based on Plaintiffs' acceptance of the $8,818,101 remittitur and on September 18, 2013, Herndon filed a notice of appeal. On or about December 9, 2014, the plaintiffs entered into a settlement with Herndon and Hartford for $7.5 million.

### IV.   THE POLICIES IN EFFECT AT THE TIME OF MORENO'S INJURY

FFIC had two policies *allegedly* at issue in this case: (1) a $300,000 homeowner's policy issued to Paul Owhadi with Herndon as an additional insured, and (2) a $5 million excess policy that was issued to Paul Owhadi and Susan Owhadi, which did not have Herndon as an additional insured and, in any event, as discussed below, did not provide coverage for Moreno's injuries. The $5 million excess policy formed part of a package with a primary homeowner's policy issued to Paul Owhadi and Susan Owhadi.

Hartford also had two policies at issue in this case: (1) a $2 million primary policy; and (2) a $1 million excess policy issued to the California Psychological Institute, Inc. as the named insured with Herndon Partners, LLC listed on the policy as an additional insured. Hartford has conceded that both policy apply to cover the Moreno injuries.

---

[3] *See Glossary of Insurance and Risk Management Terms* 8th Ed., Insurance Risk Management Institute, pgs., 33; 179

A.    The FFIC Prestige Home Premier Homeowners Policy Issued To Paul
      Owhadi – Primary Policy

       FFIC issued Prestige Home Premier policy no.: NZA 335 54 62 to Paul Owhadi effective
October 29, 2008 to October 29, 2009, with dwelling limits of $2 million and coverage for
personal liability with limits of $300,000 each occurrence.  The policy listed the "Covered
Property" as 31522 Broad Beach Road, Malibu CA. The mailing address for the insured, Paul
Owhadi was listed on the policy as "c/o Herndon Partners LLC, 1470 W. Herndon Ave, Fresno
CA, 93711." The Agent or Broker listed on the policy was Burns & Wilcox Insurance Services.
Herndon Partners LLC, 1470 Herndon Ave., Fresno, CA 93711 was added as an additional
insured for Personal Liability and Medical Payments to others but only with respect to the
residence premises, 31522 Broad Beach Road, Malibu.  [FF000241-302]

                Coverage For Liability And Medical Payments To Others

       If a claim is made or a suit is brought against an **Insured**, anywhere in the world, for
damages because of bodily injury caused by an **occurrence** we will:

       (1) Pay on behalf of the **Insured** up to the limit of insurance shown on the
           Declarations for damages for which the **Insured** is legally liable.  Damages
           include prejudgment interest awarded against the **Insured**; and

       (2) We will settle or defend, as we consider appropriate, any claim or suit seeking
           these damages.  In addition to our limit of liability, we will pay all defense costs
           we incur.  Our duty to settle or defend ends when our limit of liability for this
           coverage has been exhausted by payment of judgments or settlements.

                Losses Not Covered- Liability And Medical Payments To Ohers

       Personal Liability and Medical Payments to Other Coverages do not apply to damages
resulting from bodily injury arising out of:
                                      ***
       7.      **business** activities or business property of any **Insured**.  We do cover: (a)
               **Incidental farming**; (b) **Incidental business**; (c) **Incidental
               employment**; and (d) the rental or holding for rental of an **Insured
               location**; (i) on an occasional basis if used only as a residence; (ii) If part
               of the **Insured location** is used as a residence for only up to two roomers
               or boarders per single family unit; or (3) in part, as an office, school,
               studio or private garage;

                                      ***

       10.     The rendering of or failure to render professional services by any **Insured**.

6

**Definitions:**

The Policy set forth the following definitions, in part:

**Business** means an occupation, employment, trade, profession, or other activity performed in exchange for money or other compensation, including farming or ranching operations and property rental.

**Incidental business** means self-employment or other employment of any **Insured** that: (a) produces a gross annual income of less than $10,000 in cash or value; (b) is not farming or ranching; and (c) does not involve the employment of others.

**Incidental employment** means self-employment or other employment of any **Insured** that: (a) yields a gross annual income of less than $10,000 in cash or value; (b) is not farming or ranching; and (c) does not involve the employment of others.

**Insured** means: (a) you and residents of your household who are: (1) your relatives; and (2) your domestic partner...

**Insured location** means: (a) the residence premises, (b) other premises, structures, and grounds used by you as a residence..., (e) land owned by or rented to an **Insured** on which a one, two, three or four family dwelling is being built as a residence for an **Insured**..., (g) any part of a premises occasionally rented to an **Insured** for other business use.

**Occurrence** means: Under Coverage For Liability And Medical Payments To Others: (1) Accidental loss or damage, including continuous or repeated exposure to the same or similar harmful conditions, which results, during the policy period, in bodily injury....

**Liability Conditions**

\*\*\*

      E.      **Other Insurance**- This insurance is excess over other valid and collectible Insurance except Insurance written especially as excess coverage for coverages provided by this policy.

\*\*\*

**Additional Insured Endorsement-Residence Premises**

The Policy was issued with an additional insured endorsement, in part:

7

**Named Insured**

Paul Owhadi c/o Herndon Partners LLC.

This Endorsement Changes The Policy.  Please Read it Carefully.

**Additional Insured**

**Residence Premises**

Name and Address of Person or Organization

**Herndon Partners LLC, 1470 Herndon Ave., Fresno, CA 93711**

Interest

**LLC**

The definition of Insured in this policy includes the person or organization named above with respect to:

**Coverage for Damage to Your Property**

Dwelling and Other Structures; and

**Coverage for Liability and Medical Payments to Others**

Personal Liability and Medical Payments to others but only with respect to the residence premises.

This coverage does not apply to bodily injury to any employee arising out of or in the course of the employee's employment by the person or organization.[4]

B.    The FFIC Prestige Home Premier Homeowners And Excess Policy Issued To Paul and Susan Owhadi

  1. The Primary Homeowners Policy Issued to Paul and Susan Owhadi

       FFIC issued Prestige Home Premier policy no.: NZA 242 90 23 to Paul Owhadi and Susan Owhadi, effective October 2, 2008 to October 2, 2009, with dwelling limits of $3,532,000 and coverage for personal liability with limits of $1 million each occurrence.  The policy listed the "Covered Property" as 7454 N. Sequoia Ave, Fresno, CA.  The mailing address for the insureds was also 7454 N. Sequoia Ave, Fresno, CA.  The Agent or Broker listed on the policy

---

[4] At trial the jury determined that Moreno was an employee of Herndon and that Herndon otherwise did not have workers compensation insurance so that the exclusive remedy defense of workers compensation was not available to Herndon to defeat liability for Moreno's injuries.

8

was Burns & Wilcox Insurance Services.  [FF000241-302]  The policy was issued with a
separate personal excess policy that will be addressed separately, below.

- Herndon Partners LLC, 1470 Herndon Ave., Fresno, CA 93711 was <u>not</u> added as an
  additional insured on this Primary Policy.

    The FFIC N. Sequoia Ave, Fresno, CA Policy was issued with the same terms, conditions
and exclusions as the FFIC Broad Beach Road, Malibu CA, Policy and those terms, conditions
and exclusions will not be repeated here.

        2.  <u>The Excess Policy Issued To Paul and Susan Owhadi Was Issued Before The
Primary Policy Was Issued To Paul Owhadi That Added Herndon Partners
LLC, As An Additional Insured</u>

    In conjunction with the primary policy issued to Paul Owhadi and Susan Owhadi, FFIC
issued a Prestige Personal Excess Liability Policy for an additional premium of $870.  The
Personal Excess Liability Policy was issued with the same policy number and effective dates as
the N. Sequoia Ave, Fresno, CA, property, effective October 2, 2008 to October 2, 2009.  The
Excess Policy had different policy dates than the policy FFIC issued for the Broad Beach Road,
Malibu CA, property, which was effective October 28, 2008 to October 28, 2009 and did not
name Herndon Partners LLC, as an additional insured.  The excess policy was issued on October
28, 2008.

- Herndon Partners LLC, 1470 Herndon Ave., Fresno, CA 93711 was <u>not</u> added as an
  additional insured on the Excess Policy.

    The FFIC Excess Policy, in part:

<u>Excess Liability Declarations</u>

    This liability policy is attached to the policy designated above [policy no.: NZA
242 90 23 issued to Paul Owhadi and Susan Owhadi, effective October 2, 2008.]
However, the definitions, coverages, losses not covered, conditions, and other
provisions of that policy do not apply to this policy unless otherwise specified
in this policy.

<b>Prestige Excess Limit(s) of Liability</b>

**Personal Liability $5 million Each Occurrence**

<b>Schedule of Required Underlying Insurance</b>

<b>Minimum Limits of Liability</b>

<u>Exposure</u>

**Homeowners/Personal Liability:  $300,000 Combined Single Limit**

**Employer's Liability Residential Employees: $100,000 CSL**

The list of Scheduled Underlying Insurance also included minimum limits for (1) Personal Autos, (2) Corporate Cars, (3) Uninsured/Underinsured Motorists, (4) Licensed Recreational Vehicles, (5) Unlicensed Recreational Vehicles, and (6) Boats.

The Declarations Continued, in part:

This policy has been issued based on the following exposures:

Real Estate:  11- residences

Vehicles:  4-Total Automobiles and Recreational Vehicles licenses for road use

Operators:  2- Total operators

Business Activities:  N-Permitted Incidental Occupancy; N- Business Pursuits

If this information is not correct, please contact your Insurance Representative to ensure proper coverage

**Coverage For Liability To Others**

<u>Personal Liability</u>

Subject to the other provisions of this policy, we will pay the net loss above the retained limit that any Insured is legally obligated to pay for as damages caused by an occurrence. Our payment will not exceed the limit of liability shown on the Declaration page.

**Liability Losses Not Covered**

Required Underlying Insurance

A.  We do not cover damages arising out of the following unless the occurrence is covered by required underlying Insurance in which case this policy will follow form of the required underlying Insurance.

\* \* \*

(2)  Business Activities – business activities or business property of any Insured unless the occurrence:

a)  Involves an automobile or corporate car; or

10

b) Involves Incidental employment, Incidental farming, or Incidental rental.

•••

(4)     PERSONAL INJURY-personal injury.

## WORKERS COMPENSATION EXCLUSION

We do not cover damages for which and insured provides or is legally obligated to provide coverage under:

A. Workers' compensation

•••

## Policy Definitions:

The Policy set forth the following definitions, in part:

Business means:

A.     An occupation, employment, trade, profession, or other activity performed in exchange for money or other compensation, including farming or ranching operations and property rental.

B.     But business does not include: (1) management by any Insured of their own personal investments if not involving the employment of others; (2) incidental employment; (3) incidental farming; or (4) incidental rental.

Retained Limit means:

A.     If the occurrence is covered by this policy and covered by required underlying Insurance, the limit of that Insurance plus the applicable limits of any other collectible insurance that covers the Insured for the occurrence.

Required Underlying Insurance means: the minimum limits of Insurance covering your personal liability that is required to be maintained in force for the types of exposures described in the Schedule of Required Underlying Insurance on the Prestige Excess Declarations.

11

### C. The Hartford Policy

Hartford issued a general liability policy to Herndon Partners, LLC as a named insured effective March 19, 2009 to March 1, 2010. The policy contained both primary coverage with a limit of $2 million and excess coverage with a limit of $1 million. There is not dispute that this policy covers the Moreno verdict.

### V. CONCLUSIONS

Based on the facts presented in this case, I have reached the following conclusions to a reasonable degree of professional probability as a claims handling expert with 42 years of claims-handling experience including the handling of claims in California.

FFIC was proceeding at all times under a full and comprehensive reservation of rights and nothing that FFIC did either affected a waiver of rights or implied a waiver of rights.

FFIC issued a comprehensive reservation of rights letter dated October 20, 2011. The letter was reasonable and reserved rights under the other insurance provisions of the policy. FFIC also clearly advised its policy holder that the FFIC policy provided homeowners coverage and that it was the Hartford policy that provided business liability coverage. The FFIC letter also put the policy holder on notice that the letter was not intended to be a full or complete list of any or all coverage issues. Here the policy holder was clearly on notice of the fact that FFIC was reserving the right to deny coverage. The FFIC letter stated that FFIC reserved the right to deny coverage. The letter also reserved the right to seek reimbursement should it later be determined that there is no coverage. The FFIC reservation of rights did not waive anything and I am not aware of any statements or conduct that that is, or would be, a waiver of any rights by FFIC.

FFIC has correctly and reasonably concluded that there is no coverage under the primary policy for Moreno's injuries. The primary policy clearly excludes coverage for (1) business pursuits (2) injuries to employees, and (3) workers compensation liability. A reasonable insurer, in reading and applying the primary policy to the facts here would conclude that the injury arose out of a business pursuit, in that Moreno's employer, Herndon, was in the process of renovating the home, which was a business pursuit of Herndon. Further, the jury here concluded Moreno was an employee of Herndon, so the exclusion for injury to an employee of an insured applies to preclude coverage. The Court also concluded that Herndon should have had, but did not have workers compensation insurance and accordingly the workers compensation liability exclusion further precludes coverage.

FFIC correctly and reasonably concluded that there is no coverage under the excess policy because Herndon is not an insured under the excess policy. It is axiomatic that a liability policy does not provide coverage to an individual or entity that is not an insured under the policy. Hartford admits that Herndon is not an insured under the FFIC excess policy. Rather, Hartford seeks to reform the excess policy to include Herndon as an insured.

12

However, even if Herndon were deemed to be an insured under the excess policy, such policy still would not provide coverage because, (1) policy precludes coverage for business activities, and also precludes coverage for workers compensation liabilities.

Hartford in fact admits that Herndon is a business entity[5] and it is clear that Herndon was engaged in a business activity. Such activity is clearly excluded under the FFIC excess policy. Further, as with the FFIC primary policy, the underlying jury and court found that Moreno was an employee of Herndon, which Herndon should have but did not have, workers compensation insurance. The FFIC excess policy therefore precludes coverage as it does not apply to workers compensation liabilities.

It was reasonable for FFIC not to initially disclose the existence of the $5 million excess policy because as discussed above, the policy was not applicable.

Hartford may not maintain contribution from FFIC because, as stated above, there is no coverage under the FFIC policies and therefore such policy have no obligation to contribute to the settlement.

Further, Hartford alone, created the excess verdict situation. Hartford had a clear opportunity to settle the case within its limits. Hartford does not dispute that there is coverage under its policy. Accordingly, when the settlement demand was received, Hartford had an obligation to evaluate the demand and meet the demand if the demand was reasonable. At the time of the demand, FFIC had agreed to pay its limits of the primary policy towards the settlement. (At that time, the jury had not yet concluded that Moreno was an employee of Herndon.) FFIC had correctly concluded that the matter "could clearly exceed" the Hartford limits. FFIC demanded that Hartford resolve the matter within its limits. (See March 1, 2013 Melanie Juarros of FFIC to Philip Kilkenny of Hartford.)

Hartford, however determined that the demand was unreasonably high. However, based on my experience, a reasonable adjustor would have and should have concluded that the value of the case could easily exceed the policy limits demand and should have accepted the demand and settled the case. Hartford alone, made the decision not to settle. FFIC played no part in the decision not to settle, in fact FFIC was willing to contribute its full limits to the settlement. FFIC acted reasonably.

Further at the pretrial stage and even during trial Herndon encouraged Hartford to settle the case. Herndon, through counsel, advised Hartford at the end of the second week of trial that Herndon wanted to settle the case, the owner of Herndon was concerned that the Plaintiff's lawyer was doing a better job atrial than the defense lawyers (appointed by Hartford and FFIC) and that it appears that the blame was being (wrongfully) placed on Herndon. FFIC's money remained on the table throughout trial. Hartford, despite continued demands from the policy holder, continued to refuse the settle the case.

---

[5] See Hartford Opposition to FFIC's MSJ, page 17 where Hartford concedes that Herndon could not obtain homeowner's coverage due to the business activities exclusion in homeowner's coverage.

13

Hartford having made the erroneous and unreasonable decision not to settle, and continued to refuse to settle throughout trial, cannot now come to FFIC and seek "failure to settle" liability from FFIC. FFIC did not fail to settle, and should not be held liable for "failure to settle" excess limits liability.

Finally, I disagree with the conclusions of Mr. McKinnon who offered two opinions. First, McKinnon asserts that FFIC (1) failed to investigate coverage under the FFIC excess policy and (2) failed to communicate the potential for coverage under this policy. As discussed above, there was no coverage, or even a potential for coverage under this policy. Herndon was not an insured under the policy and even if Herndon were an insured, coverage was otherwise excluded. FFIC, as conceded by McKinnon, declined coverage under the excess policy and such declination was communicated to the insured. Further, FFIC provided a detailed discussion of the policy (including a May 29, 2013) letter, also as conceded by McKinnon. FFIC provided a defense under the primary policy (pursuant to reservation), no defense was owed, or could have been owed under the excess policy. Herndon was adequately informed of the coverage under the excess policy. Nothing I reviewed indicated an improper investigation or improper communication.

Moreover, as Mr. McKinnon fails to address, Herndon was adequately covered by the Hartford policy. Hartford had the ability to settle within it limits, but refused. Even if the FFIC excess policy did apply (which it does not) the excess policy would never have come into play had Hartford properly settled the case within its limits.

This report represents my preliminary opinions, expressed to a reasonable degree of professional certainty as an insurance expert. I reserve the right to amend and/or supplement this report should additional information be provided to me.

By: *Charles Henderson*

Charles Henderson

14

TAB 1

# CHARLES D. HENDERSON

9 Sleepy Hollow Lane
Newtown Square, PA 19073
Phone 610-353-3124
ClaimsExpert01@aol.com

## *CURRICULUM VITAE*

## PROFESSIONAL EXPERIENCE

### HENDERSON CONSULTING                                   2002 to Present

Newtown Square, PA
**Insurance Consultant and Expert Witness**

- Providing consulting and expert witness services in the areas of insurance, coverage, claims, and bad faith, retained as a consultant by corporate risk management departments and served as a party appointed arbitrator.

- Retained as an expert over 240 times throughout the United States involving coverage, claim handling, and/or bad faith, claims consultant to several property and casualty insurance companies, claims consultant for several construction defect programs involving property and casualty insurers ongoing and run-off programs (including RiverStone Claim Management on behalf of London insurers and reinsurers, Caliber-One Indemnity Company, PMA Re, Armour Risk and Colony National Insurance Company,) conducted claim audits (including Best Practices) on insurance carriers, self-insurers and third-party administrators.

### SUMMIT RISK SERVICES, INC.                                   1999-2002

Hatboro, PA
**Manager, Senior Claim Officer**

- Manager of a nationwide third-party administrator specializing in professional liability including directors & officers, medical malpractice, lawyers' malpractice, architects and engineers, public officials, police professional, school board legal liability, property, excess liability, and public entity claims including reinsurance claims.
- Supervised a staff of 12 technical and 6 administrative personnel with a budget of $1.5M.
- Managed claim payments of $20M per year.
- Achieved adjuster licensing in all required states.

1

- Developed and managed company sponsored seminars involving multiple speakers, 100+ attendees, with topics as diverse as EPLI, disability, construction defect, police professional, civil rights, and land use.
- Designed and managed implementation of a new proprietary claims system allowing direct client access to file notes, underwriting, and financial data.

## CIGNA                                                                 1986-1999

Philadelphia, PA
**Home Office Claim Superintendent**

- Home office manager for the nationwide construction defect team responsible for the technical management of 12 liability specialists and 3 supervisors. Handled a case pending of 3,100 claims with reserves of $60M.
- Home office manager for the western region (and parts of the eastern region) of the casualty division accountable for all coverage decisions and settlement authority in excess of $500,000 up to $2.5M.
- Twelve years of home office tenure handling auto/truck, um/uim and all general liability lines including advertising injury, personal injury, nursing homes, funeral directors, discrimination, sexual molestation, labor law, etc.
- Member of the home office based claims audit team.
- Member of special risk underwriting committee
- Member of large loss committee covering first-party property and casualty claims.

## MUTUAL FIRE MARINE & INLAND INSURANCE COMPANY                          1990-1991

Philadelphia, PA
**Chief Technical and Administrative Officer**

- Responsible for creating and staffing the claim department for Mutual Fire, which had been placed in receivership in 1986.
- Instrumental in the settlement of 65% of all claims in excess of $5,000. Claims under direct policies and assumed under reinsurance contracts involving all casualty and professional liability policies including directors & officers, medical malpractice, lawyers' malpractice, architects and engineers and all property lines, workers' compensation and life, health and disability.
- Created a system for computerized check payment and distribution that incorporated the standard proof of loss system utilized by insurance companies in receivership.
- Achieved the goal of initial small claim and large claim payments under the Plan of Rehabilitation as approved by the Commonwealth Court of Pennsylvania, which laid the foundation for the company to be fully rehabilitated.

2

## BROWN AND FLEMING ASSOCIATES, INC..                    1981-1986

Chester, PA
**General Manager**

- Administered multi-line, independent adjusting company doing business in Pennsylvania, New Jersey, and Delaware, a staff of 26 inside and outside adjusters, 18 clerical and support personnel.
- Presided over revenue growth from $500,000 to $1,750,000 from 1984 to 1986.
- Investigated claims and suits for coverage and liability under general liability, professional liability including directors & officers, medical malpractice, lawyers' malpractice, architects and engineers, and first-party property policies, both primary and excess, auto liability including, uninsured/underinsured motorists, no-fault insurance under personal, commercial and excess policies, workers' compensation, and life, health and disability.

## AUTOMOBILE RENTAL INSURANCE & SERVICES.                1976-1981

Paoli, PA
**Assistant Claim Manager**

- Created and administered the home-office claim department, systems, procedures, hiring, training, and review of 10 employees.
- Initiated the company's reserve policy through negotiations with Lloyds of London underwriters, which reinsured 95% of the policies, issued.
- Investigated claims and suits for coverage and liability under auto liability, garage keepers liability, including, uninsured motorists and no-fault insurance under personal, commercial and excess policies.

## LIBERTY MUTUAL INSURANCE COMPANY                       1974-1976

Bala Cynwyd, PA
**Claim Adjuster**

- Completed a seven-week claims training program.
- Investigated and handled to conclusion property damage and bodily injury claims on all lines of coverage, including auto, general liability, product liability, medical malpractice, and workers' compensation.

## EDUCATION

**LaSalle University**
Philadelphia, PA
MBA – Finance 1985

**LaSalle University**
Philadelphia, PA

3

BS – Organizational Management 1974

Numerous insurance company sponsored training and seminars at Liberty Mutual, CIGNA and Summit Risk Services, industry seminars including but not limited to: Defense Research Institute "DRI," Federation of Defense and Corporate Counsel, "FDCC," Mealey's, West Coast Casualty Construction Defect Seminar, Association of Southern California Defense Counsel, International Risk Management Institute "IRMI," White & Williams Coverage College, Property Loss Research Bureau/Liability Loss Research Bureau, "PLRB/LLRB," and Professional Liability Underwriting Society, "PLUS."

## PROFESSIONAL AFFILIATIONS

Industry Member of the Federation of Defense and Corporate Counsel:

- Past Vice-Chair of the Construction Substantive Law Section
- Past Vice-Chair of the Insurance Industry Membership Retention Section
- Vice-Chair of the Reinsurance, Excess and Surplus Lines Substantive Law Section
- Vice-Chair of the Extra-Contractual Liability Substantive Law Section
- Member of the Insurance Industry Initiative Committee
- Member of the Insurance Coverage, Property, and Professional liability Substantive Law Sections

Society of Registered Professional Adjusters, License #963
Construction Defect Claim Managers Association
American Bar Association-Associate Member
Past member of the Excess Surplus Lines Claims Association
Member of the Newtown Square Business & Professional Association
Member of the Board of Directors of Bike & Build, Inc.

4

# RULE 26 DISCLOSURE STATEMENT

## Testimony as an Expert

### Trial

2007  *Industrial Risk Insurers and Quad/Graphics, Inc. v. St. Paul Travelers et al.,* Circuit Court Milwaukee, WI trial testimony on behalf of the defendant

2008  *Erie Insurance Exchange v. Campos & Stratis* Court of Common Pleas, Allegheny County, PA trial testimony on behalf of the defendant

2011  *Coast Converters, Inc., v. Federal Insurance Company (Chubb)* District Court, Clark County, NV, trial testimony on behalf of the plaintiff

2011  *Infinity Insurance Company v. Selective Insurance Company,* Superior Court-Law Division, Burlington County, NJ, trial testimony on behalf of the defendant

2011  *Ludmila Clifton v. Erie Insurance Exchange, et al.,* Circuit Court, Baltimore County, MD, trial testimony for the plaintiff

2011  *Ryan Environmental, Inc., v. Hess Oil Company, Inc., AIG Domestic Claims, Inc., Division of AIU Holdings, Inc., and Commerce & Industry Insurance Company* Circuit Court Harrison County, WVA, trial testimony for the defendant, third-party plaintiff, Hess Oil Company

2014  *County of Lackawanna v. Housing & Redevelopment Insurance Exchange ("HAIRE")* Court of Common Pleas, Lackawanna County, PA, trial testimony for the Plaintiff

2015  *Centex Homes v. Travelers Property Casualty Company of America, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company,* Superior Court, Sacramento County, CA, trial testimony for the plaintiff

2015  *Travelers Property & Casualty Company of America v. Kaufman & Broad Monterey Bay, K&B Bakewell Seaside Venture, LLC, and KB Home South Bay,* USDC-N.D.-California –San Jose Branch, trial testimony for the defendant

### Arbitration

2002  Arbitration between *Riunione Adriatica di Sicurta SpA and United National Insurance Company, Diamond State Insurance Company, and Hallmark Insurance Company* arbitration testimony on behalf of the defendant. Philadelphia County, PA

2014  Arbitration between *Truck Insurance Exchange (Farmers) and Pediatrix Medical Group, Inc.,* arbitration testimony on behalf of the plaintiff-Los Angeles County, CA

1

2014   Arbitration between *Blue Cross Blue Shield of Massachusetts, Inc. and BCS Insurance Company*, arbitration testimony on behalf of the plaintiff-Cook County, IL.

## Deposition

2002   *Riunione Adriatica di Sicurta SpA v. United National Insurance Company, Diamond State Insurance Company, and Hallmark Insurance Company*, Pennsylvania, deposition testimony on behalf of the defendant

2003   *Household International Inc., v. Westchester Fire Insurance Company* USDC, E.D. IL, deposition testimony on behalf of the defendant

2003   *Friend v. Aiton and State Farm*, Circuit Court Monongalia County, WVA, deposition testimony on behalf of the defendant

2003   *Obert v. Pacific Employers Insurance Company* USDC, RI 30(b)(6) deposition testimony on behalf of the defendant

2004   *Sphere Drake Insurance PLC v. Madrigal Rental, Inc.* USDC, C.D. CA, deposition testimony on behalf of the plaintiff

2005   *Guang Lu v. Zurich American Insurance Company* USDC, S.D. MD, deposition testimony on behalf of the defendant

2006   *DLS Builders v. Lavey Roofing, Salem Lutheran Church,* Superior Court, Orange County, CA, deposition testimony on behalf of the plaintiff

2007   *Essex Insurance Company v. Zoological Society of San Diego, et al.* Superior Court, San Diego, CA, deposition testimony on behalf of the defendant

2007   *Industrial Risk Insurers and Quad/Graphics, Inc. v. St. Paul Travelers, et al.,* Circuit Court Milwaukee, WI, deposition testimony on behalf of the defendant

2008   *McMillin Management Services et al., v. Pro-Builders Specialty Insurance Company*, Superior Court, San Diego CA, deposition testimony on behalf of the defendant

2008   *In Re NationsRent Rental Fee Litigation*, USDC S.D. FL, deposition testimony on behalf of class plaintiffs, Jacov, Horton, and Barnard

2009   *Infinity Insurance Company v. Selective Insurance Company,* Superior Court-Law Division, Burlington County, NJ, deposition testimony on behalf of the defendant

2009   *Auto-Owners v. Madison at Park West Property Owners Association, Inc.,* USDC-SC-Charleston Division, deposition testimony for the defendant

2010   *Coast Converters, Inc., v. Federal Insurance Company (Chubb)* District Court,
       Clark County, NV, deposition testimony for the plaintiff

2011   *Ludmila Clifton v. Erie Insurance Exchange, et al.,* Circuit Court, Baltimore
       County, MD, deposition testimony for the plaintiff

2011   *Montana Rail Link, Inc., v. The Travelers Indemnity Company* USDC Montana,
       Missoula Division, deposition testimony for the plaintiff

2011   *Lisa Kantrowitz and Elliott Fankuchen v. State Farm Insurance Company,*
       Superior Court Orange County, California, deposition testimony for the plaintiff

2011   *MGA Entertainment, Inc., and Issac Larian v. Evanston Insurance Company,
       Markel Corporation, Markel Underwriting Managers* USDC CD California,
       deposition testimony for the defendant

2012   *Plant Insulation Company v. ACE Fire Underwriters, ACE Property & Casualty
       (ACE),* Superior Court, San Francisco, CA deposition testimony for the defendant

2012   *Rubio's Restaurant, Inc., dba Rubio's Fresh Mexican Grill v. Nationwide Mutual
       Fire Insurance Company* ,USDC S.D. California, deposition testimony for the
       plaintiff

2012   *Uniscien Development Limited Partnership and Greenland Construction Co. v.
       Royal Surplus Lines Insurance Company; JAD Insurance Brokers, et al,* Superior
       Court, Orange County, CA, deposition testimony for the plaintiff.

2012   *Perry Mansfield and Judith Mansfield v. Allstate Insurance Company; California
       Earthquake Authority,* Superior Court, San Diego County, CA deposition
       testimony for the plaintiff.

2013   *St. Paul Fire and Marine Insurance Company v. MBK Homes, LTD,* USDC C.D.
       California, deposition testimony for the defendant.

2013   *Travelers Property & Casualty Company of America, et al., v. Centex Homes*
       USDC N.D. California, deposition testimony for the defendant.

2013   *Pro Wall Lath & Plaster, Inc. v. Lexington Insurance Company, Colemont
       Insurance Brokers of California, LLC, Michael Kennedy Insurance Agency*
       Superior Court, San Diego County, CA deposition testimony for the plaintiff.

2013   *Vincent Quiroz and Barbara Quiroz v. Arch Insurance Group, Highway
       Technologies and Jones, Skelton & Hochuli,* Superior Court, Maricopa County,
       AZ, deposition testimony for the defendant, *Jones, Hochuli.*

2013   *Taylor Morrison, Inc., f/k/a Taylor Woodrow, Inc., Taylor Morrison of California,
       LLC as successor in interest to Taylor Woodrow Homes, Inc., v. Arrowood
       Indemnity Company f/k/a Royal Indemnity Company; Resurgens Specialty*

3

Underwriting, Inc., f/k/a Royal Specialty Underwriting, Inc., Arrowpoint Capital Corp; Superior Court, Orange County, CA deposition testimony for the plaintiff.

2013  Michael Zimmerman and Donna Zimmerman v. Allstate Insurance Company USDC C.D. California, deposition testimony for the plaintiff.

2013  Del Webb California Corporation v. Federal Insurance Company ("Chubb") Superior Court, Orange County, CA, deposition testimony for the plaintiff

2014  Truck Insurance Exchange (Farmers) v. Pediatrix Medical Group, Inc., Arbitration-Los Angeles, CA, deposition testimony for the plaintiff

2014  BCS Insurance Company v. Blue Cross Blue Shield of Massachusetts, Inc., Arbitration-Cook County, IL, deposition testimony for the defendant

2014  Royal Indemnity Company and The Home Insurance Company v. Chicago Hospital Risk Pooling Program (CHRPP) Circuit Court-Cook County, IL, deposition testimony for the plaintiff

2014  Scott Koch and Rose Koch v. Farmers Insurance Company of Arizona, Farmers Insurance Exchange, Second Judicial District Court-Bernalillo County, New Mexico, deposition testimony for the defendant

2014  Old Republic General Insurance Corporation v. Zurich American Insurance Company Superior Court, Los Angeles County, CA, deposition testimony for the defendant

2014  USA Pork Packers, Inc. v. Westfield Insurance Company and Hartford Steam Boiler Inspection and Insurance Company, USDC-MD-Pennsylvania, deposition testimony for the Plaintiff

2014  Stryker Corporation and Howmedica Osteonics Corp. v. XL Insurance Company, Inc. USDC S.D. Michigan, deposition testimony for the Plaintiff

2014  Van Daele Development Corporation v. Steadfast Insurance Company, USDC C.D. CA—Riverside, deposition testimony for the Plaintiff

2014  Sammons Financial Group, Inc., Midland National Life Insurance Company, North American Company For Life and Health v. Federal Insurance Company (Chubb), USDC S.D. Iowa, Central Division, deposition testimony for the plaintiff

2014  Kathryn Cox, et al, as Assignees of Henri F. Duyzend DDS v. Continental Casualty Company (CNA) USDC-W.D. Washington-Seattle, deposition testimony for the defendant

2014  Fidelity & Guaranty Insurance Company, Travelers Property Casualty Company of America v. KB Home Costal USDC-C.D. California—Eastern Division, deposition testimony for the defendant

4

2014    *Centex Homes v. Lexington Insurance Company (AIG)* USDC-C.D. California-
Southern Division, deposition testimony for the plaintiff

2014    *Travelers Property & Casualty Company of America v. Kaufman & Broad
Monterey Bay, K&B Bakewell Seaside Venture, LLC, and KB Home South Bay,*
USDC-N.D.-California –San Jose Branch, deposition testimony for the defendant

2015    *Centex Homes v. Travelers Property Casualty Company of America* Superior Court-
Sacramento County, CA –deposition testimony for the plaintiff

2015    *Lyda Swinerton Builders, Inc., v. Oklahoma Surety Company* [Mid-Continental
Group-Great American]- USDC-SD Texas, Houston, deposition testimony for the
plaintiff

2015    *Great American Insurance Company v. Granite State Insurance Company (AIG)-*
USDC-District of Massachusetts-deposition testimony for the defendant

2016    *American Automobile Insurance Company* (Fireman's Fund) *v. First Mercury
Insurance Company* (Crum & Forster)-USDC-District of New Mexico-deposition
testimony for the defendant

**Publications/Speaking Engagements**

2004    *"Insurer Insolvency" A comparison of the procedures of various jurisdictions, the
role of Guaranty Funds:* Substantive Law Sections, Reinsurance, Excess and
Surplus Lines/International Practice and Law Joint Meeting, FDCC Annual
meeting July 2004.

2004    *Preparing Insurance Personnel for Depositions in Bad Faith Cases:* Critical
Issues for Senior Insurance Executives and In-House Counsel.  The PLRB-FDCC
Joint Seminar, September 2004.

2005    *Recent Changes in Insurance Coverage affecting Construction Defect Litigation:*
The ASCDC-CDCMA Joint Seminar, September 2005.

2005    *Economic Loss Rule and Construction Defect:* Mealey's Construction Defect &
Mold Litigation Conference, November 2005.

2006    *The Lure of High Rise Buildings, Insurance Issues involving Owner Controlled
Insurance Programs or Wrap Policies:* 13th Anniversary West Coast Casualty's
Construction Defect Seminar, May 2006.

2006    *Ethics and Bad Faith-Defense of the Insured under a Reservation of Rights.*
Defense Research Institute (DRI)-Construction Law Seminar, September 2006.

2007    *Ethical Issues in Construction Defect Litigation:* 14th Anniversary West Coast
Casualty's Construction Defect Seminar, May 2007.

2009    *Construction Defect and Insurance: An Insurer's Perspective* 16th Anniversary
West Coast Casualty's Construction Defect Seminar, May 2009

### Compensation:

$350.00 per hour all activity except testimony $400 per hour

6

TAB 2

## DOCUMENTS REVIEWED

1. Pleading Summary Judgment Motion Bacarti Declaration
2. Pleasing Summary Judgment Motion Near Declaration
3. Pleading Summary Judgment Motion Points & Authorities
4. Pleading Summary Judgment Motion-Hadfield Declaration
5. Additional Claim File Documents
6. Pleading Summary Judgment Motion-Judicial Notice-Trial Transcripts
7. Marc Orloff Deposition with Exhibits
8. Claim Notes
9. Pleading FFIC Interrogators 1 to Hartford-Responses
10. Pleading Summary Judgment –Opposition-Points and Authorities
11. Pleading Summary Judgment-Opposition –Owhadi Declaration
12. Pleading Summary Judgment-Reply-Points and Authorities.
13. Pleading Summary Judgment-Reply Judicial Notice.
14. Pleading- Summary Reply Near Declaration
15. Pleading Summary Judgment-Supplemental Opposition-Points and Authorities
16. Pleading Summary Judgment Supplemental opposition- Robertson Declaration
17. Pleading Summary Judgment-Supplemental Reply Points and Authorities
18. Pleading Summary Judgment Supplemental Opposition-McKinnon Declaration
19. Hartford v. FFIC-Hartford's Supplemental Initial Disclosures with attachment (2…)

1