Brian H. Gunn (SBN 192594)
bhgunn@wolfewyman.com
L. Scott Bruggemann (SBN 302499)
sbruggemann@wolfewyman.com
WOLFE & WYMAN LLP
2175 N. California Blvd., Suite 645
Walnut Creek, California 94596-3502
Telephone:  (925) 280-0004
Facsimile:   (925) 280-0005

Attorneys for Defendant/Cross-Complainant,
BURNS & WILCOX INSURANCE SERVICES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, a California Corporation; BURNS & WILCOX INSURANCE SERVICES, INC., a California Corporation, and DOES 1 to 50,<br><br>Defendants. | Case No.: 3:15-cv-02592 SI<br><br>**BURNS & WILCOX INSURANCE SERVICES, INC. REPLY TO HARTFORD'S OPPOSITION TO ITS SUMMARY JUDGMENT**<br><br>Date:   October 28, 2016<br>Time:   10:00 a.m.<br>Place:  Courtroom 1, 17th Floor<br><br>Hon. Susan Illston<br><br>Trial Date:       11/14/2016<br>Action Filed:    06/10/2015 |
| AND RELATED CROSS-ACTION. | |

I.  **HARTFORD REQUESTS THIS COURT CREATE A NEW DUTY APPLICABLE TO INSURANCE BROKERS WHERE CALIFORNIA STATE COURTS HAVE REFUSED TO DO SO.**

Plaintiff Hartford Casualty Insurance Company ("Hartford") seeks to impose duties upon Burns Wilcox insurance Services, Inc. ("Burns & Wilcox"), in its capacity as a wholesale insurance broker, where the California Court of Appeal has declined to do so. Specifically, Hartford claims "Burns & Wilcox had a duty to investigate the Primary Application, consider appropriate coverage,

1

and procure a policy that met Herndon's reasonable expectations." (*Opposition* at p.2, lines 3-5). This new theory was not articulated in the Second Amended Complaint, which alleged only that "Burns & Wilcox owed professional and fiduciary duties of care to Herndon, including but not limited to using reasonable care, diligence, and judgment in procuring the insurance that Herndon requested." (Dkt. 42, p.5, lines 14-15.) Hartford now asserts Burns & Wilcox had a duty to ignore Herndon's insurance application and evaluate and identify the coverage needed by Herndon, even though Herndon was represented by a licensed insurance agent. (*Opposition* p.2, lines 3-5.) Burns & Wilcox, argues Hartford, was required to "investigate and ensure concurrency of the insureds" under a heightened standard of care. (*Opposition* p.3, lines 8-9.) Not even Herndon's direct retail broker, Mosen O'Hadi, was subject to such a duty.

Hartford seeks to establish a standard of care which differs from the limited duty owed by a broker. This Court, in granting summary judgment to Fireman's Fund Insurance Company ("Fireman's Fund") remarked that Don Way, Hartford's expert on the standard of care, failed "to cite any authority which upholds the standard of care (to inquire into the veracity of the homeowner's representations in an application)" which Plaintiff espouses. (Dkt. 120, p.14, lines 15-20.) The Court continued, "[i]t is also unclear why an insurer waives its right to rely on the accuracy of statements made in a personal homeowner's insurance application." (*Id.* at lines 20-22.) Hartford's Opposition still does not address these issues.

Only three years ago, the Fourth District Court of Appeal reviewed a similar situation where the insured alleged its broker owed a duty to procure adequate insurance. (*San Diego Assemblers, Inc. v. Work Comp for Less Insurance Services, Inc.* (2013) 220 Cal.App.4th 1363). Assemblers never described the types of coverage it wanted, and took the broker's advice to procure the least expensive coverage available. (*Id.* at 1365.) Golden Eagle, an insurer who paid the underlying claim, brought suit against the broker after subrogating itself for Assemblers. It sought indemnity for payments as a result of an explosion and fire, but coverage was denied based upon a policy based work exclusion. (*Id.*)

The *San Diego Assemblers* Court considered in detail the nature of the duty owed by insurance brokers to their clients, stating: "insurance brokers owe a limited duty to their clients,

1 | which is only 'to use reasonable care, diligence, and judgment in *procuring* the insurance requested
2 | by an insured.'" (*Id.* at 1660)(emphasis in the original).  An insurance broker breaches its duty only
3 | (1) if it misrepresents the nature, extent or scope of coverage; (2) there is a request or inquiry for a
4 | specific type or extent of coverage; or (3) the broker holds itself out as having expertise in the field
5 | of insurance being sought. (*Id.*)

6 | The *San Diego Assemblers* Court summarized Golden Eagle's complaint in a manner which resonates with the present matter: "Assemblers seeks to hold Broker accountable for breaching a previously unrecognized implied contractual duty to investigate Assembler's coverage needs, even if Assemblers did not request the coverage…" (*Id.*)  The Court, in refusing to create a new duty, explained:

> balancing these types of considerations is properly a function of the Legislature, not the courts.  If imposing a broad duty on brokers to affirmatively determine and procure insurance to meet an insured's coverage needs… is in the interest of the public…, the people of California, by initiative or through the Legislature, can create that duty.  We may not legislate on the subject in their stead. (*Id.* at 1370).

Hartford seeks to have this federal court impose a new duty upon brokers in place of the Legislature and people of the state of California, where California courts have specifically refused to do so.

In this regard the Fourth District Court of Appeal remained steadfast.  Fewer than two years prior to *San Diego Assemblers*, the Fourth District issued an opinion in *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Insurance Services West, Inc.* (2012) 203 Cal.App.4th 1278), explicitly finding that "[w]hether and to the extent to which a new duty is recognized is a question of public policy." (*Id.* at 1285)(*citing Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1451)(*see also Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 920.)  In holding creation of a new duty is a matter of public policy, the Second District *Butcher* court also recognized that "[w]hether a duty of care exists is a question of law for the court." (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1451.)  Accordingly, it is up to this Court to decide whether it will create new public policy in California.

///

///

3

### A. Hartford Asserts That Burns & Wilcox Is Subject to a Heightened Standard Of Care Based Upon Representations Which Did Not Exist At The Time The Policies In Question Were Created.

Hartford argues that Burns & Wilcox "holds itself out as having experience, influence, expertise, and specialized knowledge of insurance products." (*Opposition* at p. 3, lines 19-21.) This claim echoes the assertions made in the Second Amended Complaint: "Burns & Wilcox held itself out as having experience, influence, expertise, and specialized knowledge of insurance products including *umbrella and excess policies*..." (Dkt.42, p. 21, lines 25-27)(emphasis added.) In support of this proposition Hartford relies upon Exhibit A to the Declaration of Joshua N. Kastan in Support of Hartford's Opposition, which consists of screenshots purporting to belong to Burns & Wilcox, dated October 22, 2013. It is unknown whether these screen shots actually represent the Burns & Wilcox website as it existed in 2013, who took them, or when they were taken. More importantly, Hartford fails to address the fact the policies at issue in this matter were both created in 2008, a full five years before the website upon which Plaintiff relies. It is inconceivable Herndon could have relied upon representations of expertise made five years before the applications were tendered to Burns & Wilcox. Whether Burns & Wilcox holds itself out as an expert today, or whether it did so in 2013 is of no relevance. Hartford presents no evidence how Burns & Wilcox represented itself in 2008.

The Opposition Memorandum also seeks to rest its heightened standard of care determination upon two statements in the deposition of Donna Bacarti, a former underwriter for Burns & Wilcox, stating "Donna Bacarti, former Personal Lines Manager at Burns & Wilcox, is a self-described 'personal lines specialist.'" (*Opposition* p. 4, lines 3-4.) Almost nothing about this statement is true. The first of two the Bacarti deposition references is at page 9, line 17. In this section, Ms. Bacarti provides her job title in 2005, when she was hired, as "personal lines underwriter." She did not

1  describe herself as a "personal lines specialist" as alleged in the Opposition. The second deposition
2  reference is at page 14, lines 9-11. These read, in their entirety:

3      (Mr. Kasten) Q: would you consider yourself a personal lines specialist?

4      (Bacarti) A: Yes.

5  Ms. Bacarti did not describe herself as a "personal lines specialist," she was responding to a
6  question by Mr. Kasten.  Hartford's characterization of Ms. Bacarti as a "self-described personal
7  lines specialist" is desperate, as the phrasing is Mr. Kastan's. Further, the question is phrased in the
8  present tense, indicating that Ms. Bacarti considered herself a "personal lines specialist" on June 14,
9  2016, at the time of the deposition. Nothing in the line of questioning, which specifically asks about
10 all of Ms. Bacarti's positions, suggests the question was limited to the second half of 2008 - the
11 timeframe which is relevant.

12 The allegations of the Second Amended Complaint are specific. Hartford states Burns &
13 Wilcox held itself out as having specialized knowledge of insurance products "including umbrella
14 and excess policies…" (Dkt. 42, p. 21, lines 25-27.) None of the statements attributed to Donna
15 Bacarti are remotely close to Plaintiff's averment.

16 Hartford failed to point to any evidence which supports its contention Burns & Wilcox held
17 itself out in 2008 to Mosen O'Hadi, or the public at large, as having specialized knowledge and
18 expertise in the placement of umbrella and excess policies. Plaintiff is required to demonstrate what
19 Burns & Wilcox said or did which gave rise to Herndon's belief Defendant was an expert in
20 umbrella or excess policies. (*Wallman v. Suddock* (2011) 200 Cal.App.4th 1288, 1312.)  Failing
21 this, a heightened duty does not arise. The evidence submitted by Hartford is devoid of <u>any</u>
22 reference to representations made by Burns & Wilcox to either Mosen O'Hadi or Herndon Partners.
23 For this reason, the Court has no basis to subject Burns & Wilcox to a heightened level of scrutiny
24 based upon holding itself out as an expert in umbrella and excess coverage.
25 ///
26 ///
27 ///
28 ///

### B. Burns & Wilcox Accurately Represented the Nature of the Coverage Held by Paul & Susan Owhadi and Herndon Partners.

Standing in the shoes of Herndon Partners, LLC, Hartford now alleges Burns & Wilcox misrepresented the nature, scope or extent of coverage provided under the Excess Endorsement. (*Opposition* p. 20, lines 20-21.) In granting Fireman's Fund's Motion for Summary Judgment, this Court recognized the Excess Endorsement was issued as a personal catastrophe excess liability policy to Paul and Susan Owhadi. (Dkt. 120, p.15, lines 21-23.) Herndon was not a named insured on the Excess Endorsement. (Dkt. 120, p.15, lines 11-12.) Plaintiff produces no evidence that Burns & Wilcox represented that Herndon was covered under the Excess Endorsement. To the contrary, the Court noted that Hartford's expert recounted a Fireman's Fund note stating Paul "Owhadi thought the Fireman's Excess Policy would extend [t]o himself and the house but not Herndon." (Dkt. 120, p. 16, lines 5-7.) Because Paul Owhadi, Herndon's sole member, did not think the Excess Endorsement applied to Herndon, Hartford's contrary position defies logic. It seems made from whole cloth to serve Hartford's interest, even though it is at odds with the testimony of Herndon's principle.

Without any basis therefore, Plaintiff alleges "Mosen O'Hadi, on behalf of Herndon, regularly communicated with Burns & Wilcox regarding the addition or removal of properties from the Excess Policy's coverage." (*Opposition* p. 20, lines 21-23.) As this Court already noted, Herndon was not on the Excess Endorsement, which provided coverage to Paul and Susan Owhadi. There is absolutely no evidence before the Court to suggest that any of the various 11-18 properties counted on the Excess Endorsement were owned by Herndon, or that Herndon added or deleted them from the Excess Endorsement. In light of this shortcoming, Hartford's claim "Mosen O'Hadi, on behalf of Herndon" regularly communicated regarding the addition or removal of properties is vastly overstated.

Mosen O'Hadi prepared the application for the Owhadi's Fresno Policy. (Dkt. 133-1, Ex. 1a.) The Fresno Policy encompassed the Excess Endorsement- the "Excess Policy" as it has been referenced in this litigation- which was not a stand-alone policy. (Dkt. 133-1, Ex 1f.) When the

Fresno Policy application was provided to Burns & Wilcox, Herndon did not own the Malibu Property. (Dkt. 133-5 & Dkt. 133-1, Ex. 1a.) In arguing Herndon should have been covered by the Excess Endorsement, Hartford assumes away the fact the umbrella was created as an endorsement to the Owhadi's Fresno <u>Policy prior to Herndon taking possession of the Malibu Property</u>, or the effective date of the Malibu Policy.

Hartford offers no evidence Herndon made an application for umbrella coverage. There is no written request, no smoking gun application. There is only Hartford's argument that a new duty arose vis-à-vis Burns & Wilcox to procure a policy of insurance for Herndon, even though it did not request coverage.

Herndon's agent, Mosen O'Hadi, was aware the Excess Endorsement was written as an endorsement to the Fresno Policy. (Dkt. 133-6 & Dkt.133-7.) The November 26, 2008 e-mail from Victoria D'Albero states, in large sized font, with bold-faced letters which are underlined: "The following properties are listed on the <u>Paul & Susan Owhadi's personal umbrella</u>." Add to this the named applicants on the Personal Umbrella Application, prepared by Mosen O'Hadi, and identified as "Paul & Susan Owhadi," and it in inescapable Mosen O'Hadi was aware the Excess Endorsement covered excess catastrophic liability for the Owhadis, not Herndon Partners. In light of these facts, Hartford fails to explain how it believes Mosen O'Hadi was communicating on behalf of Herndon when speaking with Burns & Wilcox. Such a leap is inexplicable and unsupported by any of the facts before this Court.

There is no evidence before the Court Burns & Wilcox made any representation Herndon was a named insured or additional insured on the Excess Endorsement. Without this, Hartford cannot demonstrate Burns & Wilcox misrepresented the nature of the insurance coverage, because no representation suggested Herndon was covered by the Excess Endorsement.

**C.     California Does Not Recognize a Duty to Investigate.**

The duty a broker owes to its client is limited to the use of "reasonable care, diligence, and judgment in *procuring* the insurance requested by an insured." (*Pacific Rim Mech. Contractors* at 1283)(emphasis in original). As of October 2013, California did not recognize a duty to investigate an insured's coverage needs. (*San Diego Assemblers* at 1369.) "[A]n insurer does not have the duty

to investigate the insured's statements made in an insurance application and to verify the accuracy of representations." (*American Way Cellular, Inc. v. Travelers Property Casualty Company of America* (2013) 216 Cal.App.4th 1040, 1051)(*citing Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 476.)  Further, there is no affirmative duty to advise an insured to procure a particular or different kind of coverage than the insured requested. (*Id.*)  Hartford seeks to stand this ruling on its head, asking this Court to recognize a duty to investigate and procure a policy of insurance which differs from that requested by the prospective insured.

Plaintiff's efforts are a blatant attempt to create a new duty for insurance brokers.  As the *San Diego Assemblers* Court, *Pacific Rim* Court, *Butcher* Court and *Fitzpatrick* Court all stated, only the California Legislature, or the people of California through initiative, have this authority.  Burns & Wilcox respectfully requests the Court decline this invitation and leave such decisions to the California State Legislature.

### D. <u>Burns & Wilcox Owed Herndon No Duty to Obtain Different Coverage</u>.

Herndon, through Mosen O'Hadi, submitted an application for a policy of residential homeowner's insurance for the Malibu Property. (Dkt.133-4.)  Herndon represented to Burns & Wilcox the Malibu Property was to be a vacation residence for Paul Owhadi and his family. (Dkt.133-4.)  In depositions, Paul Owhadi confirmed this fact. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 1.)  Mosen O'Hadi advised Donna Bacarti at Burns & Wilcox that Paul Owhadi held the Malibu Property through Herndon for tax purposes. (Dkt. 133-1, Exhibit 1b.)  The Malibu Property application does not list other properties owned by Owhadi. (Dkt. 133-4.)  In short, all information provided to Burns & Wilcox in connection with the Malibu Property supports the conclusion the property was not intended for commercial use.

Herndon Partners, LLC was the intended named insured when Mosen O'Hadi sent the insurance application for the Malibu Property to Burns & Wilcox. (Dkt. 133-1, Ex. 1c.)  However, Mosen O'Hadi did not disclose Herndon Partners would be the owner of the Malibu Property. (Dkt.133-1, Ex. 1c.)  Mosen O'Hadi was advised by Burns & Wilcox that a personal lines policy could not be issued for the Malibu Property if the named insured was to be a limited liability company. (Dkt.133-1, Ex. 1c.)  An exception existed which eventually allowed Herndon to be named

an "additional insured." However, the Malibu Property was not intended by Herndon to be written on a commercial policy. (Dkt. 133-9, Exs. 9A & 9B.)

Paul Owhadi, Herdon's sole member, specifically requested Mosen O'Hadi obtain a homeowners insurance policy on the Malibu Property. (Dkt.133-3.) Paul Owhadi used Ron Lamb to obtain his commercial insurance policies, but used Mosen O'Hadi for his residential policies. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 2.) In this instance, the decision to use Mosen O'Hadi rather than Ron Lamb supports Herndon's intention to procure a residential, and not commercial, policy.

The only application naming Herndon Partners, LLC as a potential insured was intended to cover the Malibu Property. Herndon, through its agent Mosen O'Hadi, was advised Herndon could not be listed as a named insured on a residential homeowner's policy. Burns & Wilcox advised Herndon could be listed as an "additional insured," which was accepted by Mosen O'Hadi when he asked coverage be bound. It is disingenuous of Hartford to argue Burns & Wilcox should have procured an umbrella policy naming Herndon Partners, where Herndon never requested such a policy. It is this reliance upon an unrecognized duty to obtain insurance never requested which is Hartford's bugaboo. A broker's duty is much more limited than Hartford would have the Court believe.

There is no duty to advise an insured to procure a particular policy, or one which differs from the insured's request. (*American Way Cellular, Inc.* at 1051.) Hartford argues a duty existed to provide the insurance Herndon ultimately needed, despite Herndon's failure to make application for coverage. This requires a level of prescience regarding which no expert opined.

E.  **Mosen O'Hadi's Inexperience Level Does Not Obligate Burns & Wilcox to Serve as Herndon's Retail Broker.**

There is little doubt Mosen O'Hadi did not possess significant experience in the insurance industry in 2008. However, the State of California considered him qualified, as demonstrated by his licensure as an insurance agent.

///

With respect to the Malibu Policy, Mr. O'Hadi's relative inexperience was not the cause of any confusion. Mosen O'Hadi faithfully provided the information he was given regarding usage of the Malibu Property as a vacation home, exactly as Paul Owhadi told him. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 4.) Problems arose only after Herndon was deemed to be a business entity, contrary to the information provided on the application. Had Mosen O'Hadi been more experienced in the insurance field, the information he was provided by Paul Owhadi would still not have been correct. Mosen O'Hadi was qualified to convey information from Herndon to Burns & Wilcox. Donna Bacarti found that, given Mr. O'Hadi's real estate background, his representations regarding real estate issues were believable. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 4.)

Hartford's argument now emphasizes Mosen O'Hadi's relative inexperience in the insurance industry. Herndon's choice of agents, even if questionable in hindsight, did not obligate Burns & Wilcox to serve as Herndon's retail insurance agent. As Hartford notes, Burns & Wilcox was the agent of Fireman's Fund- not Herndon.

Paul Owhadi disclosed that he relied upon one experienced employee- Danyelle Baker- to work with his insurers. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 3.) Handling Mr. Owhadi's insurance needs was 90% of her job. (*Id.*) Between Danyelle Baker (Mr. Owhadi's "go to" person for managing his insurance needs) and Paul Owhadi (a successful businessman), Mosen O'Hadi could have determined the coverage Herndon needed. However, Mr. O'Hadi's efforts were impaired not by his lack of experience, but by the misleading information he was supplied by Paul Owhadi or Danyelle Baker.

## II. BURNS & WILCOX COULD NOT WRITE THE INSURANCE POLICIES TO COVER HERNDON AS HARTFORD ALLEGES.

Hartford takes the position Burns & Wilcox breached its professional duties by failing to take actions which only Fireman's Fund could have taken. Plaintiff argues "[m]ost importantly here, Burns & Wilcox failed to list Herndon as an insured under the Excess Policy after the Malibu Property was added to its coverage." (*Opposition* p. 2, lines 25-26.) Hartford continues, "Burns &

Wilcox should have made Herndon an insured on the Excess Policy…" (*Opposition* p. 2, line 28- p. 3 line 1.) Hartford's list of impossible actions knows no bounds: "At a minimum, Herndon should have been named as an additional insured on the Excess Policy." (*Opposition* p. 3. Lines 7-8.) In each of the instances cited above, Plaintiff asserts Burns & Wilcox breached a duty owed to Herndon Partners by not listing Herndon as an insured under the Excess Endorsement. Burns & Wilcox is a wholesale broker, not an insurer. It neither wrote nor issued the Excess Endorsement, and did not control which parties were, or could be, listed as named insureds or additional insureds. The Excess Endorsement belonged to Paul and Susan Owhadi as part of their personal homeowner's policy for the Fresno residence. Herndon was not covered by an umbrella policy because it neither applied nor paid for coverage. However, Hartford asserts Burns & Wilcox somehow breached a duty by not placing Herndon on the Owhadi's personal Excess Endorsement.

The duplicity of Hartford's argument runs deeper. Through deposition testimony it was made clear Fireman's Fund Insurance Company would not have included Hartford as either a named insured or additional insured on the Excess Endorsement. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 6.) Hartford recognizes this in its Opposition when it states "…Bacarti called Mosen O'Hadi and advised him that Fireman's Fund would not insure the Malibu Property with an LLC as a named insured under a personal lines homeowner's policy." (*Opposition* at p. 6, lines 22-24.) Accordingly, the actions which Plaintiff alleges Burns & Wilcox should have taken were impossible, as authority to add Herndon to the Excess Endorsement rested only with Fireman's Fund, and Fireman's Fund would not add a limited liability company as an insured on a personal lines umbrella.

Hartford's argument Herndon should have been included on the Excess Endorsement represents a reversal of what the parties to the transaction- not Hartford as a Johnny-come-lately- understood to have taken place. As the Court noted on the Order granting Fireman's Fund's Motion for Summary Judgment, Paul "Owhadi thought the Fireman's Excess Endorsement would extend [t]o himself and the house but not Herndon." (Dkt. 120, p. 16, lines 5-7.) In 2008, neither Paul Owhadi, nor Mosen O'Hadi, nor Burns & Wilcox or nor Fireman's Fund, believed the Excess Endorsement was intended to cover Herndon. The absurdity of Hartford's position is manifest:

Herndon did not request to be added to the Excess Endorsement, and Paul Owhadi, the sole member of Herndon, did not believe coverage under the policy would extend to Herndon. However, Hartford asserts Burns & Wilcox breached its professional duty by not adding Herndon to the Excess Endorsement, even where Herndon, through Paul Owhadi, did not believe it was covered. Burns & Wilcox could not have added Herndon to the Excess Endorsement, even had Herndon made the request. For this reason, summary judgment is appropriate as the breach asserted by Hartford was not within the power of Burns & Wilcox to prevent.

### III. THE PROVISION OF ASSISTANCE IN COMPLETING A FORM APPLICATION DID NOT CREATE A DUTY.

Hartford dedicates two pages of the Opposition to the argument Burns & Wilcox was obligated to conduct an investigation of Herndon's insurance needs as a result of working with Mosen O'Hadi to complete a form homeowner's insurance application for the Malibu Property. Much ado is made over the assertions that Burns & Wilcox did not verify information provided by Mosen O'Hadi (*Opposition* p. 6, lines 10-11), did not independently confirm ownership of the Malibu Property[1] (*Opposition* p. 67, line 7), and didn't quiz Mr. O'Hadi on Herndon's formation or purpose (*Opposition* p. 7, lines 12-15). Whether Burns & Wilcox should have taken these steps, posits Hartford, is a disputed issue of fact.

Hartford's characterization of these events as disputed facts assumes the existence of a duty to investigate on the part of Burns & Wilcox. As noted above in detail, California does not recognize a duty to investigate. (*Pacific Rim Mech. Contractors* at 1283; *San Diego Assemblers* at 1369; *American Way Cellular* at 1051.) Because there is no duty to investigate the questions Hartford raises, they don't constitute material issues of fact. As the agent of Fireman's Fund (Second Amended Complaint ¶¶32, 74, 76, 77, 78, 81, 84, 86, 87, 89, 90, 93, 95, 96, 97, 99, 107), Burns & Wilcox was entitled to rely upon information provided by Herndon, which was required to

---

[1] This would have been impossible, as Herndon's purchase of the Malibu Property took place after the Excess Endorsement was placed. In addition, the purchase contract for the property was in the name of Paul Owhadi.

truthfully disclose information on the application. (Insurance Code §§331 & 332.) The fact Burns & Wilcox representatives took time to answer a few questions on the completion of a form application does not create a duty. If this was the case, court clerks and DMV clerks across the state would daily create new obligations with every customer they helped. Creation of a new duty is a matter for the legislature, and does not arise from a minor insurance transaction.

Hartford's position is unprecedented, and it offers no law to support the proposition. Instead, Hartford offers a case related to the insurer's duty to avoid spoilation where it had custody of evidence, a set of facts which has no possible application to the present case. (*Cooper v. State Farm Mut. Auto. Ins. Co.* (2009) 177 Cal.App.4th 876.) Plaintiff also relies upon *Williams v. State of California* for the proposition that one voluntarily undertaking a rescue is bound to use due care in doing so. (*Williams v. State of California* (1983) 34 Cal.3d 18, 23.) While this is a true statement of the law, it has no applicability to these proceedings. First, there was no "peril" at the time the Malibu application was completed- Herndon did not own the property. Second, Hartford received the homeowner's policy which was promised, and was not placed in a worse situation.

No current law supports Hartford's absurd contention that assistance provided to Mosen O'Hadi obligated Burns & Wilcox to see to all of Herndon's insurance needs. Mr. O'Hadi myself was not subject to such a broad duty, and Hartford fails to explain how, by answering a few questions, Burns & Wilcox owed a greater duty than Herndon's chose agent. For this reason summary judgment must be granted.

IV. **HARTFORD MISLEADS THIS COURT BY MISCHARACTERIZING DOCUMENTS.**

Hartford claims Burns & Wilcox altered the Malibu application without Herndon's knowledge or consent- this falsely misrepresents the record and is an attempt to intentionally mislead this Court. Plaintiff points to a segment of the Donna Bacarti deposition in which she states:

> So rather than sending in a blank application to the carrier, either myself or my assistant filled in those limits based on the dwelling coverage. It's never been the practice of Burns & Wilcox to determine the dwelling limit, so that's up to the agent. <u>So Mosen, at some time, notified us that the dwelling limit was $2 million</u>, and then the other coverages were filled in based on that dwelling limit. (*Bruggemann Declaration* in Support of Second MSJ, Ex. 5.)

1   The application, as Hartford notes in the Opposition, was for the purpose of obtaining a
2   quote. No binding agreement was formed and Herndon was without obligation to purchase
3   insurance. Hartford points to no evidence which suggests Mosen O'Hadi was unaware of the
4   changes, or that he was not provided with information about the proposed policy before coverage
5   was bound. The completion of a non-binding application, under the direction of Herndon's agent, is
6   simply not actionable.

7   More disturbing is Hartford's inclusion of a litany of changes to the Malibu application
8   attributed to Burns & Wilcox. (*Opposition* p. 8, lines 5-21.) Hartford provides no basis for its
9   assertion Burns & Wilcox made any of the changes listed on page 8 of its Opposition, and for good
10  reason. In examining the same document referenced in the Opposition during the Bacarti deposition,
11  Counsel for Hartford asked:

12  (Kastan)    Q: Now, let me ask, is any of the handwriting on Exhibit 6 yours?
13  (Bacarti)   A: No.

14  Hartford asked the same question of Lynn Hadfield, the Fireman's Fund underwriter for the
15  Malibu Policy, who identified some of the changes on the application as being in her handwriting.
16  (*Bruggemann Declaration* in Support of Second MSJ, Exs. 7 & 8.) This includes at least one item
17  Hartford specifically attributes to Burns & Wilcox- altering the named insured from "Herndon
18  Partners, LLC" to "Paul Owhadi c/o Herndon Partners LLC." (*Id.* at p. 94.) Ms. Hadfield advised
19  counsel for Hartford she made this change, yet the Opposition accuses Burns & Wilcox of altering
20  the application.

21  Plaintiff knows Lynn Hadfield made notes and changes on the Malibu application because
22  she answered Hartford's questions about her mark-ups. Donna Bacarti testified the handwriting was
23  not hers. From these two facts Hartford alleges Burns & Wilcox took action to change coverage
24  without Mosen O'Hadi's approval. Such accusations are sanctionable where Hartford knows them
25  to be untrue, or has no basis for asserting them to be true. Hartford's Opposition is noticeably void
26  of any evidentiary attribution to the claim Burns & Wilcox altered the primary application as set
27  forth on page 8. Hartford behaves cavalierly towards Burns & Wilcox because Fireman's Fund has
28

14

B&W'S REPLY TO HERNDON'S OPPOSITION RE 2ND MOTION FOR SUMMARY JUDGMENT

been dismissed. However, this egregious misrepresentation is not justified by dismissal of the insurer.

## V. HARTFORD MISCHARACTERIZES THE MALIBU POLICY AS UNDERLYING THE EXCESS ENDORSEMENT.

Hartford argues Burns & Wilcox did not amend the Excess Endorsement to match the insureds in the "underlying primary policies." As this Court previously recognized, the Excess Endorsement was issued to Paul and Susan Owhadi. (Dkt. 120, p. 15, lines 21-23.)

Plaintiff fails to identify any of the "primary policies" other than the Malibu Policy in its argument, wherein it claims Burns & Wilcox failed to "match the insureds in its underlying primary policies." (*Opposition* p. 10, lines 20-21.) It should be noted again that Burns & Wilcox, as a wholesale broker, does not write policies as Hartford suggests. The Primary Policy which underlay the Excess Endorsement was a homeowner's policy on Paul and Susan Owhadi's Fresno residence. (Dkt. 133-5 & 133-6.) The named insureds on the Excess Endorsement exactly matched the named insured on the Fresno Primary Policy upon which the endorsement sat. This is concurrency of insureds.

Hartford attempts to confuse the policies by alleging the Malibu Policy upon which Herndon was an "additional insured" was the "Primary Policy" which underlay the Excess Endorsement. This is patently incorrect. The Malibu Policy did not exist when the Excess Endorsement became effective. The Declaration of Joshua Kastan attaches a copy of the Personal Umbrella Application as Exhibit D. The applicants' names on the August 2008 application are given as "Paul & Susan Owhadi," and not Herndon Partners. The listed address is 7454 Sequoia Ave., Fresno, CA 93711. This is the Owhadi's Fresno residence address, and not the Malibu Property.

The Excess Endorsement, underlain by the Fresno Property, was effective October 2, 2008. (Dkt. 136-1, Declaration of Joshua Kastan, Ex. J.) The Malibu Policy which Hartford alleges underlies the Excess Endorsement was not effective until October 29, 2008. (Dkt. 136-1, Declaration of Joshua Kastan, Ex. I.) The Malibu Policy could not underlay the Excess Endorsement because it did not exist at the time the endorsement became effective, mooting Plaintiff's argument.

1  Hartford's concurrency argument misses the mark. Concurrency of insureds may be a
2  laudable goal, but the policies which Plaintiff attempts to connect are unrelated. The Malibu Policy
3  was completely unrelated to the Excess Endorsement, which provided personal catastrophic
4  coverage for the Owhadis for losses related to any of the scheduled properties. No coverage was
5  provided, nor any intended, for Herndon Partners, LLC.

## VI. THE EXISTENCE OF MISREPRESENTATIONS IN THE MALIBU APPLICATION BY HERNDON HAS ALREADY BEEN DECIDED.

In its August 22, 2016 Order granting Summary Judgment to Fireman's Fund, this Court stated:

> The facts established in the Underlying Action include that Herndon was a real estate and development company which was held 100% negligent for the death of its employee, Mr. Moreno, and that Herndon bought the Malibu Property not as a vacation home, but as a property to be renovated and flipped. (Dkt. 120, p.2, FN3.)

By contrast, the homeowner's application, attached as Exhibit B to the Declaration of Joshua Kastan, tells a very different story. Page 2 of the application indicates the property would be an owner occupied seasonal dwelling. In addition, the application states no business would be conducted on the property.

The Opposition states, at page 13, "there has been no finding that Herndon made any misrepresentations when it applied for the Fireman's Fund Policies." This is disingenuous at best, as the Court discussed specific findings from the Underlying Action which demonstrate the information Herndon provided on the Malibu application was false. This Court's characterization of the facts is that "Herndon bought the Malibu Property not as a vacation home, but as a property to be renovated and flipped." This does not reflect a change in intended use, but is specific as to the intent of Herndon at the time the Malibu Property was purchased. Because the issue of business on the Malibu Property was already litigated by Hartford's predecessor in interest in the Underlying Matter, the doctrine of *res judicata* applies to precludes re-litigation of these facts. (*Allen v. McCurry*, 449 U.S. 90, 414-415 (1980)).

B&W'S REPLY TO HERNDON'S OPPOSITION RE 2ND MOTION FOR SUMMARY JUDGMENT

2571355.1

To the extent Burns & Wilcox must address the assertion Herndon did not make a misrepresentation on the umbrella application, Hartford's position is again misleading. Herndon did not submit an umbrella application, so to claim there was no misrepresentation is accurate, in-as-much as Herndon made no representations at all.

## VII. CLOSING.

Burns & Wilcox respectfully requests this Honorable Court grant its Motion for Summary Judgment, and award it such fees and costs as it deems just.

DATED: October 14, 2016                    WOLFE & WYMAN LLP


By:   /s/ L. Scott Bruggemann
      BRIAN H. GUNN
      L. SCOTT BRUGGEMANN
Attorneys for Defendant/Cross-Complainant,
**BURNS & WILCOX INSURANCE SERVICES, INC.**

## PROOF OF SERVICE

STATE OF CALIFORNIA   )
                      ) ss.
COUNTY OF SACRAMENTO  )

I, Beverley TOMLI-Hill, declare that I am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action. My business address is 980 9th Street, Suite 2350, Sacramento, California 95814

On the date shown below, I served the document(s) described as **BURNS & WILCOX'S REPLY TO HARTFORD'S OPPOSITION TO ITS SUMMARY JUDGMENT** on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

☐ **BY MAIL**: as follows:
  ☐ **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Sacramento, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

  ☐ **FEDERAL** – I deposited such envelope in the U.S. Mail at Sacramento, California, with postage thereon fully prepaid.

☐ **BY PERSONAL SERVICE** as follows: I caused a copy of such document(s) to be delivered by hand to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

☐ **BY OVERNIGHT COURIER SERVICE** as follows: I caused such envelope to be delivered by overnight courier service to the offices of the addressee. The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

☒ **BY ELECTRONIC MAIL** as follows: I hereby certify that I electronically transmitted the attached document(s) to the U.S. District Court using the CM/ECF System for filing, service and transmittal of Notice of Electronic Filing to the CM/ECF registrants for this case. Upon completion of the electronic transmission of said document(s), a receipt is issued to the serving party acknowledging receipt by ECF's system, which will be maintained with the original document(s) in our office.

☐ **BY FACSIMILE** as follows: I caused such documents to be transmitted to the telephone number of the addressee listed on the attached service list, by use of facsimile machine telephone number. The facsimile machine used complied with California Rules of Court, Rule 2004 and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), a transmission record of the transmission was printed.

☐ **STATE**   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **FEDERAL**   I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on October 14, 2016, at Sacramento, California.

BEVERLEY TOMLIN-HILL

2544965.1

# SERVICE LIST
### Hartford Casualty Ins. Co. v. Fireman's Fund Ins. Co., et al.
U.S. District Court, Northern District - Case No. 3:15-cv-02592 SI
W&W File No. 1670-001
[Revised: 09/14/15]

| | |
|---|---|
| Stephen M. Hayes, Esq.<br>Joshua N. Kastan, Esq.<br>HAYES SCOTT BONINO ELLINGSON & McLAY, LLP<br>203 Redwood Shores Parkway, #480<br>Redwood City, CA 94065 | **Attorneys for Plaintiff**<br>**HARTFORD CASUALTY INSURANCE COMPANY**<br>Tel.: (650) 637-9100<br>Fax: (650) 637-8071; (650) 637-9101<br>Email: shayes@hayesscott.com<br>jkastan@hayesscott.com |
| Ramiro Morales, Esq.<br>Laurence Near, Esq.<br>MORALES FIERRO & REEVES<br>2300 Contra Costa Blvd., Suite 310<br>Pleasant Hill, CA 94523 | **Attorneys for Defendant**<br>**FIREMAN'S FUND INSURANCE COMPANY**<br>Tel.: (925) 288-1776<br>Fax: (925) 288-1856<br>Email: rmorales@mfrlegal.com<br>lnear@mfrlegal.com |
| Christine E. Jacob, Esq.<br>Bret N. Batchman, Esq.<br>HANSEN KOHLS SOMMER & JACOB LLP<br>1520 Eureka Road, Suite 100<br>Roseville, CA 95661 | **Attorneys for Cross-Defendant**<br>**MOSEN O'HADI AKA MOSEN OHADI, DBA MALIBU PACIFIC AND/OR MALIBU PACIFIC REAL ESTATE CO AND/OR MALIBU COASTAL INSURANCE SERVICES**<br>Tel.: (916) 781-2550<br>Fax: (916) 781-5339<br>Email: cjacob@hansenkohls.com<br>bbatchman@hansenkohls.com |

2544965.1