1  **Brian H. Gunn (SBN 192594)**
*bhgunn@wolfewyman.com*
2  **L. Scott Bruggemann (SBN 302499)**
*sbruggemann@wolfewyman.com*
3  **WOLFE & WYMAN LLP**
**2175 N. California Blvd., Suite 645**
4  **Walnut Creek, California 94596-3502**
**Telephone: (925) 280-0004**
5  **Facsimile: (925) 280-0005**

6  **Attorneys for Defendant**
**BURNS & WILCOX INSURANCE SERVICES, INC.**
7

8                **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11  HARTFORD CASUALTY INSURANCE          Case No.: 3:15-cv-02592 SI
    COMPANY, an Indiana Corporation,
12                                       **DECLARATION OF L. SCOTT**
              Plaintiff,                 **BRUGGEMANN IN SUPPORT OF BURNS**
13                                       **& WILCOX'S SECOND MOTION FOR**
       v.                                **SUMMARY JUDGMENT**
14
    FIREMAN'S FUND INSURANCE COMPANY, a   Date:  October 28, 2016
15  California Corporation; BURNS & WILCOX  Time:  10:00 a.m.
    INSURANCE SERVICES, INC., a California  Place: Courtroom 1, 17th Floor
16  Corporation, and DOES 1 to 50,
                                         Hon. Susan Illston
17            Defendants.
                                         Trial Date:   11/14/2016
18                                       Action Filed:  06/10/2015

19  BURN & WILCOX INSURANCE SERVICES,
    INC.,
20
              Cross-Complainant,
21
       v.
22
    MOSEN O'HADI aka MOSEN OHADI, dba
23  MALIBU PACIFIC and/or MALIBU PACIFIC
    REAL ESTATE CO and/or MALIBU COASTAL
24  INSURANCE SERVICES, and ROES 1 – 100,
    inclusive,
25
              Cross-Defendants.
26

27        I, L. SCOTT BRUGGEMANN, declare:

28        1.    I am an attorney at Wolfe & Wyman LLP, counsel for Burns and Wilcox Insurance

                                  1
                   **DECLARATION OF L. SCOTT BRUGGEMANN**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1  Services, Inc. (hereinafter "Burns & Wilcox") in this action, and on my review of the records and

2  files herein, collected through discovery conducted on the persons named herein, I have personal

3  knowledge of the following facts and if called upon to testify, I would competently testify thereto.

4      2.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

5  portion of the deposition transcript of Paul Owhadi, taken on July 26, 2016, p.29, lines 17-21

6  (**Exhibit 1**);

7      3.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

8  portion of the deposition transcript of Paul Owhadi, taken on July 26, 2016, p.31, line 16 – p.32, line

9  15 (**Exhibit 2**);

10      4.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

11  portion of the deposition transcript of Paul Owhadi, taken on July 26, 2016, p.30, lines 9-23 (**Exhibit

12  3**);

13      5.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

14  portion of the deposition transcript of Donna Barcarti, taken on June 14, 2016, p. 116, lines 16-23

15  (**Exhibit 4**);

16      6.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

17  portion of the deposition transcript of Donna Barcarti, taken on June 14, 2016, p.112, lines 8-15

18  (**Exhibit 5**);

19      7.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

20  portion of the deposition transcript of Lynn Hadfield, taken June 29, 2016, p. 143, line 7 and p. 144,

21  line 17 (**Exhibit 6**);

22      8.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

23  portion of the deposition transcript of Lynn Hadfield, taken June 29, 2016, p. 88, line 13 – p. 89, line

24  23 (**Exhibit 7**);

25      9.    Attached hereto to the Declaration of L. Scott Bruggemann is a true and correct

26  portion of the deposition transcript of Lynn Hadfield, taken June 29, 2016, p.94, line 19 – p.95, line

27  10 (**Exhibit 8**).

28      I declare under penalty of perjury under the laws of the State of California that the foregoing

DECLARATION OF L. SCOTT BRUGGEMANN

2574226.1

1    is true and correct.

2        Executed on October 14, 2016 at Sacramento, California.

3

4    _____

5                L. SCOTT BRUGGEMMAN - Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3
**DECLARATION OF L. SCOTT BRUGGEMANN**

# EXHIBIT 1

Exhibit 1

Page 1

1                UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4
5    HARTFORD CASUALTY          )
     INSURANCE COMPANY, an      )
6    Indiana Corporation,       )
                                )
7               Plaintiff,      )
                                )
8               vs.             ) Case No. 3:15-cv-02592 SI
                                )
9    FIREMAN'S FUND INSURANCE   )
     COMPANY, a California      )
10   Corporation; BURNS &       )
     WILCOX INSURANCE           )
11   SERVICES, INC., a          )
     a California Corporation,  )
12   and DOES 1 to 50,          )
                                ).
13              Defendants.     )
14
15
                     DEPOSITION OF PAUL OWHADI
16
                      Santa Monica, California
17
                      Tuesday, July 26, 2016
18
                             Volume I
19
20
21   Reported by:
22   WENDY S. SCHREIBER
     CSR No. 3558
23
24
25     Job No. CS2338146

Page 29

1      Q.   And what ten years are we talking about?

2      A.   I would say -- you know, I converted that as

3   not my primary residence about three years ago.

4      Q.   All right.  So it had been -- your Fresno

5   residence had been your primary residence up until

6   approximately?

7      A.   I would say maybe 2012.

8      Q.   Prior to that it had been your primary

9   residence for about ten years preceding 2012, give

10  or take?

11     A.   Give or take, yes.

12     Q.   So the Victoria Point residence was a beach

13  house that you began the process, that you say long,

14  excruciating process, sometime before you purchased

15  the Broad Beach Road residence?

16     A.   Yes.

17     Q.   And the intent for Broad Beach when you

18  purchased it was to become your -- your vacation

19  house?

20     A.   A temporary place for us to reside or

21  utilize as our beach house until the 31502 was done.

22     Q.   And once the Victoria Point residence was

23  done, what was your plan with Broad Beach?

24     A.   Oh, to sell it.

25     Q.   What kind of insurance did you have on the

# EXHIBIT 2

Exhibit 2

Page 31

1  three or four years ago.
2      Q.  Do you know what she's doing now?
3      A.  She works for another company, a large
4  development company, and I honestly don't know the
5  name of the company.
6      Q.  Is it in Fresno?
7      A.  Yes, it is.
8          MR. GUNN:  Do you mind if I ask one
9  question?
10         MR. BATCHMAN:  Absolutely.
11         MR. GUNN:  Was it McCaffey?  That's the only
12  development company I know in Fresno.
13         THE WITNESS:  Oh, no.  McCaffrey, no.  You
14  know them?  No, no, it's not, no.
15  BY MR. BATCHMAN:
16      Q.  Who was your broker that Danyelle would
17  interface with regarding your insurance needs?
18      A.  Ron Lamb.
19      Q.  Where are they located?
20      A.  In Fresno, California.
21      Q.  Was Mr. Lamb responsible for insuring all of
22  your properties?
23      A.  Yes, until -- until my brother basically got
24  involved.  But really the 90 -- over 90 percent of
25  my package deals were done by them.  Mosen, my

Veritext Legal Solutions

Page 32

1   brother, basically was so limited in terms of the
2   policies that he placed for me.
3       Q.   Do you still use Ron Lamb to place policies?
4       A.   Yes, absolutely.  I have all of my
5   commercial buildings with him.
6       Q.   What about your residential properties?  Who
7   did you use for that?
8       A.   You know, as I said, at the later date --
9   and I don't know when we began -- I think that we
10  gave some of the properties to Mosen O'Hadi and I
11  believe Mosen placed a policy for my home at 7454
12  North Sequoia in Fresno.  And I believe he also
13  placed a policy for this particular house on Broad
14  Beach.  And I'm not sure whether, you know, he was
15  involved with 31502 or not.  I really am not sure.
16      Q.   Do you know if the insurance on 31502 ever
17  changed from the time that you purchased it in
18  2003 -- well, has it ever changed since you
19  purchased it?
20      A.   In terms of carriers, you mean?
21      Q.   Carriers or type of policy or anything like
22  that.
23      A.   I honestly don't know but I believe, you
24  know, at one point Fireman's Fund -- I think we had
25  coverage with Fireman's Fund.  Fireman's Fund

# EXHIBIT 3

Exhibit 3

1           I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:

4           That the foregoing proceedings were taken
5   before me at the time and place herein set forth;
6   that any witnesses in the foregoing proceedings,
7   prior to testifying, were administered an oath; that
8   a record of the proceedings was made by me using
9   machine shorthand which was thereafter transcribed
10  under my direction; that the foregoing transcript is
11  a true record of the testimony given.

12          Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [X] was not requested.

16          I further certify I am neither financially
17  interested in the action nor a relative or employee
18  of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date
20  subscribed my name.

21

22  Dated:  July 27, 2016

23

24

25                  WENDY S. SCHREIBER, CSR No. 3558

1  Victoria Point residence?  Just --

2          MR. KASTAN:  Overbroad as to time.  Can you

3  narrow it down to a specific time?

4  BY MR. BATCHMAN:

5     Q.  When you purchased it in 2003.

6     A.  Liability insurance, you know, and a regular

7  policy for a house.

8     Q.  Just a regular homeowner's-type insurance?

9     A.  I presume.  I should disclose something to

10  you; that I have other people in my company that

11  handle the insurance side of my business, you know,

12  and I did that for years.  I had a lady who was

13  just -- her job was -- 90 percent of her job was to

14  go ahead and interact with the insurance company so

15  I don't get involved directly.  But lately I have

16  but I wasn't.  So I would buy a property.  I would

17  say, "Just get it insured."  They would contact the

18  broker and the broker will take care of whatever

19  what would be necessary to do.

20     Q.  What lady in your office was responsible for

21  that?

22     A.  At the time her name was Danyelle Baker.

23  And she's no longer with my company.

24     Q.  When did she leave the company?

25     A.  She left my company several years ago, like

# EXHIBIT 4

Exhibit 4

**HARTFORD CASUALTY INSURANCE CO. vs. FIREMAN'S FUND INSURANCE CO., ET AL.**
**Donna Bacarti on 06/14/2016**

```
 1               UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3

 4   HARTFORD CASUALTY INSURANCE        )
     COMPANY,                          )
 5                                      )
                          Plaintiff,   )
 6                                      )
     -vs-                              ) Case No.
 7                                      ) 3:15-cv-02592-SI
     FIREMAN'S FUND INSURANCE           )
 8   COMPANY,                           )
                          Defendant.   )
 9   _____    )

10

11

12        VIDEOTAPED DEPOSITION OF DONNA BACARTI

13              San Diego, California

14              Tuesday, June 14, 2016

15

16

17   Reported by Tricia Rosate, RDR, CRR, CSR No. 10891

18

19

20

21

22

23

24

25
```

```
 1        A    The original application was blank, correct.

 2        Q    Right.  Does that underscore your assessment

 3   of his inexperience and lack of sophistication?

 4        A    I believe so, yes.

 5        Q    Okay.  Did you feel that you were guiding him

 6   in this transaction?

 7        A    Yes.

 8        Q    So given the fact that he is inexperienced

 9   and unsophisticated and you're guiding him in the

10   transaction, what weight are you giving the

11   information that he is providing to you regarding the

12   Herndon Partners, LLC, information?

13             MR. GUNN:  Objection.  Argumentative and

14   overbroad.

15             MR. QUIGLEY:  Join.

16             THE WITNESS:  Based on him telling me what

17   his background was, that he himself was in

18   real estate, and he knew what Herndon -- what Herndon

19   Partners was and he had expressed to me that Paul was

20   a big client of his, if I'm asking the question who

21   makes up the LLC and he answers it that it's made up

22   of the insured and his wife, I would trust that he is

23   giving me a truthful answer.

24   BY MR. HAYES:

25        Q    Even in light of the fact that he -- this was
```

# EXHIBIT 5

**Exhibit 5**

```
1            I -- I'm not sure if I did it or not, but it
2  was done by somebody that wrote in the 2 million.
3  He -- he just didn't understand, and typically under a
4  homeowner's policy, if you've got $2 million of
5  dwelling, 20 percent of that is other structures and
6  50 percent of that is personal property, and he did
7  not know that.
8            So rather than sending in a blank application
9  to the carrier, either myself or my assistant filled
10 in those limits based on the dwelling coverage.  It's
11 never been the practice of Burns & Wilcox to determine
12 the dwelling limit, so that's up to the agent.  So
13 Mosen, at some time, notified us that the dwelling
14 limit was $2 million, and then the other coverages
15 were filled in based on that dwelling limit.
16      Q    So when he submitted the homeowner
17 application, BW 456, the page we're looking at, he
18 originally submitted it, and coverages and limits of
19 liability were blank, weren't they?
20      A    I don't recall if they were blank or what
21 they were.  Honestly, I don't know.
22      Q    Let me show you what we'll mark as next in
23 order.
24           MR. HAYES:  Which is what?  13?
25           THE COURT REPORTER:  13.
```

1          I, Tricia A. Rosate, Certified Shorthand

2    Reporter licensed in the State of California, License

3    No. 10891, hereby certify that the deponent was by me

4    first duly sworn, and the foregoing testimony was

5    reported by me and was thereafter transcribed with

6    computer-aided transcription; that the foregoing is a

7    full, complete, and true record of said proceedings.

8          I further certify that I am not of counsel or

9    attorney for any of the parties in the foregoing

10   proceeding and caption named or in any way interested in

11   the outcome of the cause in said caption.

12         The dismantling, unsealing, or unbinding of the

13   original transcript will render the reporter's

14   certificates null and void.

15         In witness whereof, I have hereunto set my hand

16   this day:  June 20, 2016

17

18         _____ Reading and signing was requested.

19
           _____ Reading and signing was waived.
20

21         __x___ Reading and signing was not requested.

22

23

24                   Tricia Rosate, RDR, RMR, CRR, CCRR
                     CSR No. 10891
25

# EXHIBIT 6

Exhibit 6

Case 3:15-cv-02592-SI Document 139 Filed 10/14/16 Page 20 of 28

HARTFORD CASUALTY INS. COMPANY vs. FIREMAN'S FUND INS. COMPANY, ET AL.
30(b)(6)                               Lynn Hadfield on 06/29/2016

```
 1                    UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3

 4   HARTFORD CASUALTY INSURANCE          )
     COMPANY, an Indiana Corporation,     )
 5                                        )
                            Plaintiff,    )
 6                                        )
     -vs-                                 ) Case No.
 7                                        ) 3:15-cv-02592-SI
     FIREMAN'S FUND INSURANCE             )
 8   COMPANY, a California Corporation;   )
     BURNS & WILCOX INSURANCE SERVICES,   )
 9   INC., a California Corporation;      )
     and DOES 1 to 50,                    )
10                                        )
                            Defendants.   )
11   _____)

12

13

14      VIDEOTAPED 30(b)(6) DEPOSITION OF LYNN HADFIELD

15                     San Diego, California

16                   Wednesday, June 29, 2016

17

18

19    Reported by Tricia Rosate, RDR, CRR, CSR No. 10891

20

21

22

23

24

25
```

Case 3:15-cv-02592-SI Document 139 Filed 10/14/16 Page 21 of 28

HARTFORD CASUALTY INS. COMPANY vs. FIREMAN'S FUND INS. COMPANY, ET AL.
30(b)(6)                    Lynn Hadfield on 06/29/2016                    Pages 142..145

Page 142

1  not --
2          Adding or removing such residences after an
3  umbrella policy or an umbrella endorsement is added,
4  does that require a new application form?
5      A   It's --
6          MR. QUIGLEY:  Objection.  Lacks foundation.
7  Misstates her prior testimony.
8          THE WITNESS:  It does not.
9  BY MR. KASTAN:
10     Q   They -- they can do so informally?
11     A   Correct.
12     Q   And is there any mechanism that you're aware of
13 as a senior underwriter previously for Fireman's Fund to
14 ensure that Fireman's Fund is aware of who owns or has
15 an insurable interest in any properties to be added
16 later on?
17         MR. QUIGLEY:  Objection.  Vague and ambiguous.
18 Lacks foundation.  Argumentative.
19         THE WITNESS:  You know, I can only answer this
20 way:  that we are a personal lines carrier, and we
21 insure personal residences and personal autos, and
22 the -- when the agent obtains information that something
23 has changed, it's changed, and no, there's no other
24 verification.
25 ///

Page 143

1  BY MR. KASTAN:
2      Q   We talked before in the primary policy context
3  of adding an LLC as an additional insured by
4  endorsement.
5          Do you recall that?
6      A   Yes.
7      Q   Was the same mechanism available to add an LLC
8  as an additional insured by endorsement to the umbrella
9  portion of the policy?
10         MR. QUIGLEY:  Objection.  Lacks foundation.
11 Argumentative.  Misstates the facts.
12         THE WITNESS:  No.
13 BY MR. KASTAN:
14     Q   Why not?
15     A   It -- the simple answer is Fireman's Fund did
16 not add LLCs under the umbrella.
17     Q   Only under the primary?
18         MR. QUIGLEY:  Objection.  Misstates her prior
19 testimony.  Argumentative.  Calls for a legal
20 conclusion.
21         THE WITNESS:  You're going to have to clarify
22 what you mean by "primary."
23 BY MR. KASTAN:
24     Q   We were talking before about --
25         Well, let's take a step back.  Do you

Page 144

1  understand what I mean by primary homeowners policy?
2      A   The primary residence of an insured.
3      Q   And do you understand what I mean by an excess
4  or umbrella insurance policy?
5      A   Yes.
6      Q   What does that mean?
7      A   It's -- the excess umbrella policy, it's
8  liability coverage, which is an endorsement, is attached
9  to the primary residence policy.
10     Q   And an umbrella policy covering liability at
11 the premises listed on a primary policy, is it your
12 testimony that an LLC could not be endorsed on as an
13 additional insured on the umbrella coverage?
14     A   That's correct.
15     Q   Why is that?
16     A   Because Fireman's Fund did not add additional
17 LLCs or trusts as additional insureds to the umbrellas.
18     Q   What -- strike that.
19         Is there a guideline to that effect in 2008?
20     A   That was the procedure.
21     Q   Where --
22     A   That's --
23     Q   Sorry.
24     A   Sorry.  I apologize, too.
25         Go ahead.

Page 145

1      Q   Where was that procedure published?
2      A   Again, from my training at Fireman's Fund,
3  there -- you know, there are positions on coverages that
4  we add or don't add to a policy, and that was the
5  guidelines, is "Here's what you do with the trust and an
6  LLC.  If it's acceptable on the home and it's not added
7  to the" --
8          It was part of a one-line sentence.  The
9  additional insured is added to the home, not the
10 umbrella.
11     Q   Do you know who told you that?
12     A   No.
13     Q   Do you know when you first learned that?
14     A   That's been my procedure --
15         That was how it was at Golden Eagle and how it
16 was at Fireman's Fund.
17         MR. KASTAN:  Let me mark this as Exhibit 27.
18         And I apologize.  I only have one copy.  This
19 is the policy --
20         MR. QUIGLEY:  Is this the Sequoia policy?
21         MR. KASTAN:  This is the policy ending 023
22 produced by Fireman's Fund --
23         MR. QUIGLEY:  Right.  Yeah.  That's the Sequoia
24 policy.
25         MR. KASTAN:  -- which I'm going to call the

# EXHIBIT 7

Exhibit 7

Page 86

1    Q    This particular application.
2    A    No. I have no recollection.
3    Q    In 2008, what would have been your practice as
4  a senior underwriter in obtaining that information?
5    A    Well, that, too, depends on where the location
6  came from. Because sometimes, which is not the
7  procedure, but sometimes the agents come direct to me.
8  The procedure was always it should go to agency
9  services. So it depends. If agency services received
10 the application, it's incomplete, so they would place a
11 call to the agent to obtain the information, because
12 they can't quote it without it.
13         Sometimes, again, from my recollection,
14 depending on how busy I was, if I got it first,
15 sometimes I would call out, or if I'm too busy, again
16 since the procedure was it was supposed to go to agency
17 services or customer service -- excuse me -- first, I
18 would send it back to them and have them do the normal
19 procedure of making the call-out.
20    Q    How was it supposed to work as far as your
21 contact with the agent versus the agency services or the
22 customer service?
23         MR. QUIGLEY:  Objection. Vague and ambiguous.
24 Incomplete hypothetical.
25         THE WITNESS:  There is an e-mail address where

Page 87

1  agents were supposed to send all submissions, and it was
2  a box that was monitored by customer service.
3  BY MR. KASTAN:
4    Q    And that's when you or -- strike that.
5         Your understanding was, then, agency services
6  or customer service would then forward that along to the
7  rater, and then the rater would forward that along to
8  you?
9    A    Okay. Maybe I should clarify that the rater is
10 customer service, so they're the same -- the same
11 people. So it goes into this e-mail box, and that
12 individual, they're a customer service person, but they
13 do the rating.
14    Q    And all the rating's done now electronically?
15    A    Yes. It was an -- an electronic system.
16    Q    Not like the paper way you used to do it back
17 at Golden Eagle.
18    A    That's correct.
19    Q    So as you look at Exhibit 20, this homeowner
20 application, would you agree with me that it's your
21 understanding that this particular agent was asking for
22 the named insured to be Herndon Partners, LLC?
23    A    Correct.
24         MR. KASTAN:  If I could mark this as
25 Exhibit 21 --

Page 88

1         (Exhibit 21 was marked for identification.)
2  BY MR. KASTAN:
3    Q    Ms. Hadfield, if you would just take a look
4  through what's been marked as Exhibit 21, this is from
5  Fireman's Fund's production, FF000019 through 23
6  consecutive.
7    A    Yes.  I reviewed it.
8    Q    And do you see any of your own handwriting on
9  this page, the first page of Exhibit 21?
10   A    I do.
11   Q    And can you point me where your handwriting is
12 located?
13   A    My handwriting is Burns & Wilcox, and that, to
14 my best recollection, underneath it, the number
15 04499841, was probably their agency code.
16   Q    Okay.
17   A    One -- at the bottom of the application, kind
18 of slanted, it says, "1.20 brush surcharge." That's my
19 handwriting.
20        And the name, Paul Owhadi at the top of the
21 words "Homeowners Application," and the word "issue"
22 right above that.
23   Q    What about this --
24   A    Oh.  I --
25        MR. QUIGLEY:  She's not done yet.

Page 89

1         THE WITNESS:  I apologize.
2         And then at the bottom right, it says, "list
3  Herndon Partners as additional insured," that's my
4  handwriting.
5         And then at the very bottom of the application,
6  the word "primary," and then "NZ 2429023," that's my
7  handwriting.
8         And that's it on that page.
9  BY MR. KASTAN:
10   Q    What about c/o?
11   A    I apologize. Yes. That's -- that's me as
12 well.
13        MR. QUIGLEY:  Where -- where is that, Josh?
14        THE WITNESS:  Up at the top.
15        MR. KASTAN:  Next to the named -- named insured
16 box.
17        MR. QUIGLEY:  Oh. I see. At the very top of
18 the page there, right under ER, the homeowner title?
19        MR. KASTAN:  Yep.
20        THE WITNESS:  And I actually found one more
21 that's my handwriting, "effective 10," and it has 27
22 marked out. That 29 is not mine, but the "10/27/08" is
23 my handwriting.
24 BY MR. KASTAN:
25   Q    And what about where it's indicated in the top

# EXHIBIT 8

Exhibit 8

Page 94

1  And do these look to be the same foundational
2  application --
3      A  Yes.
4      Q  -- that you received?
5      A  Yes.
6      Q  And you'd agree with me that 21 has the version
7  with your and Ms. McLachlan's stamps and some of your
8  handwriting and some handwriting by someone that we
9  don't know. Is that right?
10     A  Yes.
11     Q  So if you look at the top right-hand corner,
12 why did you write --
13        MR. QUIGLEY:  Which -- which exhibit?
14        MR. KASTAN:  21.
15        MR. QUIGLEY:  Okay. Are we done with 20?
16        MR. KASTAN:  No.
17        MR. QUIGLEY:  Okay.
18 BY MR. KASTAN:
19     Q  Why did you write "Paul Owhadi, c/o," and add
20 that to Herndon Partners, LLC, as a named insured on
21 this application?
22     A  I can't respond -- respond to that
23 affirmatively, but I can give you my underwriting
24 experience on why.
25     Q  So you have no recollection independently as to

Page 95

1  why you did that.
2      A  Correct.
3      Q  Now, why -- if it was your practice to change
4  information on application forms, why did you do so?
5      A  It would be -- when I get the application, and
6  again it's incomplete or something that is questionable,
7  if we can write it or not, I would then have a
8  conversation with the agent to see what the whole
9  picture is. And if something is clarified, then I would
10 clarify it on the application.
11     Q  So you didn't consider this to be a change on
12 the application, on Exhibit 21?
13        MR. QUIGLEY:  Objection. Vague and ambiguous
14 as to what you mean by "change."
15 BY MR. KASTAN:
16     Q  To the named insured information on the top
17 right-hand corner that we were just discussing.
18     A  It was a -- again, from my experience, it was
19 obviously a conversation had occurred on what the
20 exposure was, so again I modified and clarified what we
21 were writing.
22     Q  And that's because you couldn't write a
23 personal lines policy to an LLC; is that right?
24     A  Correct.
25     Q  But you could write a personal lines policy to

Page 96

1  an individual in care of an LLC?
2      A  Yeah. The "in care of" can be anything. It's
3  a mailing address. So especially, too, in our
4  celebrities, you have the in care of, and the address
5  under that is meaningless in regards to the coverage.
6         MR. KASTAN:  Let's take a break. The
7  videographer need to change the tape.
8         THE VIDEOGRAPHER:  This is the end of
9  Media No. 1 in the deposition of Lynn Hadfield.
10        The time is 11:56 a.m. We're now off the
11 record.
12        (Lunch recess from 11:56 a.m. - 12:41 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 97

1     SAN DIEGO, CALIFORNIA; WEDNESDAY, JUNE 29, 2016
2              12:41 P.M. - 3:02 P.M.
3                 -  -  -  -
4         THE VIDEOGRAPHER:  This is the beginning of
5  Media No. 2 in the deposition of Lynn Hadfield.
6         The time is 12:41 p.m. We're back on the
7  record.
8                 EXAMINATION (Continued)
9  BY MR. KASTAN:
10     Q  Ms. Hadfield, based on your own experience,
11 would you agree with me that an LLC is a type of
12 business entity?
13        MR. QUIGLEY:  Objection. Calls for an expert
14 conclusion. Calls for a legal conclusion.
15 Lacks foundation.
16        THE WITNESS:  Can you repeat the question?
17        (Record read.)
18        MR. QUIGLEY:  Same objections.
19        THE WITNESS:  Yeah. My opinion is not --
20        No. The answer is no.
21 BY MR. KASTAN:
22     Q  And just -- I'm not asking for your opinion.
23     A  Oh.
24     Q  I'm asking based on your own experience as a
25 senior underwriter for quite a number of years, is an

Case 3:15-cv-02592-SI  Document 139  Filed 10/14/16  Page 26 of 28

**HARTFORD CASUALTY INS. COMPANY vs. FIREMAN'S FUND INS. COMPANY, ET AL.**
30(b)(6)                    Lynn Hadfield on 06/29/2016                    Pages 198..200

Page 198

1        THE WITNESS:  Thank you.

2        MR. QUIGLEY:  You survived.

3        THE VIDEOGRAPHER:  This is the end of

4   Media No. 3 in the deposition of Lynn Hadfield.

5        The time is 3:02 p.m.  We're now off the

6   record.

7        (Proceedings concluded at 3:02 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 200

1                    CHANGES AND SIGNATURE

2   WITNESS NAME:            Lynn Hadfield,      06/29/2016

3   PAGE    LINE    CHANGE            REASON

4   _____

5   _____

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20       I, Lynn Hadfield, have read the foregoing

    deposition and hereby affix my signature that same is

21  true and correct, except as noted above.

22       _____

                    Lynn Hadfield

23

24

25

Page 199

1        I, Tricia A. Rosate, Certified Shorthand

2   Reporter licensed in the State of California, License

3   No. 10891, hereby certify that the deponent was by me

4   first duly sworn, and the foregoing testimony was

5   reported by me and was thereafter transcribed with

6   computer-aided transcription; that the foregoing is a

7   full, complete, and true record of said proceedings.

8        I further certify that I am not of counsel or

9   attorney for any of the parties in the foregoing

10  proceeding and caption named or in any way interested in

11  the outcome of the cause in said caption.

12       The dismantling, unsealing, or unbinding of the

13  original transcript will render the reporter's

14  certificates null and void.

15       In witness whereof, I have hereunto set my hand

16  this day:  June 29, 2016

17

18  _____ Reading and signing was requested.

19

    _____ Reading and signing was waived.

20

21  __x___ Reading and signing was not requested.

22

23       _Tricia A. Rosate_

24       Tricia Rosate, RDR, RMR, CRR, CCRR
         CSR No. 10891

25

1

**PROOF OF SERVICE**

2 | **STATE OF CALIFORNIA**                )
                                           )     ss.
3 | **COUNTY OF SACRAMENTO**            )

4 | I, Beverley TOMLI-Hill, declare that I am employed in the County of Sacramento, State of California.  I am
   | over the age of 18 and not a party to the within action.  My business address is 980 9th Street, Suite 2350,
5 | Sacramento, California 95814

6 | On the date shown below, I served the document(s) described as **DECLARATION OF L. SCOTT
   | BRUGGEMANN IN SUPPORT OF BURNS & WILCOX'S REPLY TO HARTFORD'S
7 | OPPOSITION TO ITS SUMMARY JUDGMENT** on all interested parties in said action by placing a true
   | copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

8
   | ☐     **BY MAIL:** as follows:
9 |         ☐     **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and
   |         processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal
10 |        Service on that same day with postage thereon fully prepaid at Sacramento, California, in the ordinary
   |        course of business.  I am aware that on motion of party served, service is presumed invalid if postal
11 |        cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in
   |        affidavit.

12
   |        ☐     **FEDERAL** – I deposited such envelope in the U.S. Mail at Sacramento, California, with
13 |        postage thereon fully prepaid.

14 | ☐     **BY PERSONAL SERVICE** as follows:  I caused a copy of such document(s) to be delivered by hand
   |        to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.
15
   | ☐     **BY OVERNIGHT COURIER SERVICE** as follows:  I caused such envelope to be delivered by
16 |        overnight courier service to the offices of the addressee.  The envelope was deposited in or with a
   |        facility regularly maintained by the overnight courier service with delivery fees paid or provided for.
17
   | ☒     **BY ELECTRONIC MAIL** as follows:  I hereby certify that I electronically transmitted the attached
18 |        document(s) to the U.S. District Court using the CM/ECF System for filing, service and transmittal of
   |        Notice of Electronic Filing to the CM/ECF registrants for this case.  Upon completion of the electronic
19 |        transmission of said document(s), a receipt is issued to the serving party acknowledging receipt by
   |        ECF's system, which will be maintained with the original document(s) in our office.
20
   | ☐     **BY FACSIMILE** as follows:  I caused such documents to be transmitted to the telephone number of
21 |        the addressee listed on the attached service list, by use of facsimile machine telephone number.  The
   |        facsimile machine used complied with California Rules of Court, Rule 2004 and no error was reported
22 |        by the machine.  Pursuant to California Rules of Court, Rule 2006(d), a transmission record of the
   |        transmission was printed.
23
   | ☐     **STATE**       I declare under penalty of perjury under the laws of the State of California that the
24 |        above is true and correct.

25 | ☒     **FEDERAL**       I declare that I am employed in the offices of a member of the State Bar of this Court
   |        at whose direction the service was made.
26
   |        Executed on October 14, 2016, at Sacramento, California.
27
   |                                                      BEVERLEY TOMLIN-HILL
28

2544965.1

1

2

3

**SERVICE LIST**
**Hartford Casualty Ins. Co. v. Fireman's Fund Ins. Co., et al.**
**U.S. District Court, Northern District - Case No. 3:15-cv-02592 SI**
**W&W File No. 1670-001**
**[Revised: 09/14/15]**

4

| | |
|---|---|
| 5<br><br>6<br><br>7<br><br>8 | Stephen M. Hayes, Esq.<br>Joshua N. Kastan, Esq.<br>HAYES SCOTT BONINO ELLINGSON<br>& McLAY, LLP<br>203 Redwood Shores Parkway, #480<br>Redwood City, CA 94065 | **Attorneys for Plaintiff**<br>**HARTFORD CASUALTY INSURANCE**<br>**COMPANY**<br>Tel.: (650) 637-9100<br>Fax: (650) 637-8071; (650) 637-9101<br>Email: shayes@hayesscott.com<br>jkastan@hayesscott.com |
| 9<br>10<br>11<br>12<br>13 | Ramiro Morales, Esq.<br>Laurence Near, Esq.<br>MORALES FIERRO & REEVES<br>2300 Contra Costa Blvd., Suite 310<br>Pleasant Hill, CA 94523 | **Attorneys for Defendant**<br>**FIREMAN'S FUND INSURANCE**<br>**COMPANY**<br>Tel.: (925) 288-1776<br>Fax: (925) 288-1856<br>Email: rmorales@mfrlegal.com<br>lnear@mfrlegal.com |
| 14<br>15<br>16<br>17<br>18 | Christine E. Jacob, Esq.<br>Bret N. Batchman, Esq.<br>HANSEN KOHLS SOMMER & JACOB LLP<br>1520 Eureka Road, Suite 100<br>Roseville, CA 95661 | **Attorneys for Cross-Defendant**<br>**MOSEN O'HADI AKA MOSEN OHADI, DBA**<br>**MALIBU PACIFIC AND/OR MALIBU PACIFIC**<br>**REAL ESTATE CO AND/OR MALIBU**<br>**COASTAL INSURANCE SERVICES**<br>Tel.: (916) 781-2550<br>Fax: (916) 781-5339<br>Email: cjacob@hansenkohls.com<br>bbatchman@hansenkohls.com |

19

20

21

22

23

24

25

26

27

28

2544965.1