1     CHRISTINE E. JACOB (State Bar No. 216679)
      BRET N. BATCHMAN (State Bar No. 236311)
2     HANSEN, KOHLS, SOMMER & JACOB, LLP
      1520 EUREKA ROAD, SUITE 100
3     ROSEVILLE, CALIFORNIA 95661
      TELEPHONE: (916) 781-2550
4     FACSIMILE: (916) 781-5339
      cjacob@hansenkohls.com
5     bbatchman@hansenkohls.com

6     Attorneys for Cross-Defendant MOSEN O'HADI aka
      MOSEN OHADI, dba MALIBU PACIFIC and/or
7     MALIBU PACIFIC REAL ESTATE CO and/or
      MALIBU COASTAL INSURANCE SERVICES

8

9                   UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13   HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation, | Case No. 3:15-cv-02592 SI |
| 14          Plaintiff, | **CROSS-DEFENDANT MOSEN O'HADI'S MOTION IN LIMINE NO. 2 TO PRECLUDE PLAINTIFF HARTFORD CASUALTY INSURANCE COMPANY FROM INTRODUCING EVIDENCE THAT O'HADI HAD ADDITIONAL DUTIES NOT FOUND IN THE LAW DURING HIS REPRESENTATION OF PAUL OWHADI AND HERNDON PARTNERS, LLC, INCLUDING:** |
| 15   v. | |
| 16   FIREMAN'S FUND INSURANCE COMPANY, a California Corporation; | |
| 17   BURNS & WILCOX INSURANCE SERVICES, INC., a California | |
| 18   Corporation, and DOES 1 to 50, | |
| 19          Defendants. | **(1) THE DUTY TO INVESTIGATE THE OWNERSHIP OF THE 11 TO 18 PROPERTIES ON THE EXCESS POLICY;** |
| 20     ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯/ | **(2) THE DUTY TO INVESTIGATE THE OWNERSHIP OF THE PROPERTIES** |
| 21   BURNS & WILCOX INSURANCE SERVICES, INC., a California | **BECAUSE THEY ARE LISTED AS RENTAL PROPERTIES;** |
| 22   Corporation, | **(3) THE DUTY TO RECOMMEND** |
| 23        Cross-Complainant, | **COVERAGE AND COVERAGE AMOUNTS; AND** |
| 24   v. | **(4) THE DUTY TO DISCLOSE TO** |
| 25   MOSEN O'HADI aka MOSEN OHADI, dba MALIBU PACIFIC and/or MALIBU | **INSURED THAT THERE IS A BUSINESS EXCLUSION AND TO RECOMMEND** |
| 26   PACIFIC REAL ESTATE CO and/or MALIBU COASTAL INSURANCE | **ALTERNATIVE COVERAGE** |
| 27   SERVICES, and ROES 1 – 100, inclusive, | Complaint |
|          Cross-Defendants. | Filed:       June 10, 2015 |
| 28     ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯/ | Trial:         November 14, 2016 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## INTRODUCTION

Cross-Defendant MOSEN O'HADI ("O'Hadi") hereby moves this Court, in limine, for an Order precluding HARTFORD CASUALTY INSURANCE COMPANY ("Hartford"), and its witnesses, experts, and attorneys, from introducing evidence or argument at trial that O'Hadi had additional duties not found in the law during his representation of Paul Owhadi and Herndon Partners, LLC ("Herndon").  Specifically, Hartford attempts to impose the following duties on O'Hadi not supported by law: (1) the duty to investigate the ownership of the 11 to 18 properties on the excess policy; (2) the duty to investigate the ownership of the properties because they are listed as rental properties; (3) the duty to recommend coverage and coverage amounts; and (4) the duty to disclose to insured that there is a business exclusion and to recommend alternative coverage.

## II.

## RELEVANT FACTS

### A.   Mr. Owhadi Formed Herndon Partners, LLC To Hold Assets, Not To Conduct Business

Paul Owhadi formed Herndon Partners, LLC ("Herndon") for the sole purpose of holding assets.  (*See e.g.*, Declaration of Bret N. Batchman "Batchman Decl.," ¶ 20, Exhibit N [Email from Paul Owhadi to Melanie Juarros of Fireman's Fund, dated November 24, 2010].)  Herndon does not conduct business or have any employees.[1]  (Batchman Decl., ¶ 22, Exhibit P [Owhadi Depo., 46:3-13, 54:10-55:3]; Batchman Decl., ¶ 18, Exhibit N [Email from Paul Owhadi to

///

---

[1]   Although the jury in the underlying wrongful death action found otherwise, the parties in this action have found Mr. Owhadi's testimony regarding Herndon to be credible.  (*Compare* Batchman Decl., ¶ 21, Exhibit O [Jury's Verdict Form]; *with* Batchman Decl., ¶ 30, Exhibit X [Don Way's Suppl. Expert Report, dated August 9, 2016, p. 2] ["Contrary to the jury finding in The Underlying, [Paul Owhadi] testified that Herndon never had any employees and thus no workers' compensation insurance; the individuals, including the deceased, working on The Premises, were employees of other controlled entities which did maintain the statutory insurance [38:11; 43:10; 54:1.] I find his testimony credible."]; and Batchman Decl., ¶ 13, Exhibit L [Depo. of James Robertson ("Robertson Depo."), 33:10-13] ["[Question by Mr. Batchman] Did you find Paul's testimony credible as to the background of what Herndon Partners, LLC, was? [Answer by Mr. Robertson] Yes, with the proviso that I have no way to validate whether everything he said was true or not."].)

1    Melanie Juarros of Fireman's Fund, dated November 22, 2010]; Batchman Decl., ¶ 20, Exhibit N

2    [Email from Paul Owhadi to Melanie Juarros of Fireman's Fund, dated November 24, 2010].)

3            After forming Herndon, Mr. Owhadi spoke with his primary insurance broker, Ron Lamb,

4    who is responsible for procuring all of Mr. Owhadi's commercial insurance policies, regarding

5    whether he needed to obtain workers' compensation insurance for Herndon.  (Batchman Decl., ¶

6    22, Exhibit P [Owhadi Depo., 31:16-32:5, 54:10-56:19].)  Mr. Lamb responded that the State of

7    California would not, under any circumstance, issue workers' compensation insurance for an

8    entity that has no employees and is not conducting business.  (Batchman Decl., ¶ 22, Exhibit P

9    [Owhadi Depo., 54:21-56:19].)  Because Herndon does not conduct any business or have any

10   employees, Mr. Owhadi never sought to procure workers' compensation insurance or commercial

11   insurance for Herndon.  (Batchman Decl., ¶ 22, Exhibit P [Owhadi Depo., 46:3-13, 54:10-56:19];

12   Batchman Decl., ¶ 18, Exhibit N [Email from Paul Owhadi to Melanie Juarros of Fireman's

13   Fund, dated November 22, 2010]; Batchman Decl., ¶ 20, Exhibit N [Email from Paul Owhadi to

14   Melanie Juarros of Fireman's Fund, dated November 24, 2010].)  Notably, Mr. Owhadi *never*

15   asked O'Hadi to procure workers' compensation insurance for Herndon.  (Batchman Decl., ¶ 22,

16   Exhibit P [Owhadi Depo., 52:24-53:2, 60:6-9]; *see also* Batchman Decl., ¶ 23, Exhibit Q [Dkt.

17   No. 102] [Decl. of Edward McKinnon in Support of Hartford's Suppl. Opp'n to Fireman's

18   Fund's MSJ] [documenting that Mr. Owhadi knew that the Umbrella Policy did not provide

19   commercial coverage for Herndon]; Batchman Decl., ¶ 24, Exhibit R [Melanie Juarros' Claims

20   File Note, dated April 23, 2013].)

**B.     Insurance Broker O'Hadi Procured An Umbrella Policy For Paul And Susan
          O'Hadi, As Requested**

23           In August 2008, Mr. Owhadi requested insurance broker O'Hadi,[2] who assisted Mr.

24   Owhadi in procuring his personal insurance policies, to procure personal umbrella insurance for

25   Mr. Owhadi and his wife, Susan Owhadi.  (*See* Batchman Decl., ¶ 2, Exhibit A [Personal

26   Umbrella Application].)  Thereafter, O'Hadi assisted Mr. Owhadi by submitting a Personal

---

[2]  O'Hadi obtained his insurance license in or around April 2008.  (Batchman Decl., ¶ 25, Exhibit S [Depo. of Mosen O'Hadi ("O'Hadi Depo."), 9:19-21, 10:17-19, 76:19-25].)

1   Umbrella Application to Burns & Wilcox, which was subsequently submitted to Fireman's Fund

2   Insurance Company ("Fireman's Fund").  (Batchman Decl., ¶ 2, Exhibit A.)  The Personal

3   Umbrella Application listed several properties, most of which were titled in the name of various

4   shell entities (owned exclusively by Mr. Owhadi).

5
6   C.   Insurance Broker O'Hadi Procured A Primary Homeowner's Insurance Policy For The
         Subject Residence, As Requested

7        In 2008, Herndon acquired title to a home located at 31522 Broad Beach Road, Malibu,

8   California ("Subject Residence").  Mr. Owhadi, on behalf of Herndon, asked insurance broker

9   O'Hadi (his personal insurance policy broker), rather than Mr. Lamb (his commercial insurance

10  policy broker), to procure a homeowner's insurance policy for the Subject Residence.  (Batchman

11  Decl., ¶ 22, Exhibit P [Owhadi Depo, 59:25-60:15]; *see* Batchman Decl., ¶ 3; Exhibit B

12  [Homeowner's Application]; *see also* Batchman Decl., ¶ 20, Exhibit N [Email from Paul Owhadi

13  to Melanie Juarros of Fireman's Fund, dated November 24, 2010].)  Mr. Owhadi explained that

14  Herndon would be on the title to Subject Residence for tax purposes, but that Herndon did not

15  conduct business, did not have employees, and that the Subject Residence would be used as a

16  vacation home.  (*See* Batchman Decl., ¶ 3; Exhibit B [Homeowner's Application]; Batchman

17  Decl., ¶ 22, Exhibit P [Owhadi Depo, 29:17-21, 46:3-13, 54:10-15, 59:25-60:9].)  At no time did

18  Mr. Owhadi intend to use the Subject Residence for a commercial use or as a rental home.  (*See*

19  Batchman Decl., ¶ 22, Exhibit P [Owhadi Depo, 29:17-21, 46:3-13, 54:10-15, 59:25-60:9].)

20       Thereafter, in October 2008, O'Hadi submitted a Homeowner's Application for the

21  Subject Residence, which correctly identified the named insured as Herndon, to Burns & Wilcox,

22  pursuant to the request of Mr. Owhadi.  (Batchman Decl., ¶ 3; Exhibit B [Homeowner's

23  Application].)  Coverage was subsequently bound by Fireman's Fund and the Primary Policy was

24  issued for the Subject Residence naming Herndon as an additional insured for the policy period

25  of October 29, 2008, through October 29, 2009, with liability limits of $300,000.  Additionally,

26  the Subject Residence was also added to the Umbrella Policy.  (Batchman Decl., ¶ 26; Exhibit T

27  [Letter from Katherine Liner, on behalf of Fireman's Fund, to Charles Malaret, on behalf of Paul

28  Owhadi, dated June 6, 2013].)

**D.     Herndon Is Sued For The Wrongful Death Of Francisco Martinez Moreno**

On September 14, 2009, Francisco Martinez Moreno was electrocuted while working at the Subject Residence.  A wrongful death lawsuit was filed by the Moreno family in Fresno County Superior Court against Herndon.  A jury returned a verdict against Herndon and in favor of the Moreno family on May 30, 2013, in the amount of $14 million.  The verdict was subsequently reduced to $8.8 million via trial court remittitur.  The remittitur was accepted by the Moreno family and judgment entered.

**E.     Herndon Tendered Its Defense To Hartford And Fireman's Fund**

Herndon tendered the defense of the wrongful death lawsuit to its insurers Hartford and Fireman's Fund in early 2011.  Both Hartford and Fireman's Fund agreed to provide Herndon a defense to the wrongful death lawsuit.  However, issues of coverage arose between the insurers.

Hartford issued primary and excess policies to Herndon prior to the Moreno accident. The total liability limits issued by Hartford were $3 million ($2 million primary, $1 million excess).   Fireman's Fund issued a primary homeowner's policy to "Paul Owhadi c/o Herndon Partners LLC" with liability limits of $300,000, and an umbrella policy which listed the Subject Residence and provided $5 million in liability coverage.

Fireman's Fund did not provide Herndon with its initial coverage position on the Fireman's Fund Umbrella Policy until May 29, 2013, i.e., the day before the verdict was rendered in the wrongful death case.  Specifically, Fireman's Fund declined coverage to Herndon under the Umbrella Policy on the basis that the named insured under the policy was Paul and Susan Owhadi, not Herndon.  Shortly thereafter, on June 6, 2013, after the jury found that Mr. Martinez was an employee of Herndon at the time of his death, Fireman's Fund officially declined coverage, citing to the workers compensation exclusion in the policy.

### III.

### AUTHORITY FOR MOTIONS IN LIMINE

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 (1984).  Although motions in limine are not expressly authorized by the Federal

1  Rules of Civil Procedure or the Federal Rules of Evidence, it is recognized that such motions are

2  proper requests which the trial court has the inherent power to entertain and grant. *See Ohler v.*

3  *United States*, 529 U.S. 753, 758 (2000); *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3rd

4  Cir. 1999); *United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979) (explaining that the

5  matter should be left to trial court's discretion "with a reminder that advance planning helps both

6  parties and the court"); *Luce v. United States*, 469 U.S. 38, 41 (1984); *United States v.*

7  *Holmquist*, 36 F.3d 154, 163 (1st Cir. 1994).

8  **IV.**

9  **ARGUMENT**

10  **A.     The Limited Duties Of An Insurance Broker**

11          "Whether a duty of care exists is a question of law for the court. . . . Also, whether, and

12  the extent to which, a new duty is recognized is ultimately a question of public policy." *Jones v.*

13  *Grewe*, 189 Cal.App.3d 950, 954 (citing *Wilson v. All Service Ins. Corp.*, 91 Cal.App.3d 793, 796

14  (1979); *Raymond v. Paradise Unified School Dist.*, 218 Cal.App.2d 1, 8-9 (1963)).

15          In California, it is well settled that insurance brokers owe a *limited duty* to their clients,

16  which is only "to use reasonable care, diligence, and judgment in procuring the insurance

17  requested by an insured." *Pac. Rim Mech. Contractors, Inc. v. Aon Risk Ins. Servs. W., Inc.*, 203

18  Cal.App.4th 1278, 1283 (2012) (quoting *Jones v. Grewe*, 189 Cal.App.3d 950, 954 (1987)).

19          Accordingly, an insurance broker does not breach its duty to clients to procure the
             requested insurance policy unless
20          [¶]'(a) the [broker] misrepresents the nature, extent or scope of the coverage being
             offered or provided ... ,
21          [¶](b) there is a request or inquiry by the insured for a particular type or extent of
             coverage ... , or
22          [¶](c) the [broker] assumes an additional duty by either express agreement or by
             'holding himself out' as having expertise in a given field of insurance being
23          sought by the insured.'

24  *Id.* (quoting *Fitzpatrick v. Hayes*, 57 Cal.App.4th 916, 927 (1997)).

25          Thus, the mere existence of a relationship between an insurance broker and an insured

26  does not impose a duty on the broker to advise the insured on specific insurance matters.

27  *Jones v. Grewe*, 189 Cal.App.3d 950, 954 (1987).  "An agent may point out to [the insured] the

28  advantages of additional coverage and may ferret out additional facts from the insured applicable

1    to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to

2    respond." *Id.* (citation omitted).  "[T]he onus is thus squarely on the insured to inform the agent

3    of the insurance he requires."  *Charlin v. Allstate Ins. Co.*, 19 F.Supp.2d 1137, 1142 (C.D. Cal.

4    1998) (citation omitted).  Thus, insurers, through their agents, do not have a duty to point out the

5    advantages of additional coverage, to procure a policy affording an insured complete liability

6    protection, or to advise that additional coverage is available.  *Jones v. Grewe*, 189 Cal.App.3d

7    950, 954 (1987); *see also Malcom v. Farmers New World Life Ins. Co.*, 4 Cal.App.4th 296,

8    304 (1992).

9
10   **B.    O'Hadi's Duty Is Limited To Using Reasonable Care, Diligence, and Judgment In
             Procuring The Insurance Requested By Mr. Owhadi, On Behalf Of Herndon**

11         Mr. Owhadi, on behalf of Herndon, *specifically requested* that O'Hadi procure a

12   homeowner's insurance policy for the Subject Residence, and that is exactly what O'Hadi

13   procured.  (Batchman Decl., ¶ 22, Exhibit P [Owhadi Depo, 59:25-60:9]; Batchman Decl., ¶ 18,

14   Exhibit N [Email from Paul Owhadi to Melanie Juarros of Fireman's Fund, dated November 22,

15   2010]; Batchman Decl., ¶ 20, Exhibit N [Email from Paul Owhadi to Melanie Juarros of

16   Fireman's Fund, dated November 24, 2010]; Batchman Decl., ¶ 3; Exhibit B [Homeowner's

17   Application].)  Mr. Owhadi did *not* request workers' compensation insurance for Herndon or a

18   commercial insurance policy for the Subject Residence.  (*See e.g.*, Batchman Decl., ¶ 22, Exhibit

19   P [Owhadi Depo., 52:24-53:2, 59:25-60:9]; Batchman Decl., ¶ 18, Exhibit N [Email from Paul

20   Owhadi to Melanie Juarros of Fireman's Fund, dated November 22, 2010]; Batchman Decl., ¶ 20,

21   Exhibit N [Email from Paul Owhadi to Melanie Juarros of Fireman's Fund, dated November

22   24, 2010].)

23         Mr. Owhadi was in the best position to know Herndon's insurance needs, and thus, the

24   onus was squarely on him to inform O'Hadi of the insurance that Herndon required.  *See*

25   *Charlin v. Allstate Ins. Co.*, 19 F.Supp.2d 1137, 1142 (C.D. Cal. 1998).  Because Mr. Owhadi did

26   not request O'Hadi to procure workers' compensation insurance or commercial insurance,

27   O'Hadi cannot be blamed for Mr. Owhadi's decision to not carry workers' compensation

28   insurance for Herndon, or for Fireman's Fund's ultimate decision to deny coverage to Herndon

1   under the Umbrella Policy based upon the workers' compensation exclusion.  (Batchman Decl., ¶

2   26, Exhibit T [Letter from Katherine Liner, on behalf of Fireman's Fund, to Charles Malaret, on

3   behalf of Paul Owhadi, dated June 6, 2013].)  There simply has been no wrongdoing on the part

4   of O'Hadi.

5           Additionally, there is no evidence that any of the exceptions applicable to broker duties

6   applies, as there is no evidence that O'Hadi, in procuring the personal insurance requested by Mr.

7   Owhadi and Herndon, (1) misrepresented the nature, extent, or scope of the coverage provided to

8   Mr. Owhadi and Herndon, (2) did not procure a particular type of insurance requested by Mr.

9   Owhadi and Herndon, or (3) assumed an additional duty by either express agreement or by

10  "holding himself out" as having expertise in a given field of insurance.  *See e.g.*, *Pac. Rim Mech.*

11  *Contractors, Inc. v. Aon Risk Ins. Servs. W., Inc.*, 203 Cal.App.4th 1278, 1283 (2012).

12  Accordingly, O'Hadi's duty is limited to using reasonable care, diligence, and judgment in

13  procuring the personal insurance requested by Mr. Owhadi and Herndon.

14  **C.      Hartford Cannot Impose Additional Duties On O'Hadi**

15          Without providing any legal support, Hartford has consistently attempted to impose

16  *additional* duties on O'Hadi.  These duties include: (1) the duty to investigate the ownership of

17  the 11 to 18 properties on the excess policy; (2) the duty to investigate the ownership of the

18  properties because they are listed as rental properties; (3) the duty to recommend coverage and

19  coverage amounts; and (4) the duty to disclose to insured that there is a business exclusion and to

20  recommend alternative coverage.  Because Hartford has not cited any legal authority to support

21  the existence of such duties, the Court should preclude Hartford, and its witnesses, experts, and

22  attorneys, from arguing these duties exist at trial.

23
24          ***1.      A Duty To Investigate The Ownership Of The 11 To 18 Properties On The Excess Policy***

25          First, Hartford's experts Don Way and James Robertson attempt to impose a duty on

26  insurance brokers to investigate the ownership of all properties listed on an insurance policy that

27  has multiple properties.  (*See e.g.*, Batchman Decl., ¶ 27, Exhibit U [Decl. of Don Way in

28  Support of Hartford's Opp'n to Fireman's Fund's MSJ ("Way Decl."), ¶¶ 9-10]; Batchman Decl.,

1    ¶ 10, Exhibit I [Robertson's Expert Report, dated July 11, 2016, p. 4].)  For example, Mr. Way

2    has opined:

3        • "Based upon my review of the documents provided to me to date in this
             case, it appears that the Fireman's Fund Excess Policy was issued on
4            between 11 and 18 different residence exposures.  However, it would be
             unreasonable for any individual assisting in the application, placing, or
5            issuing of insurance policies to conclude that an individual would own 11
             to 18 properties in their own personal name.  At the very least, based upon
6            my training, education, and decades of experience, I believe that the
             standard of care in the insurance industry would be to inquire further with
7            the applicant as to the ownership interest in each of said properties."  (Way
             Decl., ¶ 9.)
8
         • "[B]ased upon my training, education, and decades of experience, I believe
9            that the standard of care in the insurance industry would be to inquire
             further with the applicant as to the ownership interest in each of said
10           properties."  (Way Decl., ¶ 10.)

11   (Batchman Decl., ¶ 27, Exhibit U [Way Decl., ¶¶ 9-10].)  Mr. Robertson has opined that the

12   insurance brokers "unreasonably assumed that Mr. and Mrs. Owhadi owned 11-18 properties

13   without making inquiries regarding the ownership of these properties."  (*See e.g.*, Batchman

14   Decl., ¶ 10, Exhibit I [Robertson's Expert Report, dated July 11, 2016, p. 4].)

15       As noted by the Court in its Order granting Fireman's Fund's Motion for Summary

16   Judgment, Mr. Way "fails to cite any authority which upholds such a standard of care."

17   (Batchman Decl., ¶ 11, Exhibit J [Dkt. No. 120] [Court's Order Re Fireman's Fund's MSJ,

18   14:15-20].)  The reason for the lack of authority is obvious: the law imposes no such duty on

19   brokers.  *See e.g.*, *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal.App.4th

20   1040, 1051 (2013) ("[A]n insurer does not have the duty to investigate the insured's statements

21   made in an insurance application and to verify the accuracy of the representations.").  Thus,

22   Hartford should be precluded from imposing such a duty on O'Hadi as a matter of law.

23
              **2.    *A Duty To Investigate The Ownership Of The Properties Because They Are***
24                     ***Listed As Rental Properties***

25       Second, Hartford's attorneys and experts attempt to impose a duty on insurance brokers to

26   investigate the ownership of all properties listed as "rentals" on an insurance policy.  (*See e.g.*,

27   Batchman Decl., ¶ 6, Exhibit E [Dkt. No. 79] [Hartford's Opp'n to Fireman's Fund's MSJ, 6:25-

28   26, 9:14-15, 18:22-23] [pointing out that "[t]he additional properties listed in the Excess

1    Application were identified as 'rentals' that were rented to others" ]; Batchman Decl., ¶ 29,

2    Exhibit W [Don Way's Rebuttal Expert Report, dated July 28, 2016, p. 2].)  For example,

3    Hartford's expert Mr. Way has opined:

4          •      "Especially with regard to [Burns & Wilcox]'s interactions with O'Hadi,
                  there were numerous 'red flags' (e.g., O'Hadi's evident inexperience and
5                 incompetence) to call for further inquiry.  [¶] At the very least, . . .
                  defendants did have a professional obligation to ask questions, and they
6                 certainly had many opportunities to do so.  I note the additional insured
                  (Herndon) and the disclosed large number of rental properties, for
7                 example."  (Don Way's Rebuttal Expert Report, dated July 28, 2016, p. 2.)

8    (Batchman Decl., ¶ 29, Exhibit W [Don Way's Rebuttal Expert Report, dated July 28, 2016,

9    p. 2].)

10         As explained above, "an insurer does not have the duty to investigate the insured's

11   statements made in an insurance application and to verify the accuracy of the representations."

12   *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal.App.4th 1040, 1051 (2013).

13   The duty is limited to using "reasonable care, diligence, and judgment in procuring the insurance

14   requested by an insured."  *Pac. Rim Mech. Contractors, Inc. v. Aon Risk Ins. Servs. W., Inc.*, 203

15   Cal.App.4th 1278, 1283 (2012).  Consequently, the Court should preclude Hartford from

16   imposing this duty on O'Hadi at trial.

17         **3.     *A Duty To Recommend Coverage And Coverage Amounts***

18         Third, Hartford's experts attempt to impose a duty on insurance brokers to recommend

19   coverage and coverage amounts.  (*See e.g.*, Batchman Decl., ¶ 28, Exhibit V [Don Way's Expert

20   Report, dated July 10, 2016, ¶¶ 6, 8]; Batchman Decl., ¶ 29, Exhibit W [Don Way's Rebuttal

21   Expert Report, dated July 28, 2016, p. 2]; Batchman Decl., ¶ 31, Exhibit Y [Depo. of Don Way

22   ("Way Depo."), 50:2-53:20, 57:11-18]; Batchman Decl., ¶ 13, Exhibit L [Robertson Depo., 46:9-

23   47:18, 55:8-12].)  Particularly, Mr. Way and Mr. Robertson have suggested that O'Hadi should

24   have procured a commercial insurance policy, rather than a personal insurance policy.  (*See, e.g.*,

25   Batchman Decl., ¶ 28, Exhibit V [Don Way's Expert Report, dated July 10, 2016, ¶¶ 6, 8];

26   Batchman Decl., ¶ 29, Exhibit W [Don Way's Rebuttal Expert Report, dated July 28, 2016, p. 2];

27   Batchman Decl., ¶ 31, Exhibit Y [Way Depo., 50:2-53:20, 57:11-18]; Batchman Decl., ¶ 13,

28   Exhibit L [Robertson Depo., 46:9-47:18, 55:8-12].)  Additionally, Mr. Way has concluded that

1   O'Hadi should have procured more than $300,000 of liability insurance.  (*See, e.g.*, Batchman

2   Decl., ¶ 31, Exhibit Y [Way Depo., 52:2-5].)

3           An insurance broker generally has no duty to volunteer that an insurer should obtain

4   different or additional insurance coverage.  *See e.g.*, *Roberts v. Assurance Company of Am.*, 163

5   Cal.App.4th 1398, 2505 (2008); *Fitzpatrick v. Hayes*, 57 Cal.App.4th 916, 927 (1997); *Jones v.*

6   *Grewe*, 189 Cal.App.3d 950 (1987); *San Diego Assemblers, Inc. v. Work Comp for Less Ins.*

7   *Servs., Inc.*, 220 Cal.App.4th 1363, 1369 (2013) (finding that an insurance broker does not have a

8   duty to investigate an insured's coverage needs).  The case of *Gibson v. Government Employees*

9   *Ins. Co.* ("*Gibson*"), 162 Cal.App.3d 441 (1984), is instructive.  In *Gibson*, the Court of Appeal

10   upheld the lower court's order sustaining a demurrer to a complaint by a couple against their

11   insurer for allegedly not advising them of "the availability and potential need for 'underinsured

12   motorist' coverage, as well as the inadequacy of [their] . . . medical payments benefit."  *Id.* at

13   443.  The Court explained, "Plaintiffs have not cited, and we have not found, any case which

14   extends either a fiduciary duty or a covenant of good faith and fair dealing owed by an insurer or

15   insurance company to its insured beyond the terms of the insurance contract in force between

16   them."  *Id.* at 448.  Therefore, the Court held, as a matter of law, that defendant did not owe

17   plaintiffs a fiduciary duty to "(1) make available to them a particular kind of insurance, (2) advise

18   them of the availability of such coverage elsewhere in the industry, or (3) advise them of

19   inadequacies in coverage of which plaintiffs should, as reasonable persons, have themselves been

20   aware."  *Id.* at 452.

21           The case of *Jones v. Grewe* ("*Jones*"), 189 Cal.App.3d 950 (1987), is also instructive.  In

22   *Jones*, the Court of Appeal upheld the lower court's order sustaining a demurrer to a cross-

23   complaint brought by the owners of an apartment building against their long-time insurance

24   broker.  *Id.* at 958. The building owners alleged that their broker was negligent in not advising

25   them to have more than $300,000 in liability coverage.  *Id.* at 957.  In rejecting the building

26   owners' argument, the Court explained that although an insurance broker has a general duty "to

27   use reasonable care, diligence, and judgment in procuring the insurance requested by an insured,"

28   ///

this generally does not entail any obligation to "point out to [the insured] the advantages of additional coverage." *Id.* at 954.

As a matter of law, Hartford's experts and attorneys cannot impose additional duties on O'Hadi that would require him to recommend what insurance should be procured and what coverage amounts are sufficient.

### 4. *A Duty To Disclose To Insured That There Is A Business Exclusion And To Recommend Alternative Coverage*

Last, Hartford's experts attempt to impose a duty on insurance brokers that requires them to disclose any potentially relevant policy exclusions and recommend alternative coverage. (*See e.g.*, Batchman Decl., ¶ 31, Exhibit Y [Way Depo., 83:1-85:13]; Batchman Decl., ¶ 29, Exhibit W [Don Way's Rebuttal Expert Report, dated July 28, 2016, p. 2].) For instance, Mr. Way has made the following comments:

- "[Question by Mr. Batchman] [Does a broker have an obligation to go over all of the exclusions within a given policy with a prospective insured? [Answer by Mr. Way] No. [Question by Mr. Batchman] Okay. And so, when does that obligation ensue? [Answer by Mr. Way] That is fact intensive. . . . [I]f you sell homeowner's insurance in California, you'd better disclose that earthquake and flood are not covered. . . . [I]f it's relevant, . . . you've got to talk about that. But going through each and every exclusion, no. You could be there all day. But exclusions may be relevant. For instance, a rental properties exclusion for somebody who owns 20 houses, you -- yeah, you've got to talk about that. [Question by Mr. Batchman] Is there any scholarly article or treatise that you're aware of that says, Broker, this is when you have that obligation to go over the exclusions, and this is when you don't? [Answer by Mr. Way] I haven't looked for any. I can't tell you there aren't. . . . I don't know. It's just so generally accepted from my 50 years of experience and custom and practice, I didn't feel it was necessary to go pull published citations. One problem with those, of course, is that no two authors precisely agree. We, unfortunately perhaps, do not have a definitive text on this subject that all of us experts agree upon. So I have been in cases where I come up with one citation, and the expert on the other side comes up with a different citation and somebody else comes up with a third citation. They're all from highly reputable professional sources, and they all disagree. That doesn't really help anybody. So I prefer just going from the basic custom and practice that is actually my expertise. Obviously, I did it for 50 years, and I've been challenged on it to explain why it's the custom and practice. Does it make common sense to a judge or jury as to why this is, in fact, the custom and practice and why not doing it is a violation of the standard of care." (Way Depo., 83:1-85:13.)

- "Policy interpretation ('coverage opinion') is an area best left to attorneys and the court. However, brokers of necessity routinely advise clients as to probable coverage *or the lack thereof*, something I did every business day

190445      Cross-Defendant Mosen O'Hadi's Motion in Limine No. 2

1

2     for nearly 50 years." (Don Way's Rebuttal Expert Report, dated July 28, 2016, p. 2 [emphasis added].)

3    (Batchman Decl., ¶ 31, Exhibit Y [Way Depo., 83:1-85:13]; Batchman Decl., ¶ 29, Exhibit W

4    [Don Way's Rebuttal Expert Report, dated July 28, 2016, p. 2].)  As with his opinion that O'Hadi

5    should have investigated the ownership of the 11 to 18 properties, Mr. Way is conspicuously

6    unable to provide any support for his position that O'Hadi should have pointed out the policy

7    exclusions in this case.  The law is clear that insurance brokers do not have a duty to procure a

8    policy affording an insured complete liability protection, or to advise that additional coverage is

9    available.  *Jones v. Grewe*, 189 Cal.App.3d 950, 954 (1987); *see also Malcom v. Farmers New*

10   *World Life Ins. Co.*, 4 Cal.App.4th 296, 304 (1992).  Therefore, the Court should preclude

11   Hartford from imposing such a duty on O'Hadi at trial.

12                                          **V.**

13                                     **CONCLUSION**

14           Allowing Hartford to attempt to impose additional duties on O'Hadi would fundamentally

15   alter the nature and corresponding duties of insurance brokers.  Thus, O'Hadi respectfully

16   requests that the Court issue an Order precluding Hartford, and its witnesses, experts, and

17   attorneys, from introducing evidence that O'Hadi had additional duties not found in the law

18   during his representation of Paul Owhadi and Herndon.

19   DATED: October 25, 2016                  Respectfully submitted

20                                            HANSEN, KOHLS, SOMMER & JACOB, LLP

21

22                              By:     /s/ BRET N. BATCHMAN
                                        Attorneys for Cross-Defendant MOSEN O'HADI
23                                      aka MOSEN OHADI, dba MALIBU PACIFIC
                                        and/or MALIBU PACIFIC REAL ESTATE CO
24                                      and/or MALIBU COASTAL INSURANCE
                                        SERVICES
25

26

27

28

190445                    Cross-Defendant Mosen O'Hadi's Motion in Limine No. 2