# Exhibit V

# DONALD A. WAY, CPCU, CLU, ARM
Don Way Litigation, LLC
CONSULTANT
Email: donway@donwaylitigation.com
124 Patricia Drive, Atherton, CA 94027
*Global Cell and Voicemail 650-799-2029*
*Secondary Address*
59-457-2 Ala Kahua Drive
Kamuela, Hawai'i 96743
[FedEx only]

I, Donald A. Way, do hereby declare:

I have been retained as an expert by Hayes Scott Bonino Ellingson & McLay, LLP, counsel to Hartford Casualty Insurance Company, to render opinions with respect to the following issues in the matter of

> HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation, Plaintiff, v. FIREMAN'S FUND INSURANCE COMPANY, a California Corporation; BURNS & WILCOX INSURANCE SERVICES, INC., a California Corporation; and DOES 1 to 50, Defendants.
>
> UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION, CASE NO.: 3:15-CV-02592-SI.

I am qualified to provide the requested opinions based upon my knowledge, skill, experience, training, and education as reflected in Exhibit A attached hereto and incorporated by reference.

Also attached and incorporated by reference as Exhibit B is a list of those cases in which I have testified as an expert within the past four years.

Also attached and incorporated by reference as Exhibit C is a copy of my retainer agreement with Hayes Scott Bonino Ellingson & McLay, LLP, which discloses my charges.

The materials provided for my review to date include those listed on my document log, attached and incorporated by reference as Exhibit D. I may rely upon any listed documents in summary or in support of my opinions at trial, including use as exhibits.

1

My opinions also are based upon the sum and total of my experience, including in addition to my over 40 years' professional experience as an insurance underwriter, agent, and broker and my over 30 years' experience as president and then chief executive officer of an insurance agency and brokerage, the other qualifications listed on my CV:

> Over 30 years' professional litigation experience consulting for attorneys and others in the areas of property casualty insurance underwriting, broker/agent standard of care, broker/agent qualification, mechanics of the insurance transaction, insurance availability, relationships and responsibilities of insurance entities, insurance agency and brokerage management, insurance custom and practice, and related areas.
>
> Presentations to agents and brokers on behalf of industry trade associations and insurance agent and broker errors and omissions insurers on insurance coverage, broker/agent standard of care, custom and practice, mechanics of transacting, agency and brokerage management, industry custom and practice, and related topics.
>
> Acquisition and review of insurance publications, manuals, training guides, text books, policies, court cases, laws and regulations, and other materials over the length of my career.
>
> Participation as both student and also as teacher in local, regional, and national insurance seminars, technical study groups, classes, and meetings of other kinds throughout my career.

The experience and materials enumerated above and in the attached exhibits form the basis for my opinions. Most important in that experience is my over 40 years as an insurance underwriter and broker/agent, over 30 of which is as both a producer and also as a manager of insurance producers and other agency and brokerage staff, selling and servicing thousands of insurance policies for hundreds of insurance companies and thousands of insureds and, in the course of which, I have hired, trained, and supervised over 100 other licensed broker/agents.

As a working insurance broker and agent, I have not published any books or contributed to any publications in the last ten years.

In addition to having been retained hundreds of times as an expert, I have qualified to testify as an expert in various federal and state courts over 50 times, and I never have been disqualified as an expert.

### Assignment.

My assignment is to examine the documents provided and, using my professional knowledge and experience, evaluate in insurance industry custom and practice the performance of the Defendant Agents and Brokers in the placing of the two Fireman's Fund Insurance Company policies referenced below.

My testimony will include the insurance licensees' performance relative to the appropriate standards of care, their respective roles and responsibilities, and their

2

qualifications for the activities undertaken. I also will explain the mechanics of how transactions such as those examined here are conducted in usual industry custom and practice as well as testifying to the general availability of insurance products to insure against the risks inherent in the ownership of multiple residences held for rental, purchased, and sold.

### Background and Relationships of the Parties.

- Paul and Susan Owhadi ("Owhadi") were the first Named Insureds on both Fireman's Fund Insurance Company ("Fireman's") policies, the Prestige Home Premier Policy # NZA 335 54 62 ("Home Policy") and the Prestige Excess Liability Policy # NZA 242 90 23 ("Excess Policy") (together, "The Policies.") [Note: although her name does not appear on the initial Declarations page of the Home Policy, Susan shares Paul's status as a result of "Definitions, 'A.'"]
- Herndon Partners LLC ("Herndon") was named an Insured by an Additional Insured endorsement on the Home Policy for the residence at 31522 Broad Beach Road, Malibu, CA 90265 but was not named on the Excess Policy [The Policies; Deposition Lynn Hadfield, 6/29/16, 187:11-16.] Herndon was a sole member LLC owned by Owhadi [Deposition Mosen O'Hadi, 5/8/16, 59: 22-24.]
- Mosen O'Hadi ("O'Hadi") was Owhadi's retail broker for The Policies [ibid, 50:13-20; 33:14-17.] O'Hadi also was Paul Owhadi's brother [ibid, 73:14-19.]
- Burns & Wilcox Insurance Services, Inc. ("B&W") was the wholesale intermediary broker in-between O'Hadi and Fireman's [ibid, 21;12-23:7.] B&W also was an appointed agent of Fireman's [Declaration pages of The Policies; California Department of Insurance website.]
- Fireman's was the California admitted insurer issuing The Policies.
- Subject Property: Residence at 31522 Broad Beach Road, Malibu, CA 90265 ("The Premises.")
- The loss arose from the fatal electrocution of an electrician working at The Premises on 9/14/09 and the resulting lawsuit against Herndon [Fresno County Superior Court, Case No. 10CECG03837] ("The Underlying.")
- Fireman's responded by first defending Herndon under the Home Policy, but later denying coverage under The Policies ("The Denial(s)") [e.g., FF001628] and seeking rescission [Fireman's MSJ dated 5/12/16.]

### The Policies.
- Fireman's Home Policy # NZA 335 54 62
    - Named Insured: Owhadi
    - Additional Insured: Herndon
    - Term: 10/29/08-10/29/09
    - Personal Liability Limit: $300,000
    - Location: The Premises
- Fireman's Excess Policy # NZA 242 90 23
    - Named Insured: Owhadi
    - Term: 10/2/08-10/2/09
    - Personal Liability Limit: $5,000,000 x/s $300,000

3

- Locations:11 (18 by endorsement) residences
- By endorsement to Fresno primary residence policy

**Opinions.**
My opinions are based on standard industry custom and practice and the resulting standard of care. I do not, as a non-lawyer, presume to offer legal opinions regarding the relevant statutes and regulations.

1. I reaffirm the facts and opinions stated in my Declaration of May 26, 2016. I incorporate fully by reference those statements in this report.
2. With respect to the lack of concurrency in the naming of the Insureds under The Policies, it is axiomatic that the Insureds named in Excess policies match those named in the underlying Primary policies, which they did not in The Policies. This was an error for which O'Hadi, B&W, and Fireman's all share responsibility. This error also was committed by the same insurance parties with respect to Owhadi's Prestige Auto Insurance Policy # VZA 1259 05 65 A [OHADI 000043-70], which named two additional Insureds not named on the Excess Policy, Barcelona Housing Partners, LP and JMC International LLC, the application for which spelled out that, "All the vehicles are registered under his company [sic] name" [BW000019-23.]
3. With respect to the "business pursuits" exclusion, at the time of purchase of The Premises it was intended to be a vacation home for Owhadi [O'Hadi, ibid, 52:1-53:12.] That is not a "business activity" [Hadfield, ibid, 99:3-16.] Nor would be later deciding to try to sell it. Interests which own multiple residences including rentals, such as Owhadi and various entities he controlled, routinely engage in the purchase and sale of such properties. Nor does holding title in the name of a family trust or sole member LLC somehow convert the home into "business property" or a "business pursuit." The Excess Policy clearly spells out that permitted "incidental rental" (an exception to the "business activities" exclusion) includes, "any rental situation covered by an unendorsed personal homeowners or personal liability policy that qualifies as 'required underlying insurance.'" Following industry custom and practice, I have explained this to clients many times over my nearly 50-year career.
4. With respect to the "rental property" exclusion, my opinions are as expressed above in Opinion 3.
5. With respect to the qualifications of the licensees involved, all appear to have had the appropriate certifications from the California Department of Insurance. O'Hadi was a licensed broker/agent. B&W was also, as well as being an appointed agent of Fireman's. Fireman's was an admitted insurer. Fireman's had extensive experience with accounts such as Owhadi's, as did B&W. O'Hadi lacked any significant experience in the procurement of insurance of any kind, however. Quite normally [see Opinion 7], he went to B&W for professional assistance in completing the submission and accessing Fireman's. He testified that he was first licensed in 2008, was in insurance only part-time, and had sold only a handful of policies prior to the subject transactions [O'Hadi, ibid, 10-17-24.] The

4

professional performance of these entities in the relevant transactions is discussed in some detail below in my standard of care opinions.

6. With respect to the availability of appropriate insurance from Fireman's Fund, there was no issue. There is nothing in the files of O'Hadi, B&W, or Fireman's that would have caused any underwriting concern. Indeed, Owhadi presented an ideal candidate for the Fireman's Fund high net worth Prestige program, a significant competitor of Chubb, AIG, and others pursuing this market segment. As an active California insurance broker/agent for nearly 50 years, selling and servicing thousands of property casualty insurance policies, both personal and commercial, I know this from personal experience. For most of those years, Fireman's Fund was one of my preferred insurance markets. I placed dozens, if not hundreds, of high net worth personal insurance accounts in their Prestige program. While there is a strong argument to be made that the Excess Policy should have been issued on a commercial rather than personal form (due to the "business pursuits" nature of the operations of Herndon and other entities controlled and insured by Owhadi), that would not have affected availability. In my own experience, Fireman's individual underwriters freely passed submissions from the personal insurance underwriting units to the commercial, and vice versa.

7. With respect to the mechanics of the insurance transactions and the roles and responsibilities of the parties involved, consider a local subway train. As this is a local train and there is no express, it stops at every station along its way, starting at Station Owhadi, then to Station O'Hadi, then to Station B&W, and then finally to Station Fireman's. Its return works the same way, starting back from Station Fireman's, then stopping at Station B&W, then Station O'Hadi, and finally ending up back at Station Owhadi. In the beginning, at Station Owhadi, the applicant sends his layman's request for insurance protection (e.g., "I want lots of liability protection if someone is hurt or killed on my property.") Upon receipt of this request at Station O'Hadi, the applicant's broker translates it into the appropriate insurance format, generally termed a submission, consisting of one or more applications with whatever supporting data the broker feels will be helpful in securing a positive response. Not having direct access to Station Fireman's, the broker sends this to Station B&W. At Station B&W, the wholesale intermediary broker reviews and perhaps edits or supplements the submission before sending it to Station Fireman's. Station Fireman's receives the submission from its agent, Station B&W, and performs its underwriting review process for acceptability and rate. If Station Fireman's has questions, they are sent back along the tracks, station by station, for responses, which then are returned the same way. Assuming the submission is acceptable, Station Fireman's sends its response, generally termed a quotation or offer, back along the tracks to Station B&W. Station B&W checks the quotation against its submission and forwards it, perhaps with editing or explanatory material, to Station O'Hadi. At Station O'Hadi, the broker again checks the quotation before sending it to Station Owhadi, his client the applicant, for Station Owhadi's approval, authorization to procure, and payment or promise to pay. This then goes back again along the tracks, station by station, until it reaches Station Fireman's. Station Fireman's then issues the policy(ies) and sends it back along the tracks as before, station by station, with each station again

checking it before sending it along until it finally reaches Station Owhadi, at which station the train stops, its journeys complete. (In some cases, the insurer, Fireman's, may send the original policy directly to the policyholder/insured, Owhadi. However, it still sends the brokers', B&W and O'Hadi, copies to them for policy checking.)

8. With respect to the appropriate standards of care, any personal lines versus commercial lines form issues were resolved by the Fireman's underwriter approving personal umbrella coverage for the 10-20 properties. Any objections Fireman's presents with regard to "business pursuits" or "rental property" go back to their own underwriting decision and approval. Lynn Hadfield had the option; she elected to go with the personal form and retain the premium in her "book of business." The real problem was in the naming of Insureds. In this, O'Hadi, B&W, and Fireman's all failed the appropriate standards of care. In my nearly 50 years' experience as an insurance agent, broker, surplus line broker, underwriter, reinsurer, and expert witness I cannot recall another instance in which this very elementary standard was so egregiously mishandled. While it is obvious O'Hadi was woefully unprepared and grossly incompetent, B&W, to whom he went for help, does not have even that excuse. I would have expected much better of them. It is absolutely axiomatic that the Insureds on an excess policy match precisely the insureds on the underlying primary policies to the extent of their respective insurable interests. This was not done, and hence the problem. Herndon owned The Premises [Grant Deed, HERNDON-DEED-001-004] but was named only on the Primary Policy. Fireman's initially offered its $300,000 primary limit but denied coverage under its excess, taking the position that coverage under the excess did not apply as the defendant in the underlying action (Herndon) and the insured (Owhadi) were separate and distinct entities despite Herndon being a sole member LLC owned and controlled by Owhadi. O'Hadi believed they were one and the same [O'Hadi, ibid., 66:19 and 97:17.] His testimony is credible for an inexperienced broker [ibid, 78:6.] Indeed, the economic effect is the same. However, B&W's personal insurance specialist, Donna Bacarti [Deposition Donna Bacarti, 6/14/16, 14:9], and Fireman's personal lines underwriter, Lynn Hadfield, certainly knew, or should have known, the difference. Their failures to correct this error are inexplicable. They had multiple opportunities to name Insureds correctly, and to use different forms if required by Fireman's underwriting, as the submissions, quotations, endorsements and policies went back and forth between them [Hadfield, ibid, 101:17-102:4.] Particularly telling testimony was given by B&W's personal lines specialist, Donna Bacarti [see generally deposition Donna Bacarti 6/14/16, 127:21-136:3.] Her testimony emphasized two points with which I concur. First, the only possible reason for naming Herndon on the Home Policy was because they had an insurable ownership interest [ibid, 127:21-130:15.] That being the case, as in fact it was [Grant Deed cited above], they also had an insurable interest insofar as that property's listing on the Excess Policy was concerned. Why Herndon was named on one and not the other only can be ascribed to errors on the parts of the licensees in the transactions, O'Hadi, B&W, and Fireman's. Second, if Herndon was doing business, that alone would make it inappropriate to use a personal lines

6

form [Bacarti, ibid, 134:7-17; 134:21-136:3] [Hadfield, ibid, 66:12-67:3] as coverage might be deemed not to apply, as Fireman's later decided [see Denial cited above] [Hadfield, ibid, 177:14-178:3.] Further, despite claiming coverage under the Excess Policy was illusory, as Fireman's would not include an LLC as an Insured under the Excess Policy [ibid, 187:13-17], Fireman's did make an Excess Policy premium charge for The Premises exactly as it did for every other property [ibid, 132:3-5.] In conclusion, Herndon found itself facing a huge monetary judgment without insurance due to the professional errors of O'Hadi, B&W, and Fireman's.

**Remarks.**

To a reasonable degree of professional certainty, my opinions are as stated above.

I have been advised that I may be provided with additional materials and that I may be asked to review additional documents or transcripts of deposition and trial testimony, including depositions that are either open or yet to be scheduled and reports and depositions of other experts, or other documents so that I may incorporate my review of them into my testimony at trial. I reserve the right for addition to, as well as amendment or deletion of, the opinions expressed above as additional discovery is provided.

Respectfully submitted on **10 July 2016**

/s/ Donald A. Way

---

Donald A. Way, CPCU, CLU, ARM
Atherton, California

7