# Exhibit Y

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN FRANCISCO DIVISION

 4                            ---oOo---

 5   HARTFORD CASUALTY INSURANCE COMPANY,
     an Indiana Corporation,
 6
              Plaintiff,
 7
     vs.                                     No. 3:15CV-02592SI
 8
     FIREMAN'S FUND INSURANCE COMPANY, a
 9   California Corporation' BURNS &
     WILCOX INSURANCE SERVICES, INC., a
10   California Corporation; and DOES
     1 to 50,
11
              Defendants.
12   _____/

13

14

15                   DEPOSITION OF DONALD WAY

16

17

18

19              Taken before NICOLE HATLER

20                     CSR No. 13730

21                    September 16, 2016

22

23

24

25
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 3 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                                Page 2

```
 1                        I N D E X

 2                                                    PAGE

 3    EXAMINATION BY MR. BRUGGEMANN                    5

 4    EXAMINATION BY MR. BATCHMAN                     64, 102

 5    EXAMINATION BY MR. KASTAN                       86

 6

 7

 8                       E X H I B I T S

 9                                                    PAGE

10    DEFENDANTS'

11    Exhibit 65   Deposition notice                  11

12    Exhibit 66   Deed                               22

13    Exhibit 67   Mr. Way's file                     102

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 4 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                              Page 3

```
 1                    DEPOSITION OF DONALD WAY

 2

 3

 4          BE IT REMEMBERED, that pursuant to Notice, and on

 5    the 16th day of September 2016, commencing at the hour of

 6    9:58 a.m., in the offices of Wolfe & Wyman LLP, 2175

 7    California Street, Suite 415, Walnut Creek, CA 94596,

 8    before me, NICOLE HATLER, a Certified Shorthand Reporter,

 9    State of California, personally appeared DONALD WAY,

10    produced as a witness in said action, and being by me

11    first duly sworn, was thereupon examined as a witness in

12    said cause.

13                              ---oOo---

14    APPEARANCES

15    For the Plaintiff:

16           JOSHUA N. KASTAN
             Hayes, Scott, Bonino, Ellingson & McLay
17           203 Redwood Shores Parkway, Suite 480
             Redwood City, CA 94065
18           (650) 486-2891
             Jkastan@hayesscott.com
19
      For the Defendant Burns & Wilcox:
20
             L. SCOTT BRUGGEMANN
21           Wolfe & Wyman LLP
             980 9th Street, Suite 2350
22           Sacramento, CA 95814-2716
             (916) 912-4700
23           Sbruggemann@wolfewyman.com

24

25
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 5 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                                   Page 4

```
 1    For the Cross-Defendant Mosen O'Hadi:

 2              BRET BATCHMAN
                Hansen, Kohls, Sommer & Jacob LLP
 3              1520 Eureka Road, Suite 100
                Roseville, CA 95661
 4              (916) 781-2550
                Bbatchman@hansenkohls.com
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 6 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                            Page 50

```
 1   But could he have?  Certainly.
 2        Q.  In the -- the custom and practice in the
 3   industry that you've been testifying, would it be
 4   permissible to sell him that policy if it didn't provide
 5   whatever the standard level of coverage was considered to
 6   be?
 7            MR. KASTAN:  Vague and ambiguous as to,
 8   "standard level of coverage."  I don't know what you mean
 9   by that, Scott.
10            MR. BRUGGEMAN:  Well, he's testified that you
11   have to have some level of coverage commensurate with the
12   value of the property and --
13            MR. KASTAN:  So why don't you rephrase your
14   question in a way that makes sense?
15            MR. BRUGGEMAN:  No.  I think it does.  We'll let
16   him have a shot at answering.
17            MR. KASTAN:  Then I'll object as to form, and I
18   don't understand the question.  It's unintelligible.
19            THE WITNESS:  I did it again.  Please, can I
20   have the question again?
21   BY MR. BRUGGEMAN:
22        Q.  I'll restate it.  What is the -- what, in your
23   opinion as an agent of 50-plus years or roughly 50
24   years --
25        A.  Yeah.  Don't --
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 7 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                               Page 51

1      Q.   -- would have been the appropriate coverage for
2   the Broad Beach property at the time Herndon Partners,
3   LLC, applied for the coverage we've been referring to as
4   the primary policy on the Broad Beach property?
5      A.   Yeah.  And that's interesting because it was
6   actually Herndon, to be technical about it, not Paul, who
7   initially applied and then they get mixed together, of
8   course.  I think it's well-established that barring a
9   voluntary undertaking or a holding out or a promise to do
10  detailed appraisals or to do extra work beyond what's in
11  custom and practice expected of a retail or insurance
12  agent or broker to meet the standard of care, that
13  there's no obligation on that retail agent or broker to
14  specify an amount of coverage.  I think that's
15  well-established.  I think we all agree on that.
16           However, as I mentioned, there can be red flags.
17  If you have a home on the beach in Malibu which you are
18  insuring, as I recall for, I want to say a million-five,
19  something like that, say, the basic building fire
20  insurance, for example, and you also own four vehicles
21  including a Porsche and three other expensive cars --
22  none of which I own -- and you also own 10 or 20
23  additional residences and you're also a successful real
24  estate developer and to have a limit of liability
25  insurance on that beach property, which is obviously to

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 8 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                                    Page 52

1   some extent an attractive nuisance, it's a significant
2   exposure, of $300,000 is ridiculous; and standard of care
3   does require that Mosen O'Hadi would go back to Herndon
4   or whomever and say, Look, you know, we need to make sure
5   you have more than $300,000 of liability insurance.
6           Now, if Herndon and Paul Owhadi come back and
7   say, We just talked to our lawyers, and we just did this
8   and that and we want $300,000 and that's all we're going
9   to pay for it, go buy it for me, okay, then Mosen's off
10  the hook.  He raised the red flag, waived it up there and
11  said, Hey, guys, this doesn't make any sense, and the guy
12  comes back and says, Well, I think it does.  I've done
13  all the research, considered the options, the
14  alternatives, it's what I want.  If you won't sell it to
15  me, I'll go buy it from someone else.  Okay.
16          Now, there might be an extreme case in which
17  then what the broker should do is say, Go buy it from
18  somebody else.  A former state supreme court justice in
19  California refused to carry more than minimum limits of
20  financial responsibility on her personal automobile
21  insurance policy.  Chief justice of the California
22  Supreme Court.  She's driving around with a 15, 30, and
23  5.  You know what I mean?  And the poor State Farm agent
24  who wrote that policy would have his lawyer write this
25  three-page disclaimer to her for signature every year.

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 9 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016
Page 53

```
 1   And I kept saying, Why don't you just tell her to go
 2   someplace else?  He said, I'm not going to tell the chief
 3   justice of the California Supreme Court to get out of my
 4   office.
 5            I mean, okay.  So you can have -- obviously
 6   that's a weird unique situation, and you can have such
 7   situations.  And if you do, then you just have to be
 8   mature and professional and consider the ramifications as
 9   to how you deal with it.  But if there is an obvious red
10   flag, something that just doesn't make sense -- and I'm
11   not saying you want to insure the house for a
12   million-five, and you think it should be insured for two
13   million.  That's not a red flag, just a difference in
14   valuation.
15            But if something is obviously crazy, then
16   whoever participates in the processing and the
17   underwriting and perhaps even the issuing of that
18   contract, that insurance contract, has a responsibility
19   to say, Wait, it doesn't make any sense.  We need an
20   explanation before we can proceed.
21       Q.  All right.
22            MR. KASTAN:  Let's take a little break I have to
23   go use the restroom.
24            THE WITNESS:  Is this a good time --
25            MR. BRUGGEMAN:  Off the record.
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 10 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016
Page 57

```
 1    BY MR. BRUGGEMAN:
 2        Q.  All right.  Is this still your opinion?
 3        A.  Yes.
 4        Q.  All right.  And I'm -- I'm trying to restate so
 5    I understand, and tell me if I'm -- I'm going in the
 6    wrong direction.  Is it your opinion that the excess
 7    policy should have included every entity which had
 8    insurable interest in any property covered by the excess
 9    policy?
10        A.  Yes.
11        Q.  You state that there's a strong argument to be
12    made that the excess policy should have been on a
13    commercial rather than personal form.  Is this an opinion
14    you still hold?
15        A.  Yes.  You'll notice I did not draw out a firm
16    conclusion.  I just said that a strong argument can be
17    made that all would have been better served had the
18    excess been written on a commercial form.
19        Q.  You -- your report discusses that it is
20    axiomatic that the insureds on an excess policy match
21    precisely the insureds on the underlying primary policies
22    to the extent of the respected insurable interests.  Who
23    were the insureds on the excess policy?
24        A.  I believe --
25            MR. KASTAN:  I'm sorry.  Calls for a legal
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 11 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                               Page 83

```
 1        Q.  Okay.  Does a broker have an obligation to go
 2   over all of the exclusions within a given policy with a
 3   prospective insured?
 4        A.  No.
 5        Q.  Okay.  And so, when does that obligation ensue?
 6        A.  That is fact intensive.  If the policyholder
 7   asks for a line-by-line review, then you better do it.
 8   Okay?  Either that or go pick and find a new broker or
 9   he'll go find a new broker.  In some degree, it depends
10   upon the sophistication in the insurance business of --
11   of the buyer.  If it's John and Mary Smith and Paul and
12   Susan Owhadi, it's one thing; if it's the risk management
13   department for General Motors Corporation, that's
14   something very different.  But then -- and I think most
15   importantly, it depends upon the nature and the
16   likelihood of applicability of the exclusion.
17            So if you sell homeowner's insurance in
18   California, you'd better disclose that earthquake and
19   flood are not covered.  If you sell homeowner's insurance
20   in Hawaii, you'd better disclose that volcanic eruptions
21   and hurricanes are not covered.  Yes, you can buy special
22   insurance, but they're not covered in the basic policies.
23   And if you're insuring a bar and it's got a liquor
24   liability exclusion in the policy, oops.  So really all
25   you've got is premises liability.  You'd better disclose
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 12 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016
Page 84

```
 1   that.  So if it's -- if it's relevant, you've got an
 2   aviation exclusion, typically -- well, if you happen to
 3   know the guy owns an airplane, you've got to talk about
 4   that.  But going through each and every exclusion, no.
 5   You could be there all day.  But exclusions that may be
 6   relevant.
 7              For instance, a rental properties exclusion for
 8   somebody who owns 20 houses, you -- yeah, you've got to
 9   talk about that.
10        Q.    Is there any scholarly article or treatise that
11   you're aware of that says, Broker, this is when you have
12   that obligation to go over the exclusions, and this is
13   when you don't?
14        A.    I haven't looked for any.  I can't tell you
15   there aren't.  Maybe Bob Anderson's book, maybe in some
16   of the publications from IRMI, I-R-M-I, International
17   Risk, International Institute of Dallas, Texas, or some
18   of the other books I have sitting on my bookshelves --
19   Couch or some of the others.  I don't know.  It's just so
20   generally accepted from my 50 years of experience and
21   custom and practice, I didn't feel it was necessary to go
22   pull published citations.
23              One problem with those, of course, is that no
24   two authors precisely agree.  We, unfortunately perhaps,
25   do not have a definitive text on this subject that all of
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 13 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                                Page 85

```
 1   us experts agree upon.  So I have been in cases where I
 2   come up with one citation, and the expert on the other
 3   side comes up with a different citation and somebody else
 4   comes up with a third citation.  They're all from highly
 5   reputable professional sources, and they all disagree.
 6   That doesn't really help anybody.  So I prefer just going
 7   from the basic custom and practice that is actually my
 8   expertise.
 9           Obviously, I did it for 50 years, and I've been
10   challenged on it to explain why it's the custom and
11   practice.  Does it make common sense to a judge or jury
12   as to why this is, in fact, the custom and practice and
13   why not doing it is a violation of the standard of care.
14       Q.  All right.
15       A.  Long answer to a short question.  Sorry.
16       Q.  That's okay.
17           MR. BATCHMAN:  I don't think I have any further
18   questions.
19           THE WITNESS:  Okay.
20           MR. KASTAN:  I have a couple just quick
21   clarification questions, Don.
22           THE WITNESS:  When attorneys say, I have just a
23   couple --
24           MR. KASTAN:  I really do.  Trust me.  I don't
25   have the energy to ask you any more than a couple.
```

Case 3:15-cv-02592-SI   Document 148-25   Filed 10/25/16   Page 14 of 14

Hartford Casualty Insurance Company vs. Fireman's Fund Insurance Company, et al.
Donald Way on 09/16/2016                                                  Page 108

```
 1                    REPORTER'S CERTIFICATE
 2
 3
 4          I, NICOLE HATLER, a Shorthand Reporter, State of
 5   California, do hereby certify:
 6          That DONALD WAY, in the foregoing deposition
 7   named, was present and by me sworn as a witness in the
 8   above-entitled action at the time and place therein
 9   specified;
10          That said deposition was taken before me at said
11   time and place, and was taken down in shorthand by me, a
12   Certified Shorthand Reporter of the State of California,
13   and was thereafter transcribed into typewriting, and that
14   the foregoing transcript constitutes a full, true and
15   correct report of said deposition and of the proceedings
16   that took place;
17          IN WITNESS WHEREOF, I have hereunder subscribed
18   my hand this 21st day of September 2016.
19              Nicole Hatler
20              _____
                NICOLE HATLER, CSR NO. 13730
21              State of California
22
23
24
25
```