1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, a California Corporation; BURNS & WILCOX INSURANCE SERVICES, INC., a California Corporation; and DOES 1 to 50,<br><br>Defendants.<br><br>――――――――――――――――――<br><br>BURNS & WILCOX INSURANCE SERVICES, a California Corporation,<br><br>Cross-Complainant,<br><br>v.<br><br>MALIBU PACIFIC INSURANCE AGENCY, INC., and ROES 1-100, inclusive,<br><br>Cross-Defendants<br>―――――――――――― | CASE NO.:  3:15-cv-02592-SI<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>**Pretrial Conf. Date:**   Nov. 1, 2016<br>**Time:**                          3:30 p.m.<br>**Courtroom:**              1, 17th Floor<br>**Judge:**                      Hon. Susan Illston |

///

///

///

---

1

2585933.1

**1.      PRETRIAL CONFERENCE STATEMENT**

   **a.  The Action**

      (1)      **Substance of the Action**.

         Plaintiff's Position:[1]

This is an action for professional negligence by Plaintiff Hartford Casualty Insurance Company ("Hartford"), as assignee of Herndon Partners, LLC ("Herndon"), against Burns & Wilcox Insurance Services, Inc. ("Burns & Wilcox").  Hartford contends that Burns & Wilcox was negligent in the procurement and placement of two Fireman's Fund Insurance Company ("Fireman's Fund") insurance policies and in so doing, failed to exercise due care as a professional insurance broker when it assisted cross-defendant Mosen O'Hadi ("O'Hadi") in, *inter alia*, completing insurance applications, amending an insurance policy, and representing that liability coverage existed under said policies when it, in fact, did not.

Hartford contends that that Burns & Wilcox and O'Hadi, along with Fireman's Fund, acted together in placing the two Fireman's Fund policies and that:

- Burns & Wilcox held itself out as having specialized knowledge and expertise regarding the placement of liability insurance;

- O'Hadi was inexperienced and incapable of understanding significant insurance brokerage, placement, and coverage issues far below the standard of care;

- Herndon sought liability coverage in connection with and arising from its exclusive ownership of a property located at 31522 Broad Beach Road in Malibu, California ("Malibu Property");

- Due to Burns & Wilcox's and O'Hadi's significant brokerage and underwriting errors, omissions, and negligence (including but not limited to placing policies with business activities exclusions and failing to ensure concurrency between insureds among the Malibu and

---

[1] All of Hartford's previously-filed pleadings, including its Trial Brief concurrently filed herewith, are incorporated herein by reference.

Excess Contracts[2]), Herndon did not obtain the liability coverage it
requested;

- Burns & Wilcox and Mosen O'Hadi knew that Herndon owned the
  Malibu Property, but did not take Herndon's ownership and sole
  insurable interest into account in applying for and placing the policies,
  such as ensuring that it was an insured on the Excess Contract – or
  even making a request to Fireman's Fund that Herndon be added as an
  insured to the Excess Contract; and

- As a result of said negligence, Herndon was ultimately exposed to a
  multi-million dollar wrongful death judgment arising from a loss that
  occurred at the Malibu Property.

The only issues adjudicated in the underlying Wrongful Death Action were Herndon's liability for the death of the decedent.  Any alleged misrepresentation or coverage issues were not adjudicated, presented, or decided by the jury or the court in that underlying case.  As a result, there is no evidence of any "misrepresentation" by or on behalf of Herndon in applying for the Fireman's Fund policies.

To the extent that Defendants wish to introduce evidence of any settlement discussions made in the underlying matter, including any statutory offers of judgment and Hartford's then-position regarding those discussions, such matters are entirely irrelevant to the instant broker negligence action.  Moreover, Defendants' arguments in that regard are speculative, given that the existence of the Excess Contract was not known to the underlying plaintiffs at the time of that offer and thus the "policy limits" demand of $3.3 million (taking into account the combined liability limits of the Fireman's Fund Malibu Contract and Hartford policies – but not the Fireman's Fund Excess Contract) would likely have been different if the Excess Contract had been identified.  Hartford's conduct in defending and indemnifying Herndon against the underlying lawsuit is not in

---

[2] The parties have agreed to refer to the insurance policy for the Malibu Property as the "Malibu Contract" and the umbrella policy as the "Excess Contract" for purposes of this Joint Statement.  The parties reserve their rights, subject to approval of the court, to refer to each of these documents in a manner which best suits their individual theories of the case.  For example, Hartford wishes to refer to these documents as the "Primary Policy" and the "Excess Policy," while Burns & Wilcox desires to refer to these documents as the "Malibu Policy" and the "Excess Endorsement."

2585933.1

1   any way at issue in this action: a broker negligence case.

2                  Defendants' Position:

3          HARTFORD CASUALTY INSURANCE COMPANY ("Hartford") seeks to impose

4   liability for professional negligence upon BURNS & WILCOX INSURANCE SERVICES, INC.

5   ("Burns & Wilcox") which allegedly resulted in liability in the amount of $4.5 million.  Hartford,

6   the successor in interest to the claims of HERNDON PARTNERS, LLC ("Herndon"), argues

7   Burns & Wilcox should have procured a policy of insurance other than the one which Herndon

8   specifically requested through its licensed insurance agent, as well as a second policy for which

9   Herndon submitted no application.  Hartford has no direct claim against Mosen O'Hadi ("Mosen"

10  or "O'Hadi") and O'Hadi asserts that he is not responsible for the acts or omissions of Burns &

11  Wilcox.  Burns & Wilcox filed a cross-complaint against Mosen O'Hadi ("Mosen" or "O'Hadi")

12  for equitable indemnity and declaratory relief.  Burns & Wilcox maintains that should it be found

13  liable in this matter, it is due to the acts or omissions of O'Hadi.

14         Burns & Wilcox was not subject to a heightened duty of care as to Herndon, and did not

15  owe any duty beyond that which Mosen O'Hadi might have owed to Herndon.  Hartford claims

16  that Burns & Wilcox was subject to a duty to investigate the accuracy of its insurance application

17  for the property located at 31522 Broad Beach Road, Malibu CA ("Malibu Property"), determine

18  whether Herndon truthfully represented the facts of the application, consider the type of insurance

19  Herndon likely needed based upon the facts as discovered by Burns & Wilcox[3], then procure the

20  insurance Herndon might need even if inconsistent with the insurance Herndon actually requested.

21         Hartford also asserts Burns & Wilcox was under a duty to procure an "umbrella" or

22  "excess" policy of insurance, though Herndon never submitted an application.  Hartford claims

23  Herndon should have been covered under an Excess Contract which named PAUL OWHADI

24  ("Owhadi") and his wife as the insureds, and was founded upon a policy written for the Owhadi's

25  personal residence in Fresno.  Herndon Partners, opined Hartford's expert, was an insured by

26  definition under the Owhadi's Excess Contract.

27         Burns & Wilcox counters that it procured a residential homeowner's policy of insurance on

28

---

[3] As distinct from those listed on the application.

2585933.1

1    the Malibu property exactly as requested by Herndon's licensed insurance agent, Mosen O'Hadi.

2    Moreover, Burns & Wilcox confirmed with Mosen the accuracy of the application and the type of

3    insurance requested.  The application tendered to Burns & Wilcox contained material

4    misrepresentations.  This Court already noted the facts established in the Wrongful Death Action

5    included that Herndon bought the Malibu Property to be renovated and flipped, and that the

6    Decedent, Mr. Moreno, was an employee of Herndon.  Liability, argues Burns & Wilcox, does not

7    flow if it obtained the policy requested.

8        Mosen O'Hadi alleges the residential homeowner's application for the Malibu property

9    accurately reflects the information provided to him by Owhadi and Herndon.  Mosen argues he

10   cannot be liable to indemnify Burns & Wilcox because he accurately prepared the insurance

11   application based upon information provided to him by Hartford's predecessor in interest.  As a

12   result, Mosen argues that Hartford, through Herndon, is responsible for any losses related to

13   FIREMAN'S FUND INSURANCE COMPANY's ("FFIC") declination of coverage under the

14   residential homeowner's policy ("Malibu Contract") insuring the Malibu Property.  Mosen

15   maintains he was not negligent in the procurement of the Malibu Contract.

16       In response to Hartford's claim Burns & Wilcox failed to obtain the proper umbrella

17   coverage, Burns & Wilcox counters that Herndon never submitted an application for umbrella

18   coverage.  Burns & Wilcox argues it cannot be liable for failing to obtain a policy of insurance

19   never requested.  Paul Owhadi requested umbrella coverage as an endorsement to his Fresno

20   residence insurance policy prior to Herndon's acquisition of the Malibu property.  Because

21   Umbrella coverage existed as an endorsement to Owhadi's home policy before Herndon ever had

22   coverage for the Malibu residence, Herndon could not have obtained an umbrella endorsement

23   because the underlying policy did not exist.  Additionally, Burns & Wilcox contends that FFIC

24   would not have permitted Herndon Partners to be listed as either a named or additional insured on

25   the umbrella policy.

26       Both Burns & Wilcox and Mosen contend Hartford is responsible for damages sustained

27   by Herndon.  When given the opportunity to settle the underlying case within its policy limits,

28   Hartford chose to take the matter to trial instead.  This decision ultimately lead to a verdict of

1  almost $9 million (after remittitur), far in excess of the $3.3 million demand made by plaintiffs in

2  the Underlying Action.

3       Burns & Wilcox contends that it was not negligent.

4       Burns & Wilcox has also filed a cross-complaint against O'Hadi for implied indemnity and

5  declaratory relief.  Specifically, Burns & Wilcox contends that O'Hadi was professionally

6  negligent in placing the two subject insurance policies and that O'Hadi's negligence was the

7  proximate cause of Herndon's injuries and damages.

8       O'Hadi contends that he was not negligent.

9       (2)  **Relief Prayed**.

10       Hartford, as Herndon's assignee, seeks $4.5 million in economic damages, plus interest

11  that has accrued since December 2014 when the underlying wrongful death action was resolved.

12       Plaintiff's Position:

13       Of the $7.5 million that was accepted by the plaintiffs to settle the Wrongful Death Action

14  in December 2014, $4.5 million should have been covered under the Fireman's Fund liability

15  policies.  Had Burns & Wilcox and O'Hadi not been negligent in applying for and placing the

16  Fireman's Fund liability policies, Herndon would not have been exposed to damages in the

17  Wrongful Death Action for which it had no liability insurance.

18       Defendants' Position:

19       The $4.5 million in damages claimed represents the money which Hartford contends FFIC

20  would have paid if Burns & Wilcox and Mosen had obtained the policies of insurance Hartford

21  now contends Herndon requested.  Burns & Wilcox contends Hartford is unable to demonstrate

22  any injury due to Burns & Wilcox's acts or omissions, or that the policies which Hartford asserts

23  Herndon should have received would have provided coverage.

24       Defendants maintain that Herndon sustained no damages as a result of the acts or

25  omissions of defendants and that Hartford, as assignee of Herndon, shall collect nothing.

26    **b.  The Factual Basis of the Action**

27       (1)  **Undisputed Facts**.

28          a.   The Underlying Action.

2585933.1

1    This action arises from the death of Francisco Martinez Moreno ("Decedent") and a

2 subsequent wrongful death action ("Wrongful Death Action"), Fresno County Superior Court,

3 Case No. 10CECG03837.

4    Decedent was electrocuted while working at a property located at 31522 Broad Beach

5 Road in Malibu, California ("Malibu Property") on or about September 14, 2009.

6    Herndon is a California Limited Liability Company originally registered with the

7 California Secretary of State on or about April 9, 2003.  Paul Owhadi ("Owhadi") is and was at all

8 relevant times the sole member and manager of Herndon.

9    In the Wrongful Death Action, a jury found Herndon solely liable for Decedent's death on

10 or about May 30, 2013, resulting in a final judgment of $8,818,101.00 entered against Herndon on

11 or about September 11, 2013.

12    Although it initially agreed to share in Herndon's defense against the Wrongful Death

13 Action, Fireman's Fund ultimately took the position that neither of its two subject policies

14 provided Herndon with any coverage for defense or indemnity of the Wrongful Death Action.

15            b.     The Hartford Policies.

16    Hartford issued liability policy number 51 SBA IN1634 DX, effective March 19, 2009 to

17 March 1, 2010 to Herndon as an additional named insured by endorsement.  Said policy contained

18 both primary and excess coverage parts, providing a primary liability limit of $2 million and an

19 excess liability limit of $1 million.

20            c.     The Fireman's Fund Policies.

21    Fireman's Fund issued primary homeowner's policy number NZA 335 54 62, effective

22 October 29, 2008 to October 29, 2009 ("Malibu Contract").  "Paul Owhadi c/o Herndon Partners

23 LLC" was the named insured on the Malibu Contract, and Herndon was an additional named

24 insured by endorsement on the Malibu Contract.  The Malibu Contract contained a liability limit

25 of $300,000.

26    Fireman's Fund issued an excess liability endorsement to policy number NZA 242 90 23,

27 effective October 2, 2008 to October 2, 2009 ("Excess Contract").  Paul Owhadi and Susan

28 Owhadi were named insureds on the Excess Contract.  The Excess Contract contained a liability

2585933.1

1    limit of $5 million.

2              d.      Applications for and Placement of the Fireman's Fund Policies.

3        *Excess Contract.*  The Excess Contract was initially placed in August 2008 and

4    subsequently amended in the months thereafter.  By November 2008, after Herndon purchased the

5    Malibu Property, up to eighteen properties were supposedly listed on the Excess Contract,

6    including the Malibu Property.  The parties disagree as to the other events regarding the placement

7    of and coverage under the Excess Contract.

8        *Malibu Contract.*  In October 2008, Herndon submitted an application for the Malibu

9    Contract to Fireman's Fund through O'Hadi and Burns & Wilcox.  The parties disagree as to

10   events that led to the submission of the application for the Malibu Contract and the placement of

11   the Malibu Contract.

12           (2)     **Disputed Factual Issues**.

13              (a)  The parties wish to supplement the undisputed facts recited above as follows:

14                        Plaintiff's Position:

15                        *The Underlying Action.*

16       Herndon obtained sole and exclusive title to, and the only insurable interest in, the Malibu

17   Property on or about October 11, 2008.  Herndon was formed by Owhadi to hold title to property

18   such as the Malibu Property and has never had any employees.

19       While the Wrongful Death Action was on appeal, effective December 9, 2014, Herndon

20   and Hartford settled the Wrongful Death Action with the underlying plaintiffs for $7.5 million and

21   paid this amount to the underlying plaintiffs pursuant to the settlement agreement in that matter.

22                        *Applications for and Placement of the Fireman's Fund Policies.*

23       *Excess Contract.*  Donna Bacarti, on behalf of Burns & Wilcox, represented via e-mail on

24   November 17, 2008 that the Malibu Property as well as other properties were listed on the Excess

25   Contract.

26       *Malibu Contract.*  As originally drafted, this application sought property and liability

27   coverage for the Malibu Property and explicitly requested that Herndon be listed as the named

28   insured.  The underlying trial did not concern or adjudicate any coverage issues or questions as to

                                        8

2585933.1

1   the applications for the insurance policies; the underlying trial resolved only the question as to

2   whether Herndon was liable for the decedent's death.

Defendants' Position:

*The Underlying Action.*

5   Burns & Wilcox contends that Judge Illston found in ruling on FFIC's Motion for

6   Summary Judgment that, in the Underlying Action, Herndon was a real estate and development

7   company which was held 100% negligent for the death of its employee, Mr. Moreno, and that

8   Herndon bought the Malibu Property not as a vacation home, but as a property to be renovated and

9   flipped.

10   Fireman's Fund tendered its $300,000 liability limit under the Malibu Contract prior to

11   trial.

12   Paul Owhadi utilized the services of Mosen O'Hadi, a licensed insurance broker, to

13   prepare an application and apply for insurance related to the Malibu Property. Mosen represented

14   both Owhadi and Herndon's interests.  Mosen provided a residential homeowner's policy

15   application for the Malibu Property to Burns & Wilcox's personal lines manager, Donna M.

16   Bacarti ("Bacarti").

17   Mosen was told by Owhadi and Herndon, and subsequently advised Bacarti, that Herndon

18   conducted no business, consisted only of Owhadi, and was created for tax purposes. Mosen

19   advised Bacarti the Malibu Property was a vacation home.  Bacarti contends she instructed Mosen

20   that an insurance policy could only be issued to the owners of a limited liability company, with the

21   LLC listed as an "also insured," and then only as long as it met certain requirements. The

22   requirements were that the LLC was in the name of an individual or individuals, was created only

23   for tax purposes, did not engage in business and had no employees.

*The Fireman's Fund Policies.*

25   The Malibu Contract application stated the Malibu Property was intended for seasonal

26   usage and would be owner occupied.  The application indicated that no business would be

27   conducted at the Malibu Property.  The application was signed by Mosen O'Hadi and Paul

28   Owhadi.

2585933.1

1    The Excess Contract was founded upon a homeowner's policy for Paul and Susan

2    Owhadi's Fresno residence.

3

4    *Applications for and Placement of the Fireman's Fund Policies.*

5    **Excess Contract.**  The Excess Contract application was signed by both Mosen O'Hadi and

6    Paul Owhadi.  By November 2008, the Excess Contract provided excess liability coverage for

7    Paul and Susan Owhadi for up to eighteen properties, including the Malibu Property.  The parties

8    disagree as to the other events regarding the placement of and coverage under the Excess Contract.

9    **Malibu Contract.**  As originally drafted, this application sought coverage for the Malibu

10   Property and requested that Herndon be listed as the named insured.  Burns & Wilcox claims it

11   informed Mosen that FFIC would not list Herndon Partners as a named insured, but would accept

12   it as an additional insured under certain conditions.  Burns & Wilcox contends that the

13   representations made by Herndon on the Malibu Contract application are contrary to findings in

14   the Underlying Action, as characterized in the Order granting summary judgment to Fireman's

15   Fund Insurance Company.  The parties disagree as to events that led to the submission of the

16   application for the Malibu Contract and the placement of the Malibu Contract.

17           (b) The parties request that the following factual disputes be resolved at trial:

18           Plaintiff's Position:

19           a.      Whether Burns & Wilcox held itself out as having specialized

20                   knowledge and expertise in the placement of insurance;

21           b.      Whether O'Hadi was inexperienced in the placement of insurance,

22                   which at least in part led to the alleged harm;

23           c.      Whether O'Hadi's submission of the application for the Malibu

24                   Contract contained missing information and raised red flags for

25                   Burns & Wilcox, with whom O'Hadi was working in placing the

26                   Malibu Contract;

27           d.      Whether Burns & Wilcox voluntarily and actively assisted O'Hadi

28                   throughout the application process for the Malibu Contract;

2585933.1

e.    Whether O'Hadi, Burns & Wilcox, and Fireman's Fund – acting together – altered the application for the Malibu Contract without Herndon or Owhadi's knowledge or consent before the Malibu Contract was placed;

f.    Whether Burns & Wilcox understood or attempted to investigate who owned the properties listed on the application for the Excess Contract, and which were ultimately identified as exposures on the Excess Contract once it was issued and subsequently amended;

g.    Whether O'Hadi and Burns & Wilcox should have requested or ensured that Herndon be listed as either a named insured or additional insured by endorsement on the Excess Contract; and

h.    Whether Donna Bacarti, on behalf of Burns & Wilcox, misrepresented the properties covered by and "listed on" the Excess Contract as of November 2008.

<u>Defendants' Position:</u>

a.    Whether California, at the time the Malibu Contract application was submitted, recognized a duty on the part of wholesale insurance brokers to investigate insurance applications, determine whether the information located thereupon was accurate, determine the insurance needs of the prospective insured, then place the insurance which the wholesale broker felt appropriate;

b.    Whether Burns & Wilcox held itself out in 2008 to Herndon Partners, LLC as having specialized knowledge and expertise in the placement of insurance;

c.    Whether Donna Bacarti represented herself to Herndon Partners or Mosen as a "personal lines specialist;"

d.   Whether Burns & Wilcox owed a heightened duty to Herndon Partners, LLC such that it was required to exercise more than the duty to use reasonable care, diligence, and judgment in procuring the insurance Herndon requested;

e.   Whether Mosen was inexperienced in the placement of insurance, which at least in part led to the alleged harm;

f.   Whether Herndon's submission of the application for the Malibu Contract materially misrepresented the information contained therein in violation of California's Insurance Code;

g.   Whether Burns & Wilcox altered the Malibu Contract application submitted by Mosen on behalf of Herndon Partners;

h.   Whether Burns & Wilcox altered the named insured on the Malibu Contract application from "Herndon Partners, LLC" to "Paul Owhadi c/o Herndon Partners, LLC;"

i.   Whether Burns & Wilcox voluntarily and actively assisted Mosen throughout the application process for the Malibu Contract, and if so, did this create a duty of care for Burns & Wilcox which exceeded the duty owed by Mosen to Herndon;

j.   Whether Mosen was made aware Herndon Partners could not be listed as the named insured under the Malibu Contract prior to the start date of the policy;

k.   Whether Burns & Wilcox was required by any recognized duty to investigate who owned the properties listed on the application for Paul and Susan Owhadi's Excess Contract;

2585933.1

l.  Whether Burns & Wilcox's decision to rely upon the representation of the Owhadis they personally owned the properties listed on the Excess Contract application was the cause in fact of Herndon's alleged injury;

m.  Whether Mosen O'Hadi and/or Burns & Wilcox were subject to a duty requiring they ask FFIC that Herndon be listed as either a named insured or additional insured by endorsement on the Excess Contract;

n.  Whether Herndon Partners could have been named as an insured or additional insured on the Excess Contract;

o.  Whether Donna Bacarti, on behalf of Burns & Wilcox, misrepresented the properties covered by and "listed on" the Excess Contract as of November 2008;

p.  Whether Burns & Wilcox should have discovered that commercial coverage was needed for the Malibu Property;

q.  Whether Burns & Wilcox represented that Herndon was covered under the Excess Contract attached to Paul Owhadi's Fresno residence;

r.  Whether the Excess Contract "sat on top of" the Malibu Contract;

s.  Whether Burns & Wilcox made misrepresentations to Herndon Partners;

t.  Whether Burns & Wilcox made misrepresentations to Mosen;

2585933.1

u. Whether the type of coverage placed under the FFIC Malibu Contract was the type requested by Herndon and/or Paul Owhadi;

v. Whether Herndon submitted an application for excess coverage to Burns & Wilcox for transmittal to FFIC;

w. Whether Herndon was insured under the Excess Contract;

x. Whether the verdict against Herndon Partners, LLC in the underlying wrongful death case was due to Hartford's earlier refusal to settle within its policy limits; and

y. Whether Herndon sustained damages based upon the acts or omissions of Burns & Wilcox and/or Mosen O'Hadi.

(3) **Agreed Statement**.

The parties agree that the following statement may be presented to the jury:

*Herndon Partners LLC was liable for $7.5 million in damages as a result of a judgment taken against it in a previous wrongful death action. Fireman's Fund refused to provide any coverage for Herndon Partners LLC in connection with that underlying lawsuit under two insurance policies it had issued.*

(4) **Stipulations**.

The parties have not entered into any stipulations for the purposes of trial at the time of the filing of this document.

c. **Disputed Legal Issues**

(1) **Points of Law**.

Plaintiff's Position:

a. Whether Burns & Wilcox and/or Mosen O'Hadi were negligent in placing the Fireman's Fund policies;

2585933.1

b.  Whether Burns & Wilcox held itself out as having knowledge and expertise in placing the Fireman's Fund policies;

c.  Whether Burns & Wilcox misrepresented what the Excess Contract covered;

d.  Whether Burns & Wilcox and/or Mosen O'Hadi failed to place the liability insurance that Herndon requested and/or that Burns & Wilcox and/or Mosen O'Hadi should have known were appropriate based on the information provided to them in the applications;

e.  Whether Burns & Wilcox is liable based on Mosen O'Hadi's inexperience.

*Authority:* (*Saunders v. Carris*, 224 Cal.App.3d 905, 908-909 (1990); *Fitzpatrick v. Hayes*, 57 Cal.App.4th 916, 927 (1997); *Desai v. Farmers Ins. Exh.*, 47 Cal.App.4th 1110, 1119-1120 (1996); *Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marking Corp.*, 12 Cal.App.4th 1249, 1258 (1993); *DiPasqua v. California etc. Life Ins. Co.*, 106 Cal.App.2d 281, 282-284 (1951); *Williams v. California*, 34 Cal.3d 18, 23 (1983) [citing Rest.2d Torts, § 323]; *Cooper v. State Farm Mut. Auto. Ins. Co.*, 177 Cal.App.4th 876, 892 fn. 3 (2009).)

Defendants' Position:

a.  Whether Burns & Wilcox and/or Mosen O'Hadi owed a duty to Herndon Partners to investigate representations made on the Malibu Contract insurance application, including whether properties, including rental properties, were purportedly owned by Paul Owhadi, consider whether the coverage requested was appropriate, and procure a policy of insurance which met the needs to Herndon Partners even if it differed from the policy requested by Herndon Partners.

*Authority*: *San Diego Assemblers, Inc. v. Work Comp for Less Insurance Services, Inc.* (2013) 220 Cal.App.4th 1363, 1370; *Wallman v. Suddock* (2011) 200 Cal. App. 4th

2585933.1

1288, 1309-10; *Hydro-Mill Company v. Hayward, Tilton & Rolapp Ins. Assoc.* (2004) 115 Cal.App.4[th] 1145, 1153; *Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4[th] 457,476; *Robinson v. Occidental Life Ins. Co.* (1955) 131 Cal.App.2d 581, 585; *American Way Cellular, Inc. v. Travelers Property Casualty Company of America* (2013) 216 Cal.App.4[th] 1040, 1051.

b.   Whether Burns & Wilcox, as a wholesale insurance broker, and/or Mosen O'Hadi as retail broker, had an affirmative duty to procure coverage different from that requested by Herndon Partners.

*Authority*: *American Way Cellular, Inc. v. Travelers Property Casualty Company of America* (2013) 216 Cal.App.4[th] 1040, 1051; Ray v. Valley Forge Ins. Co. (1999) 77 Cal.App.4[th] 1039, 1049; *Fitzpatrick v.* Hayes (1997) 57 Cal.App.4[th] 916, 927; *Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954.

c.   Whether Herndon Partners acted inequitable, unfairly, or deceitfully towards Burns & Wilcox and/or Mosen O'Hadi, and as a result the doctrine of unclean hands applies to prevent recovery by Herndon Partners.

*Authority*: *POM Wonderful LLC v. Coca Cola Company*, 166 F. Supp.3d 1085, 1092 (C.D. CA 2016); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9CA 1985); *Ample Bright Development, Ltd. v. Comis Intern.*, 913 F.Supp.2d 925, 940 (C.D. CA 2012); *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4[th] 820, 846.

d.   Whether Herndon Partners violated California's Insurance Code by providing misleading, inaccurate, false, and/or untruthful information on the Malibu Contract insurance application, and by its failure to communicate in good faith.

2585933.1

1

2

3

4

5

6

7

8

9

10

11

12

*Authority*: California Insurance Code §330- "Neglect to communicate that which a party knows, and ought to communicate, is concealment." California Insurance Code §331- "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." California Insurance Code §332- "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." California Insurance Code §338- "An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind." *Robinson v. Occidental Life Ins. Co. of Cal*. (1955) 131 Cal App.2d 581, 585.

13

14

15

16

    e.  Whether the acts of Hartford, Fireman's Fund and/or Burns & Wilcox were superseding negligent acts to the alleged acts of Mosen O'Hadi;

17

18

19

*Authority:* CACI 432; *Paverdu v. Niagara Machine and Tool Works* (1987) 189 Cal.App.3d 858, 863*; Maupin v. Widling* (1987) 182 Cal.App.3d 568, 578; *Martinez v. Vintage Petroleum* (1998) 68 Cal.App.4th 695, 702.

20

21

    f.  Whether Herndon Partners' negligence is responsible, in whole or in part, for its alleged injury.

22

23

24

    g.  Whether the negligence of any third party is responsible, in whole or in part, for Herndon Partners' alleged injury.

25

26

27

    h.  Whether Herndon Partners' failure to accept a settlement demand in the amount of its policy limits is the cause of its injuries.

28

2585933.1

i.  Whether Hartford's failure to tender its $3 million in policy

limits is the cause of Herndon's injuries;

j.  Whether Herndon Partners was considered a "named insured"

under the definitions found in the Excess Contract.

k.  Whether Herndon Partners' request for coverage under the

Excess Contract would have been denied under the business

activities exclusion if Herndon had been considered a "named

insured."

(2)  **Proposed Conclusions of Law**.

Not applicable, as the parties have requested a jury trial.

**d.  Trial Preparation**

(1)  **Witnesses to be Called**.

Please see the parties' Joint Proposed Witness List, filed concurrently herewith.

(2)  **Exhibits, Schedules and Summaries**.

Please see the parties' Joint Proposed Exhibit List, filed concurrently herewith.

(3)  **Estimate of Trial Time**.

The parties anticipate a total of 7 court days for trial as follows: (1) 3-4 court days for

Hartford's case-in-chief; (2) 2 court days for Burns & Wilcox's case-in-chief; and (3) 1-2 court

days for Mosen O'Hadi's case-in-chief, subject to which witnesses are called prior to his case-in-

chief.

(4)  **Use of Discovery Responses**.

Please see the parties' respective deposition designations, filed concurrently herewith.

(5)  **Further Discovery or Motions**.

The parties do not anticipate any further pretrial discovery.

The following Motions in Limine will be filed concurrently herewith:

- *By Hartford:*

  o  Motion to exclude any reference or argument at trial regarding any alleged

"misrepresentation" by Herndon and/or Owhadi ("Owhadi") in applying for the Fireman's Fund policies; and

- o Motion to exclude any reference or argument at trial that the Fireman's Fund policies at issue provided any coverage for Herndon's liability for the death of the decedent or Herndon's liability arising from the underlying lawsuit.

- *By Burns & Wilcox:*
  - o Motion to exclude screen shots of a website purporting to belong to Burns & Wilcox in 2013;
  - o Motion to Exclude the Grant Deed;
  - o Motion to Exclude expert testimony offered to expand the legal duty of Burns & Wilcox and/or Mosen O'Hadi; and
  - o Motion to exclude testimony from plaintiff's underwriting expert regarding whether Burns & Wilcox and/or Mosen O'Hadi fell below the applicable standard of care in procuring policies for Paul Owhadi and/or Herndon Partners, LLC.

- *By Mosen O'Hadi:*
  - o Motion in Limine to Preclude Hartford from introducing evidence that the insurance applications contain misrepresentations.
  - o Motion in Limine to Exclude James Robertson from testifying as to broker standard of care issues.
  - o Motion in Limine to Require the parties to provide advance notice of witnesses and documents to be used at trial.
  - o Motion in Limine to Exclude any reference to Mosen O'Hadi's insurance coverage.
  - o Motion in Limine to Preclude Hartford from introducing evidence that Mosen O'Hadi had additional duties not found in the law during his representation of Paul Owhadi and Herndon Partners, LLC, including:

2585933.1

(1) the duty to investigate the ownership of the 11 to 18 properties on the Excess Contract;

(2) the duty to investigate the ownership of the properties because they are listed as rental properties;

(3) the duty to recommend coverage and coverage amounts; and

(4) the duty to disclose to insured that there is a business exclusion and to recommend alternative coverage.

**e. Trial Alternatives and Options**

(1) **Settlement Discussion**.

The parties have engaged in two formal, private mediations – first with Justice Panelli in May 2016 and more recently with Arnold Levinson in October 2016. Settlement demands and offers have been exchanged, but no settlement has yet been reached.

Hartford believes that further settlement discussions, made in good faith, may be productive. To date, however, the parties have evaluated the potential liability and damages in this case differently.

(2) **Consent to Trial Before a Magistrate Judge**.

The parties do not so consent and request a trial before a United States District Judge.

(3) **Amendments, Dismissals**.

No amendments or dismissals are anticipated at this time.

(4) **Bifurcation, Separate Trial of Issues**.

Burns & Wilcox and Mosen O'Hadi request separate argument on the issues raised by Burns & Wilcox's Crossclaim for declaratory relief. The issues raised therein are equitable in nature, and will only become relevant in the event Burns & Wilcox is found liable for professional negligence. The parties do not anticipate any additional witnesses or evidence would be required. Burns & Wilcox's other cause of action against Mosen O'Hadi for equitable indemnity will be decided by the jury.

**2. WITNESSES**

Please see the parties' Joint Witness List, filed concurrently herewith.

2585933.1

1        In addition, the Rule 26 disclosures and written reports of the parties' retained expert

2  witnesses will be filed concurrently herewith.

3  **3.      JURY INSTRUCTIONS AND VERDICT FORM.**

4        Please see the parties' Proposed Jury Instructions, filed concurrently herewith.

5        Please see the parties' Proposed Verdict Form, filed concurrently herewith.

6  **4.      FINDINGS OF FACT AND CONCLUSIONS OF LAW**

7        Not applicable, as the parties have requested a jury trial.

8

9  Dated:  October 25, 2016              HAYES SCOTT BONINO ELLINGSON & McLAY, LLP

10

11                                       By:___*/s/ Joshua N. Kastan*_____
                                              Stephen M. Hayes
                                              Joshua N. Kastan

12                                            Attorneys for Plaintiff
                                              HARTFORD CASUALTY INSURANCE CO.

13

14  Dated:  October 25, 2016             WOLFE & WYMAN, LLP

15

16                                       By:___*/s/ L. Scott Bruggemann*_____
                                              Brian H. Gunn

17                                            L. Scott Bruggemann
                                              Attorneys for Defendant

18                                            BURNS & WILCOX INSURANCE SERVICES, INC.

19  Dated:  October 25, 2016             HANSEN, KOHLS, SOMMER & JACOB, LLP

20

21                                       By:___*/s/ Bret N. Batchman*_____
                                              Christine E. Jacob

22                                            Bret N. Batchman
                                              Attorneys for Cross-Defendant

23                                            MOSEN O'HADI

24

25

26

27

28

2585933.1