United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>     v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, et al.,<br><br>        Defendants. | Case No. 15-cv-02592-SI<br><br>**ORDER GRANTING BURNS & WILCOX INSURANCE SERVICES' SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 131 |

On October 28, 2016, the Court held a hearing on defendant Burns & Wilcox Insurance Services' second motion for summary judgment. Dkt. No. 131. After careful consideration of papers submitted, the Court hereby GRANTS defendant's motion.

**BACKGROUND**

**I.    Fireman's Motion for Summary Judgment**

This case arises from a coverage dispute under two homeowner's insurance policies. The Court has previously heard motions for summary judgment by Burns & Wilcox Insurance Services ("Burns"), which the Court denied, and Fireman's Fund Insurance Company, which the Court granted. *See* Dkt. Nos. 114, 120. The Court recites some of the factual background from its August 22, 2016 Order Granting Fireman's Fund Insurance Company's Motion for Summary Judgment below:

> In 2013, a wrongful death lawsuit (the "Underlying Action") ultimately resulted in an approximately $8,800,000 judgment against Herndon Partners, LLC ("Herndon"), a corporation owned by Paul Owhadi. The lawsuit arose after Francisco Martinez Moreno was electrocuted while working as an employee of Herndon at a home located at 31522 Broad Beach Road in Malibu, California (the

"Malibu Property") in September 2009. Kastan Decl., Ex. N, May 29, 2013 letter from Fireman's to Owhadi (Dkt. No. 80-12) at 2. Only Herndon held title to the Malibu Property. *See* Owhadi Decl. (Dkt. No. 82) ¶ 6.

Prior to the wrongful death lawsuit, plaintiff Hartford Casualty Insurance Company ("Hartford") issued to Herndon a business liability policy with both primary coverage ($2,000,000 limit) and excess coverage ($1,000,000 limit). SAC, Ex. C, Hartford policies (Dkt. No. 42-3) at CP127, CP143. The Hartford policies were in effect from March 19, 2009 to March 1, 2010. *Id.* at CP143.

Defendant Fireman's Fund Insurance Company ("Fireman's") issued a primary homeowner's policy (the "Primary Policy"), listing the Malibu Property, with a $300,000 [personal liability] limit, and named "Paul Owhadi c/o Herndon Partners LLC" as the insured and "Herndon Partners LLC" as an additional insured. Hadfield Decl., Ex. A, Primary Policy (Dkt. No. 74-2) at FF000256, FF000295. The Primary Policy was in effect from October 29, 2008 to October 29, 2009. *See id.* at FF000255. Fireman's also issued an excess liability policy (the "Excess Policy") with a $5,000,000 [personal liability] limit, effective October 2, 2008 to October 2, 2009. *See* Hadfield Decl., Ex. B, excess policy (Dkt. No. 74-3) at FF000146; Kastan Decl., Ex. G, email excerpts between Burns and O'Hadi (Dkt. No. 80-7) at BW000260. The Excess Policy was a personal umbrella policy that named "Paul Owhadi [and] Susan Owhadi" as insureds. *See id.* at BW000252; Hadfield Decl., Ex. B, excess policy (Dkt. No. 74-3) at FF000146. Both the Primary Policy and Excess Policy contained exclusions for business activity, business property, and workers' compensation. *See* Hadfield Decl., Ex. A, Primary Policy (Dkt. No. 74-2) at FF000280-82; Hadfield Decl., Ex. B, Excess Policy (Dkt. No. 74-3) at FF000178-180.

Hartford provided a defense to Herndon in the wrongful death lawsuit in 2011. SAC, Ex. A, assignment agreement (Dkt. No. 42-1) at 002. Fireman's also agreed to provide a defense to Herndon, but only under its Primary Policy. *See* Kastan Decl., Ex. N, May 29, 2013 letter from Fireman's to Owhadi (Dkt. No. 80-12) at 4. Fireman's refused to provide coverage under its Excess Policy because Herndon was not a named insured. *See id.* Fireman's also cited the exclusions for business activity, business property, and workers' compensation in the Excess Policy as reasons not to provide excess coverage. *See id.* at 2. Fireman's later refused to indemnify Herndon under the Primary Policy. *See* SAC (Dkt. No. 42) ¶ 47.

In July 2013, following the judgment, Herndon, Paul Owhadi, and Susan Owhadi executed an assignment agreement with Hartford. SAC, Ex. A, assignment agreement (Dkt. 42-1) at 20. Hartford now acts as Herndon, Paul Owhadi, and Susan Owhadi's assignee for claims against Fireman's related to the Underlying Action and the two Fireman's policies. SAC, Ex. A, assignment agreement (Dkt. 42-1).

Order on Fireman's MSJ (Dkt. No. 120) at 1-3 (footnotes omitted).[1]

## II. The Insurance Applications

The application process deserves the most attention for purposes of this motion. Hartford alleges that Burns was negligent in its role as insurance agent, when Burns assisted Mosen O'Hadi ("O'Hadi") in placing Paul Owhadi's ("Owhadi's") insurance with Fireman's. Mosen O'Hadi is a licensed retail insurance broker who was working on Paul Owhadi's behalf, and is also Paul Owhadi's brother.

Owhadi asked O'Hadi to procure a personal—as opposed to commercial—homeowner's policy for the Malibu Property. Bruggemann Decl. ¶ 4, Ex. 3, excerpts of Owhadi Depo. (Dkt. No. 133-3) at 3-4; *see id.* ¶ 10, Exs. 9A, 9B, excerpts from O'Hadi Depo. (Dkt. No. 133-9) at 7, 9; *see also* Kastan Decl. ¶ 23, Ex. T, excerpts from O'Hadi Depo. (Dkt. No. 136-2) at 78. O'Hadi, on behalf of Owhadi, contacted Donna Bacarti ("Bacarti"), a personal lines manager at Burns, to place a homeowner's policy on the Malibu Property. Kastan Decl. ¶ 5, Ex. B, Primary Application submitted to Burns (Dkt. No. 136-1) at 5-9; *id.* ¶ 23, Ex. T, excerpts from O'Hadi Depo. (Dkt. No. 136-2) at 73, 76; Bruggemann Decl. ¶ 2, Ex. 1a, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 4. O'Hadi submitted to Bacarti a "Homeowner's Application" dated October 15, 2008 (the "Primary Application"). *Id.* O'Hadi submitted the application by e-mail attachment, with the note, "[Owhadi] is buying a vacation home. It is currently in escrow. It would close in ten days. . . . Please contact me with your concerns." Kastan Decl. ¶ 10, Ex. G, email correspondence between O'Hadi and Bacarti (Dkt. No. 136-1) at 38; *id.* ¶ 23, Ex. T, excerpts from O'Hadi Depo. (Dkt. No. 136-2) at 76. The Primary Application identified the named insured as "Herndon Partners LLC" and sought to insure the Malibu Property. Kastan Decl. ¶ 5, Ex. B, Primary Application submitted to Burns (Dkt. No. 136-1) at 5. The applicant's (Owhadi's) occupation was "real estate investor" and the applicant's employer was "Sierra Pacific," a real estate development company. *Id.* Noting that Herndon was the named insured

---

[1] Unless otherwise noted, the Court will use the same defined terms set forth above. The pinpoint citations throughout this order refer to the page numbers generated by ECF.

under the Personal Application (a non-commercial homeowner's insurance application), Bacarti asked O'Hadi about the LLC. *See* Kastan Decl. ¶ 24, Ex. U, excerpts from Bacarti Depo. (Dkt. No. 136-2) at 90. Bacarti informed O'Hadi that an LLC could not be the named insured under a personal policy, but could be listed as an additional insured if the LLC met certain criteria. Bruggemann Decl. ¶ 2, Ex. 1c, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 9-10; *id.*, Ex 1g, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 14. Those criteria were that the LLC was "in the name of an individual or made up of individuals," created "for tax purposes only[,]" and "does not engage in any kind of business activities or hold any employees." *Id.*, Ex. 1g, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 14. O'Hadi told Bacarti that Herndon was only in the Owhadis' name and was created for tax purposes, and that the Malibu Property was to be the Owhadis' vacation home. *Id.*; Bruggemann Decl. ¶ 2, Ex. 1d, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 12; *id.*, Ex. 1g, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 15.

Also in his capacity as insurance broker for Owhadi, O'Hadi submitted a "Personal Umbrella Application" to Bacarti (the "Excess Application") dated August 14, 2008. *See* Kastan Decl. ¶ 7, Ex. D, Excess Application submitted to Burns (Dkt. No. 136-1) at 17. The Excess Application listed "Paul & Susan Owhadi" as the named insureds, included four vehicles and several rental properties, and did not list the Malibu Property. *See id.* at 17-19. The Excess Policy, effective from October 2, 2008 to October 2, 2009, provided additional liability coverage for Paul and Susan Owhadi as an endorsement to the personal homeowner's policy on their home in Fresno. *See* Kastan Decl. ¶ 13, Ex. J, Excess Policy (Dkt. No. 136-1) at 128, 181-184; Bruggemann Decl. ¶ 2, Ex. 1f, excerpts from Bacarti Depo. (Dkt. No. 133-1) at 17. Fireman's added the Malibu Property to the properties scheduled under the Excess Policy at O'Hadi's request in or about late November, 2008. *See* Kastan Decl. ¶ 11, Ex. H, emails between O'Hadi and Burns (Dkt. No. 136-1) at 40-47. "Herndon" is not mentioned in the Excess Application or in subsequent emails modifying the scheduled properties under the policy. *See id.*; Kastan Decl. ¶ 7, Ex. D, Excess Application submitted to Burns (Dkt. No. 136-1).

Both the Primary Application and the Excess Application contained a number of questions to which Owhadi or O'Hadi answered "no." *See* Kastan Decl. ¶ 5, Ex. B, Primary Application

4

submitted to Burns (Dkt. No. 136-1) at 6, 8; Kastan Decl. ¶ 7, Ex. D, Excess Application submitted to Burns (Dkt. No. 136-1) at 20. These include whether "any farming or other business [is] conducted on premises?," whether "any real estate [is] . . . used commercially or for business purposes?," and whether "any business and/or professional activities [are] included in the primary policies?" *Id.*

When received, Bacarti sent each application to Lynn Hadfield ("Hadfield"), a personal lines underwriting specialist at Fireman's. *See* Kastan Decl. ¶ 24, Ex. U, excerpts from Bacarti Depo. (Dkt. No. 136-2) at 91. Hadfield was responsible for approval and issuance of both policies. *See id.* Hadfield made a number of notes on the Primary Application and in the underwriting file. *See* Kastan Decl. ¶ 6, Ex. C, Fireman's version of Primary Application (Dkt. No. 136-1) at 11; Bruggemann Decl. ¶ 8, Ex. 7, excerpts from Hadfield Depo. (Dkt. No. 139) at 23. Fireman's version of the primary application with these notes reflects that the named insured is "Paul Owhadi c/o Herndon Partners LLC." Kastan Decl. ¶ 6, Ex. C, Fireman's version of Primary Application (Dkt. No. 136-1) at 11. Notes on the Primary Application also state that Herndon is "made up of the insd. only for tax purposes." *Id.* Fireman's underwriting file confirms that (1) the "LLC is listed as add'l insd (made up of the insd. only for tax purposes)"; (2) that "only [the] insured makes up LLC and no business exposure — is acceptable"; and (3) that Hadfield "verified that the liab will be listed not extended due to the LLC. The LLC is made up of Paul Owhadi (the insd) only and it is not a formal corporation, just created for tax purposes." Kastan Decl. ¶ 9, Ex. F, underwriting notes (Dkt. No. 136-1) at 29-35.

Neither party presents any evidence as to how the policies, as written by Fireman's, were delivered to Owhadi, or whether he or his staff had any questions or concerns about the documents.

Fireman's allegedly discovered that Herndon was more than just a shell entity based on the Underlying Action, which established that Herndon was Moreno's employer and had been negligent in renovating the Malibu Property. Fireman's denied coverage under both policies, at least in part, on this basis.

### III. The Present Case

On June 11, 2015, Hartford, as assignee of Herndon's rights under the Fireman's policies, filed the present complaint alleging causes of action against Fireman's for: (1) indemnity; (2) contribution; (3) reformation; and (4) declaratory judgment. *See* SAC (Dkt. No. 42). Hartford also brought one claim against Defendant Burns, for professional negligence. *See id.* Burns filed a cross-complaint against O'Hadi for indemnity and declaratory relief. *See* Dkt. Nos. 17, 21.

On May 12, 2016, Fireman's moved for summary judgment. Dkt. No. 74. After multiple rounds of briefing, the Court granted Fireman's motion, rejecting Hartford's claim for reformation of the subject insurance policies. *See* Order on Fireman's MSJ (Dkt. No. 120). The Court found that there was no evidence of a unilateral mistake by Owhadi, no evidence of a mutual intention that the subject policies cover business activities, and no evidence of a mutual intention that Herndon be a named insured under the Excess Policy. *See id.* at 7-17. The Court found that "[b]ecause the originally issued Fireman's policies remain in place (with the Primary Policy containing a business activities exclusion and the Excess Policy not naming Herndon as an insured) Hartford is not entitled to recover from Fireman's pursuant to the two Fireman's policies." *Id.* at 7, 17.

Burns filed its first motion for summary judgment shortly after Fireman's. *See* Dkt. No. 76. Burns argued that Hartford's negligence claim was barred by the statute of limitations. *See id.* The Court rejected Burns's claim and denied summary judgment on the statute of limitations defense. Dkt. No. 114.

On September 12, 2016, Burns sought leave to file a second motion for summary judgment, which the Court granted. Dkt. Nos. 124, 128, 130. In its second motion for summary judgment, Burns urges the Court to dismiss Hartford's professional negligence claim, arguing, in essence, that it did not breach its duty in obtaining either the Primary Policy or Excess Policy and that, regardless, Hartford presents no evidence that any alleged breach caused Herndon's loss. *See* Dkt. Nos. 131, 138.

**IV.     The Arguments of the Parties**

Burns contends that it simply did its job by obtaining the exact insurance policies O'Hadi and Herndon requested. Burns Second MSJ (Dkt. No. 131) at 5. Burns argues that it should not be held responsible if information that O'Hadi and Herndon provided turned out to be incorrect, as it was under no duty to investigate the truthfulness or accuracy of the insurance applications. *Id.* Burns further argues that O'Hadi and Herndon never requested excess liability coverage for Herndon, but instead asked to add the Malibu Property to the Owhadis' preexisting personal liability umbrella. *See id.* Burns argues that the record contains no evidence of actionable negligence.

Hartford argues that the record contains genuine disputes of material fact with regard to its negligence claim. Opp'n to Burns Second MSJ (Dkt. No. 135) at 5. Hartford argues that Burns, through its actions, owed Herndon a "professional standard of care," which Burns breached by, for example, failing to properly investigate the Primary Application and failing to list Herndon as a named insured under the Excess Policy. *Id.* at 6. Hartford contends that because of Burns's negligence in procuring the subject insurance policies, Herndon did not have adequate coverage for the wrongful death judgment in the Underlying Action.[2] *Id.* at 5.

The Court has carefully reviewed the parties' submissions. Viewing the evidence in the light most favorable to Hartford, there is no genuine dispute of material fact regarding Burns's alleged negligence in procuring the Fireman's policies. As an agent, Burns owed a duty to exercise reasonable care, diligence, and judgment in procuring the insurance requested. The record contains insufficient evidence to present a genuine dispute of material fact as to whether Burns's performance was deficient in this regard. Accordingly, the Court GRANTS Burns's Second Motion for Summary Judgment on Hartford's negligence claim.

---

[2] The Assignment Agreement between the Owhadis, et al. and Hartford, attached as Exhibit A to Hartford's complaint, recites at paragraphs 1.21 - 1.23 that plaintiffs in the Underlying Action made a CCP section 998 offer to compromise of $3.3 million, which was rejected. Plaintiffs later reiterated the settlement demand of $3.3 million, which was also not accepted. Herndon had liability coverage of $3 million under Hartford's primary/excess commercial liability policies, and was named as additional insured on the Fireman's $300,000 homeowners personal liability policy issued to Paul Owahadi.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the nonmoving party will have the burden of proof at trial. *Id.* at 325. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

In this motion, Fireman's ultimate decision to deny coverage is not before the Court. The Court need not determine the full scope of the verdict in the Underlying Action, which found, at minimum, that Herndon was Francisco Martinez Moreno's employer when Moreno was

8

electrocuted and killed, and Herndon's negligence was a substantial factor in Moreno's death. *See* RJN, Ex. 1, trial transcript (Dkt. No. 132-1) at 4.[3] In this order, the Court must instead focus on whether and to what extent Burns, as an insurance agent, owed a duty of care to Herndon in procuring the subject insurance policies, and whether Burns's conduct fell below the applicable standard of care.

Hartford alleges that Burns, a licensed insurance broker-agent, was negligent in procuring both the Primary Policy and Excess Policy from Fireman's. *See* Second Am. Compl. (Dkt. No. 42) ¶¶ 115-122. To establish negligence, a plaintiff must prove: (1) that the defendant had a legal duty of care towards the plaintiff; (2) the defendant's breach of that duty; (3) that the plaintiff suffered injury as a proximate result of the breach; and (4) damage to the plaintiff. *Wallman v. Suddock*, 200 Cal. App. 4th 1288, 1308 (2011) (citing *Jones v. Grewe*, 189 Cal. App. 3rd 950, 954 (1987)).

## I.  Duty

As an initial matter, the Court must determine the contours of Burns's duty of care to Herndon in procuring the subject insurance policies. The parties agree that Burns owed Herndon a duty of care in procuring the Fireman's policies, but they dispute the extent of Burns's duty. "Whether a duty of care exists is a question of law for the court." *Wallman*, 200 Cal. App. 4th at 1309 (citing *Jones*, 189 Cal. App. 3rd at 954); *see also Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 929 (1997) (citations omitted) ("[T]he responsibility of defining duty in a tort case reposes with the court.").

"Ordinarily, an insurance agent assumes only those duties normally found in any agency

---

[3] The Court GRANTS Burns's unopposed request for judicial notice of a trial transcript from the Underlying Action. Federal Rule of Evidence 201 permits a court to take judicial notice of facts "not subject to reasonable dispute." Fed. R. Evid. 201. Further, a court can "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Ranchiera Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal citations omitted); *see also United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (holding that a court can take judicial notice "of its own records in other cases, as well as the records of an inferior court in other cases.").

relationship." *Wallman*, 200 Cal. App. 4th at 1309 (citations and internal quotation marks omitted). "At minimum, an insurance agent has a duty to use reasonable care, diligence, and judgment in procuring the insurance requested by its client." *Kurtz, Richards, Wilson & Co., Inc. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249, 1257 (1993); *see also Wallman*, 200 Cal. App. 4th at 1309 ("It is undisputed that an insurance agent's failure to procure agreed-upon coverage is actionable negligence."). In certain cases, an agent may assume a special duty, for instance, where "the agent misrepresents the nature, extent or scope of the coverage being offered or provided," "there is a request or inquiry by the insured for a particular type or extent of coverage," or "the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured." *Fitzpatrick*, 57 Cal. App. 4th at 927 (citations omitted); *see also Kurtz, Richards, Wilson & Co.*, 12 Cal. App. 4th at 1257 ("An agent may assume additional duties by an agreement or by holding himself or herself out as having specific expertise.").

Burns argues that it owed Herndon an ordinary duty "to use reasonable care, diligence and judgment in procuring the insurance requested by its client." Burns Second MSJ (Dkt. No. 131) at 12 (emphasis omitted). Hartford argues that Burns owed an elevated duty of care in procuring the policies in question. Opp'n to Burns Second MSJ (Dkt. No. 135) at 18. First, Hartford argues that Burns owed an elevated professional duty because Burns "holds itself out" as an expert in the types of insurance Herndon sought. Second, Hartford argues that Burns owed an elevated duty of care because Burns "misrepresented the nature, extent or scope of the coverage provided under the Excess Policy[.]" *Id.* at 7-8, 24. Finally, Hartford argues that by voluntarily undertaking to assist O'Hadi in completing the insurance applications, Burns assumed an enhanced duty to exercise due care in procuring the insurance. *Id.* at 10-11, 19-20. The Court addresses Hartford's arguments in turn.

### A. Holding Out

Hartford argues that Burns owed an elevated professional duty to Herndon because Burns "holds itself out" as an expert in the types of insurance Herndon sought. Opp'n to Burns Second

1    MSJ (Dkt. No. 135) at 7-8. Burns contends that Hartford's evidence on this point is inadequate,
2    and that there is no evidence that Herndon ever relied on Burns's alleged expertise. Reply (Dkt.
3    No. 138) at 4. The Court agrees with Burns.
4           Hartford has presented some evidence that Burns holds itself out as an expert in
5    umbrella/excess coverage. *See* Kastan Decl. ¶ 4, Ex. A, screenshots from Burns website (Dkt.
6    No. 136-1) at 2-3. Hartford provides screenshots from Burns's website—captured in October,
7    2013—displaying marketing statements such as: "When you need to meet your clients'
8    commercial umbrella and excess needs, Burns & Wilcox can help[,]" and "Partner with Burns &
9    Wilcox, and you're partnering with an international network of experts with the ability to cover
10   virtually any hard-to-place risk." *Id.* These isolated, generalized statements are not the type of
11   "holding out" for which California law imposes an elevated duty of care on insurance agents. *See*
12   *Wallman*, 200 Cal. App. 4th at 1312. Moreover, Hartford's screenshots from 2013 are not helpful
13   in demonstrating how Burns presented itself in 2008 when O'Hadi requested the insurance
14   policies in question, or how O'Hadi might have relied on any such "holding out" in selecting
15   Burns to place the insurance. Hartford's evidence fails to demonstrate a genuine dispute of
16   material fact as to whether Burns held itself out to either Owhadi or O'Hadi as an expert in the
17   type of coverage at issue, or that O'Hadi chose Burns to place the insurance as a result of any
18   such purported expertise.

20        **B.**    **Misrepresenting Coverage**
21          Hartford argues that Burns owed an elevated duty of care because Burns "misrepresented
22   the nature, extent or scope of the coverage provided under the Excess Policy." Opp'n to Burns
23   Second MSJ (Dkt. No. 135) at 24. Hartford's argument on this point is short and mentions only a
24   single alleged misrepresentation. *See id.* Hartford contends that Burns misrepresented coverage
25   when Burns "represented that eighteen total properties, including the Malibu Property, were listed
26   on the Excess Policy." *Id.* The record contains no evidence that this representation was untrue.
27   The evidence demonstrates that the Malibu Property was, in fact, scheduled under the Owhadis'
28   Excess Policy. Hartford does not explain how this amounts to a misrepresentation of the "nature,

11

1    extent or scope of coverage" under the Excess Policy. Hartford offers no evidence that Burns
2    represented that Herndon was a named insured under the Excess Policy. The Court finds that
3    there is no genuine dispute of material fact as to Burns's alleged misrepresentation of the nature,
4    extent or scope of coverage under the Excess Policy.

### C.  Volunteer Liability

Hartford argues that, under the theory of volunteer liability, "[o]nce Burns & Wilcox voluntarily aided Mosen O'Hadi, the applicable standard of care required it to adequately investigate the Primary and Excess Applications before procuring or amending the Fireman's Fund Policies." Opp'n to Burns Second MSJ (Dkt. No. 135) at 19. Hartford argues that by recognizing the insurance applications were deficient and allegedly helping O'Hadi to properly complete them, Burns "increased the risk to Herndon" in placing the insurance policies. *Id.*

Neither case Hartford cites is persuasive. *See Williams v. State of California*, 34 Cal. 3d 18, 27 (1983) (finding plaintiff failed to state a claim against police for negligence during car accident investigation); *Cooper v. State Farm Mut. Auto. Ins. Co.*, 177 Cal. App. 4th 876, 879, 892 & n.3 (2009) (finding insurer owed duty to preserve defective car tire, after telling insured it would, under either "[the] contract principle of promissory estoppel or [the] tort theory of a voluntary assumption of a duty[,]" without meaningful analysis). *Williams* and *Cooper* are inapplicable here. Hartford does not explain to the Court why volunteer liability should apply to the non-physical harm here, where an insurance agent allegedly undertakes to assist an inexperienced retail broker in completing applications for homeowner's and liability insurance. *See* Restatement (Second) of Torts § 323 (emphasis added) ("One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical* harm resulting from his failure to exercise reasonable care . . . .").

Because Hartford's arguments for an elevated standard of care are without merit, Burns's duty of care in this case is that of an insurance agent's general "duty to use reasonable care, diligence, and judgment in procuring the insurance requested . . . ." *Kurtz, Richards, Wilson &*

*Co.*, 12 Cal. App. 4th at 1257. This general duty does not include a duty to investigate information provided in an insurance application. *See Jones*, 189 Cal. App. 3d at 954. Accordingly, the Court will now examine the remainder of Hartford's negligence claim in light of the general duty owed by an agent to an insured.

## II.     Breach and Causation

As set forth above, the Court finds that Burns owed a duty to "use reasonable care, diligence, and judgment in procuring the insurance requested by [the] insured." *Jones*, 189 Cal. App. 3d at 954. Based on this duty, Burns argues that its conduct did not fall below the appropriate standard of care at any point. *See* Burns Second MSJ (Dkt. No. 131). Hartford counters by alleging a number of breaches on Burns's part. With respect to the Primary Policy, Hartford alleges, in essence, that Burns breached its duty of care in four ways: by (1) naming Herndon as an "additional insured" rather than as the named insured under the Primary Policy; (2) failing to investigate the information provided by Owhadi and O'Hadi on the Primary Application; (3) failing to advise Owhadi or O'Hadi as to the business activities exclusion contained in the Primary Policy; and (4) writing in coverage limits on the Primary Application. Opp'n to Burns Second MSJ (Dkt. No. 135) at 20-23. With respect to the Excess Policy, Hartford alleges that Burns breached its duty of care in two ways: by (1) failing to name Herndon as an insured; and (2) procuring a policy that contained a business activities exclusion. *Id.* at 27-28.

"It is undisputed that an insurance agent's failure to procure agreed-upon coverage is actionable negligence." *Wallman*, 200 Cal. App. 4th at 1309 (citations and internal quotation marks omitted). "[I]n the ordinary case, the onus is . . . squarely on the insured to inform the agent of the insurance he requires." *Id.*; *see Fitzpatrick*, 57 Cal. App. 4th at 927 ("[A]n insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage.").

Additionally, if a plaintiff establishes that the defendant breached its duty of care, the plaintiff must also show that the defendant's breach caused the alleged injury. "Just as a plaintiff in a legal malpractice case must establish that it would have prevailed in the underlying action but

13

1  for the defendant's professional negligence," an insured can recover on a cause of action for
2  professional negligence only if it can show that, but for the agent's negligence, it "would have
3  had at least some coverage" for the underlying claim. *Roger H. Proulx & Co. v. Crest-Liners,*
4  *Inc.*, 98 Cal. App. 4th 182, 195 (2002).

5  The Court will address each of Hartford's six alleged breaches in turn. In doing so, the
6  Court will determine if the record demonstrates a genuine dispute of material fact as to whether
7  any of Burns's actions amounted to a failure to use reasonable care, diligence, and judgment in
8  procuring the insurance requested.

### A. Primary Policy

#### (1) Herndon as additional insured

Hartford argues that Burns failed to exercise reasonable care, diligence, and judgment because Burns placed a Primary Policy listing Herndon as an "additional insured" rather than as the "named insured." Opp'n to Burns Second MSJ (Dkt. No. 135) at 23. Hartford argues that this distinction affects a number of rights under an insurance policy. *Id.* The record demonstrates that O'Hadi asked Burns to place a personal homeowner's policy for the Malibu Property, which was to be the Owhadis' vacation home. O'Hadi submitted an application initially listing Herndon Partners, LLC as the named insured, and indicating there would be no business conducted on the premises. The record demonstrates that Bacarti and O'Hadi discussed the LLC and under what circumstances an LLC could be listed on a personal policy such as that O'Hadi requested. Moreover, the record contains no evidence of Owhadi or his staff having voiced any objections to the policy once issued by Fireman's. The Court finds that there is no evidence that Burns failed to exercise reasonable care in this respect.

The Court also notes that Hartford advances no argument as to how this alleged breach caused its injury. The record demonstrates that Fireman's denied coverage under the Primary Policy on the basis that the Primary Policy contained an exclusion for business activities. Hartford has shown no dispute of material fact as to whether Herndon's status as an "additional insured" rather than as "named insured" operated to prevent coverage under the policy.

14

### (**2**) **Failure to investigate**

Hartford argues that Burns breached its duty by failing to "investigat[e] the accuracy of information provided to it" on the Primary Application. Opp'n to Burns Second MSJ (Dkt. No. 135) at 20-21. Hartford argues that Burns should have investigated the information in the application and questioned the adequacy of the coverage being applied for. *Id.* Burns contends that California does not recognize such a duty to investigate statements made by an insured. Reply (Dkt. No. 138) at 7-8.

"[A]n insurer does not have the duty to investigate the insured's statements made in an insurance application and to verify the accuracy of the representations. . . . Rather, it is the insured's duty to divulge fully all he or she knows." *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal. App. 4th 1040, 1051 (2013) (citations omitted); *see also Jones*, 189 Cal. App. 3d at 954 (citations and internal quotation marks omitted) ("An agent may point out to [the insured] the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so. . . .").

Hartford argues, nevertheless, that Burns was negligent by not investigating Owhadi's and O'Hadi's claims regarding Herndon and the Malibu Property because Bacarti had doubts as to O'Hadi's experience and competence. Opp'n to Burns Second MSJ (Dkt. No. 135) at 10-11, 19-21. In support of its argument, Hartford cites *DiPasqua v. Cal. W. States Life Ins. Co*, 106 Cal. App. 2d 281, 282-84 (1951), a case addressing the impact of an insured's false statements in a life insurance application. In *DiPasqua*, the insurer sought to void a policy where the insured made material false statements in his application, but the insurer knew these statements were false prior to issuing the policy. *Id.* at 284-85. The Court of Appeal held that an insurer cannot void coverage based on an insured's false responses in an application where the insurer first "conducts an independent investigation [that] reveals the falsity of [the insured's] answers in material respects." *Id.* at 284-85. The Court finds that this case does not support Hartford's negligence claim.

While Hartford points to some evidence showing that Bacarti doubted O'Hadi's

1  experience and competence, O'Hadi filled out the application and subsequently provided answers
2  to Bacarti's follow-up questions. O'Hadi maintained that Herndon had no business exposure.
3  Bacarti testified at her deposition that she felt she could trust the information she received.
4  Bruggemann Decl. ¶ 5, Ex. 4, excerpts of Bacarti Depo. (Dkt. No. 139) at 15. Hartford offers no
5  evidence that Burns knew, or even suspected, these statements were false. Burns owed no special
6  duty that might have necessitated an investigation into the representations made in the Primary
7  Application. Accordingly, the Court finds that there is no genuine dispute of material fact as to
8  whether Burns breached its duty of care in this regard.

### (3) Failure to explain business activities exclusion

Hartford argues that Burns breached its duty of care by placing a Primary Policy that contained a business activities exclusion and did not "me[e]t the reasonable expectations of Paul Owhadi and Herndon." Opp'n to Burns Second MSJ (Dkt. No. 135) at 22. Hartford argues that Burns should have advised O'Hadi of the Primary Policy's coverage exclusion for business activities, because it knew Herndon, a limited liability company that purportedly conducted no business activities, was insured under the policy. In support of its argument, Hartford points to one section of the deposition of Donald Way, Hartford's expert in this case. *See id.* at 21 (citing Kastan Decl. ¶ 26, Ex. W, excerpts of Way Depo. (Dkt. No. 136-2) at 131, 89:4-21). Way states, in this isolated section of his deposition, that Burns did not meet Owhadi's reasonable expectations for liability coverage. *Id.* The deposition testimony Hartford cites says nothing about the business activities exclusion. *See id.*

Notably, Way's expert reports opine that, at the time of purchase, Owhadi had no intention of conducting business at the Malibu Property, that the home was to be Owhadi's vacation home, and that later choosing to sell the property would not be a "business activity." Kastan Decl. ¶ 17, Ex. N, Way Expert Report (Dkt. No. 136-2) at 5; *id.* ¶ 18, Ex. O, Way Rebuttal Report (Dkt. No. 136-2) at 23-24. Hartford now suggests that Burns's failure to explain one provision of an insurance policy, which by its own expert's opinion was inapplicable and irrelevant to Herndon at the time, amounts to a breach of its duty of care. Indeed, Hartford dedicates at least a full page of

16

its Opposition to arguing that Herndon was not engaged in business activities or using the Malibu Property for business purposes. Opp'n to Burns Second MSJ (Dkt. No. 135) at 15-16. Hartford is correct in stating that this question "is not before [the] Court," but its statement that Herndon's activities are "not inconsistent with any information on the Primary and Excess Applications" is telling. *Id.* at 15.

The record demonstrates that Burns was instructed to obtain a personal—as opposed to commercial—insurance policy on the Malibu Property. O'Hadi told Burns that Herndon did not have any business exposure. Hartford may not simultaneously argue that the business exclusion does not apply to Herndon, and that Burns was somehow negligent for procuring a policy containing the exclusion or for failing to inform Herndon thereof. The insurance agent's duty of care does not extend this far. Moreover, Fireman's wrote and issued the policy, not Burns. Burns simply placed the application with Fireman's for the personal homeowner's policy that O'Hadi requested. Hartford points to no evidence suggesting otherwise. Accordingly, the Court finds that there is no genuine dispute of material fact as to whether Burns breached its duty of care in this regard.

### (4) Altering primary application

Hartford argues that Burns breached its duty by altering the Primary Application. Opp'n to Burns Second MSJ (Dkt. No. 135) at 22. First, Hartford argues that Burns breached its duty by modifying the named insured on the application from "Herndon Partners LLC" to "Paul Owhadi c/o Herndon Partners LLC." *Id.* Hartford's claim as to Burns changing the named insured on the Primary Application is without merit. Lynn Hadfield of Fireman's, the Primary Policy underwriter, testified that this change was hers. *Id.* ¶ 8, Ex. 7, excerpts from Hadfield Depo. (Dkt. No. 139) at 23. Hartford presents no evidence to the contrary.

Second, Hartford argues that Burns breached its duty by writing in coverage limits on the application. *Id.* The record demonstrates that O'Hadi submitted the Primary Application with coverage limits left blank. *See* Kastan Decl. ¶ 10, Ex. G, email correspondence between O'Hadi and Burns (Dkt. No. 136-1 at 37). Bacarti testified that "rather than sending in a blank

17

application to the carrier," she or her assistant must have filled in the limits, that O'Hadi notified them "that the dwelling limit was $2 million[,]" and that they filled in other coverages based on that amount. Bruggemann Decl. ¶ 6, Ex. 5, excerpts from Bacarti Depo. (Dkt. No. 139) at 17. Based on these modifications to the application, and in the absence of evidence to the contrary, there is no genuine dispute of material fact as to whether Burns breached its duty of care in this regard.

Moreover, Hartford advances no argument as to how Burns's modifications to the Primary Application caused Fireman's to deny coverage. Fireman's decision to deny coverage under the Primary Policy had nothing to do with the policy's coverage limits. The issue was not that coverage limits were insufficient; Fireman's denied coverage because the claim arose from Herndon's business activities at the Malibu Property, activities not covered under the policy. Accordingly, the Court finds that there is no evidence of causation.

### B.  Excess Policy

#### (1)  Herndon not named as insured

Hartford argues that Burns breached its duty of care by failing to name Herndon as an insured under the Excess Policy, an excess personal liability endorsement to Paul and Susan Owhadi's Fresno homeowner's policy. The record contains no evidence of either Owhadi or O'Hadi asking for Herndon to be named under the Excess Policy. The record does contain evidence showing that O'Hadi asked for the Malibu Property to be included under the Owhadis' personal umbrella, a schedule listing some seventeen properties. Hartford argues that Burns should have known to add Herndon under the Excess Policy when it asked Fireman's to include the Malibu Property because Herndon was an additional insured under the Malibu homeowner's policy. Opp'n to Burns Second MSJ (Dkt. No. 135) at 23, 26-27. Hartford further argues that "[i]t is axiomatic that the insureds named in the Excess Policy match those named in the underlying primary policies." *Id.* at 26. Hartford may be correct, but the Excess Policy at issue was attached to a primary homeowner's policy naming Paul and Susan Owhadi. Hartford expects too much of an agent's duty to exercise due care in procuring the coverage requested by an

1 insured. Burns, as requested, instructed Fireman's to add the Malibu Property to the Excess
2 Policy, which Fireman's did. Hartford cites no evidence that anyone asked Burns to add Herndon
3 as an insured. There is no genuine dispute of material fact as to whether Burns breached its duty
4 of care in this regard.

### (2) Business activities exclusion

Finally, Hartford argues that Burns "should have procured additional or different excess coverage from what was provided under the Excess Policy." Opp'n to Burns Second MSJ (Dkt. No. 135) at 28. "Specifically," argues Hartford, Burns "should have written an excess policy that did not contain the business exclusions that ultimately precluded Herndon from receiving coverage." *Id.* "[A]s a general proposition, an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage." *Fitzpatrick*, 57 Cal. App. 4th at 927. The Excess Policy is an excess liability endorsement to Paul and Susan Owhadi's personal homeowner's policy. An ordinary agent in Burns's position would not have requested that such a policy cover claims arising from business activities. Once again, Hartford may not argue that the business activities exclusion does not apply to Herndon, yet also claim that Burns was negligent for procuring a policy containing the supposedly irrelevant exclusion. Given the Court's finding that Burns did not owe an elevated duty of care here, Hartford has failed to demonstrate a genuine dispute of material fact as to whether Burns breached its duty in this regard.

///
///

**CONCLUSION**

The record does not demonstrate a genuine dispute of material fact as to whether Burns owed Herndon an elevated duty of care in this case. Under an insurance agent's ordinary duty of care, Hartford presents no evidence to suggest a dispute of material fact as to Burns's alleged deficient performance. Furthermore, for several claimed breaches, the record is devoid of evidence as to causation. Accordingly, the Court hereby GRANTS Burns's Second Motion for Summary Judgment, and DISMISSES this case in full.

This order resolves Dkt. No. 131.

**IT IS SO ORDERED**.

Dated: November 16, 2016

_____
SUSAN ILLSTON
United States District Judge